# U. S. District Court
## Western District of Arkansas (Fayetteville)
## CIVIL DOCKET FOR CASE #: 5:22−cv−05121−TLB
### *Internal Use Only*

Farella v. District Judge A.J. Anglin et al
Assigned to: Honorable Timothy L. Brooks
Cause: 42:1983 Civil Rights Act

Date Filed: 06/24/2022
Date Terminated: 08/21/2024
Jury Demand: None
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

**Plaintiff**

**Abigail Farella**
*All Other Similarly Situated*

represented by **Allison Lee**
Norwood & Norwood
P.O. Box 1960
Rogers, AR 72757
479−636−1262
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Norman Douglas Norwood**
Norwood & Norwood, P.A.
PO Box 1960
Rogers, AR 72757
479−636−1262
Fax: 479−636−7595
Email: doug@norwoodattorneys.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Logan W. Murphy**
*All Other Similarly Situated*

represented by **Allison Lee**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Norman Douglas Norwood**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Benton County District Court, DIV. 4**
*TERMINATED: 11/15/2022*

represented by **Christine A. Cryer**
Office of the Arkansas Attorney General
323 Center Street
Suite 1100
Little Rock, AR 72201−2610
(501) 683−0958
Fax: (501) 682−2591
Email: christine.cryer@arkansasag.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Justin Brascher**
Arkansas Attorney General
323 Center Street
Ste 200
Little Rock, AR 72201

501−682−2016
Email: justin.brascher@arkansasag.gov
*ATTORNEY TO BE NOTICED*

**Vincent Perry France**
P.O. Box 1437
Ste Slot 260
Little Rock, AR 72203
501−682−1314
Email: vincent.p.france@dhs.arkansas.gov
*TERMINATED: 03/08/2023*

**Defendant**

**District Judge A.J. Anglin**                  represented by    **Christine A. Cryer**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Dylan L Jacobs**
Arkansas Attorney General's Office
323 Center Street
Suite 200
Little Rock, AR 72201
(501) 682− 3661
Email: dylan.jacobs@arkansasag.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John O. Payne**
Office of Arkansas Attorney General
323 Center Street
Suite 200
Little Rock, AR 72201
501−682−3663
Fax: 501−682−2591
Email: john.payne@arkansasag.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Vincent Perry France**
(See above for address)
*TERMINATED: 03/08/2023*
*LEAD ATTORNEY*

**Justin Brascher**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Gregg E Parrish**                  represented by    **Marshall S. Ney**
Friday, Eldredge & Clark, LLP
3350 S Pinnacle Hills Pkwy
Ste 301
Rogers, AR 72758
(479) 695−6049
Fax: 5012445389
Email: mney@fridayfirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Gregg E. Parrish**
Arkansas Public Defender Commission
101 E. Capitol Ave.
Ste 201

Little Rock, AR 72201
501–682–9070
Email: gregg.parrish@arkansas.gov
*TERMINATED: 06/07/2024*

**Katherine Church Campbell**
Friday, Eldredge & Clark
3350 S Pinnacle Hills Pkwy
Suite 301
Rogers, AR 72758
479–695–6040
Email: kcampbell@fridayfirm.com
*ATTORNEY TO BE NOTICED*

**Sarah J. Breeding**
Friday, Eldredge & Clark
3350 S Pinnacle Hills Pkwy #301
Rogers, AR 72758
479–695–2011
Email: sbreeding@fridayfirm.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Jay Saxton**
*Chief Benton County Public Defender*

represented by **Marshall S. Ney**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Gregg E. Parrish**
(See above for address)
*TERMINATED: 06/07/2024*

**Katherine Church Campbell**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sarah J. Breeding**
(See above for address)
*ATTORNEY TO BE NOTICED*

Email All Attorneys (Primary Address)
Email All Attorneys (Primary and Secondary Address)

| Date Filed | # | Docket Text |
|---|---|---|
| 06/24/2022 | 1 | CIVIL COVER SHEET by Abigail Farella, Logan W. Murphy. Please proceed with filing your case initiating document(s). <br><br> If the case initiating documents are not filed by Close of Business the next business day, this file may be closed. <br><br> A civil action is commenced by filing a complaint with the Court (Fed.R.Civ.P.3). (tg) (Entered: 06/24/2022) |
| 06/24/2022 | 2 | COMPLAINT *Abigail Farella and Logan W. Murphy, on behalf of themselves and all others similarly situated* against A.J. Anglin, Benton County District Court, DIV. 4, filed by Abigail Farella, Logan W. Murphy.(Norwood, Norman) (Entered: 06/24/2022) |
| 06/24/2022 | | CLERK'S NOTICE REGARDING FILING FEE. The following document was received and filed without the appropriate filing fee: 2 Complaint. <br><br> **You MUST pay the filing fee of $ 402.00 or file a motion to proceed In Forma Pauperis, if appropriate, within 2 business days.** |

| | | |
|---|---|---|
| | | If the proper fees or motion are not received for case initiating documents, your case may be subject to dismissal. |
| | | Present your payment to the appropriate Divisional Office or Pay Online, using the **Civil –> Other Documents –> Filing Fee Submitted** event. Filing Fee due by 6/27/2022 (tg) (Entered: 06/24/2022) |
| 06/27/2022 | | Complaint fee received: $ 402, receipt number 5007613. (tg) (Entered: 06/27/2022) |
| 06/27/2022 | 3 | Magistrate Notice/Consent Form (tg) (Main Document 3 replaced on 6/28/2022) (bjb). (Entered: 06/27/2022) |
| 06/28/2022 | 4 | **THE DOCUMENT IS RESTRICTED TO COURT USERS.** <br><br> ***DISREGARD*** Summons Requested as to BENTON COUNTY DISTRICT 4 JUDGE A.J. Anglin for service of the following document: 2 Complaint. (Norwood, Norman) Modified on 6/28/2022 (bjb). (Entered: 06/28/2022) |
| 06/28/2022 | 5 | **THE DOCUMENT IS RESTRICTED TO COURT USERS.** <br><br> Summons Requested as to BENTON COUNTY DISTRICT COURT, Division 4 for service of the following document: 2 Complaint. (Norwood, Norman) (Entered: 06/28/2022) |
| 06/28/2022 | 6 | **THE DOCUMENT IS RESTRICTED TO COURT USERS.** <br><br> Summons Requested as to DISTRICT JUDGE A.J.ANGLIN for service of the following document: 2 Complaint. (Norwood, Norman) (Entered: 06/28/2022) |
| 06/28/2022 | 7 | **THE DOCUMENT IS RESTRICTED TO COURT USERS AND CASE PARTICIPANTS.** <br><br> Summons Issued as to A.J. Anglin, Benton County District Court, DIV. 4 and returned to attorney or plaintiff for service. <br><br> **YOU MUST PRINT THIS ISSUED SUMMONS, WHICH IS THE MAIN DOCUMENT. PAPER COPIES WILL <u>NOT</u> BE MAILED.** <br><br> (bjb) (Entered: 06/28/2022) |
| 07/06/2022 | 8 | SUMMONS Returned Executed by Abigail Farella, Logan W. Murphy. Benton County District Court, DIV. 4 served on 6/29/2022, answer due 7/19/2022. (Norwood, Norman) Modified on 7/7/2022 to edit service date(tg). (Entered: 07/06/2022) |
| 07/06/2022 | 9 | SUMMONS Returned Executed by Abigail Farella, Logan W. Murphy. A.J. Anglin served on 6/29/2022, answer due 7/19/2022. (Norwood, Norman) Modified on 7/7/2022 to edit service date(tg). (Entered: 07/06/2022) |
| 07/19/2022 | 10 | NOTICE of Appearance by Vincent Perry France on behalf of A.J. Anglin, Benton County District Court, DIV. 4. (France, Vincent) (Entered: 07/19/2022) |
| 07/19/2022 | 11 | MOTION to Dismiss for Failure to State a Claim by A.J. Anglin, Benton County District Court, DIV. 4. (Attachments: # 1 Exhibit Farella's Criminal Case, # 2 Exhibit Murphy's Criminal Case, # 3 Exhibit Affidavit of Judge Anglin)(France, Vincent) (Entered: 07/19/2022) |
| 07/19/2022 | 12 | MEMORANDUM BRIEF in Support of 11 MOTION to Dismiss for Failure to State a Claim by A.J. Anglin, Benton County District Court, DIV. 4. (France, Vincent) (Entered: 07/19/2022) |
| 07/22/2022 | 13 | **INITIAL SCHEDULING ORDER: Case Management Hearing set for 9/9/2022 03:00 PM in Fayetteville –– 5th flr (Rm 509) before Honorable Timothy L. Brooks. Rule 26 Meeting Report due by 8/29/2022. Signed by Honorable Timothy L. Brooks on July 22, 2022. (slc) (Entered: 07/22/2022)** |
| 08/03/2022 | 14 | ***PLEASE DISREGARD – INCORRECT FORM USED*** <br><br> **THE DOCUMENT IS RESTRICTED TO COURT USERS.** |

| | | |
|---|---|---|
| | | Summons Requested as to A.J. Anglin for service of the following document: 2 Complaint. (Norwood, Norman) Modified TEXT on 8/3/2022 (lgd). (Entered: 08/03/2022) |
| 08/03/2022 | 15 | **THE DOCUMENT IS RESTRICTED TO COURT USERS.**<br><br>Summons Requested as to A.J. Anglin for service of the following document: 2 Complaint. (Norwood, Norman) (Entered: 08/03/2022) |
| 08/03/2022 | 16 | **THE DOCUMENT IS RESTRICTED TO COURT USERS AND CASE PARTICIPANTS.**<br><br>Summons Reissued as to A.J. Anglin and returned to attorney or plaintiff for service.<br><br>**YOU MUST PRINT THIS ISSUED SUMMONS, WHICH IS THE MAIN DOCUMENT. PAPER COPIES WILL NOT BE MAILED.**<br><br>(tg) (Entered: 08/03/2022) |
| 08/04/2022 | 17 | SUMMONS Returned Executed by All Plaintiffs. A.J. Anglin served on 8/4/2022, answer due 8/25/2022. (Norwood, Norman) (Entered: 08/04/2022) |
| 08/05/2022 | 18 | RESPONSE IN OPPOSITION TO Motion re 11 MOTION to Dismiss for Failure to State a Claim *Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss* filed by Abigail Farella, Logan W. Murphy. (Norwood, Norman) (Entered: 08/05/2022) |
| 08/11/2022 | 19 | MOTION for Leave to *File Reply to Response to Motion to Dismiss* by A.J. Anglin, Benton County District Court, DIV. 4. (Attachments: # 1 Exhibit Defendants' Reply to Plaintiffs' Response to Motion to Dismiss)(France, Vincent) (Entered: 08/11/2022) |
| 08/11/2022 | 20 | **TEXT ONLY ORDER granting 19 Defendants' Motion for Leave to File a Reply. Signed by Honorable Timothy L. Brooks on August 11, 2022. (jld) (Entered: 08/11/2022)** |
| 08/11/2022 | 21 | REPLY to Response to Motion re 11 MOTION to Dismiss for Failure to State a Claim filed by A.J. Anglin, Benton County District Court, DIV. 4. (France, Vincent) (Entered: 08/11/2022) |
| 08/25/2022 | 22 | JOINT REPORT of Rule 26(f) Planning Meeting by A.J. Anglin, Benton County District Court, DIV. 4. (France, Vincent) (Entered: 08/25/2022) |
| 09/02/2022 | 23 | MOTION to Stay *Deadlines* by A.J. Anglin, Benton County District Court, DIV. 4. (France, Vincent) (Entered: 09/02/2022) |
| 09/02/2022 | 24 | MEMORANDUM BRIEF in Support of 23 MOTION to Stay *Deadlines* by A.J. Anglin, Benton County District Court, DIV. 4. (France, Vincent) (Entered: 09/02/2022) |
| 09/09/2022 | 25 | TEXT ONLY Minute Entry for proceedings held before Honorable Timothy L. Brooks: Case Management Hearing held on 9/9/2022. (Paula Barden–Court Reporter)(Proceedings held in Fayetteville–Room 509) (slc) (Entered: 09/09/2022) |
| 09/09/2022 | 26 | **TEXT ONLY ORDER denying 23 Defendant's Motion to Stay Discovery. Signed by Honorable Timothy L. Brooks on September 9, 2022. (jld) (Entered: 09/09/2022)** |
| 10/13/2022 | 27 | **CASE MANAGEMENT ORDER: Final Pretrial Conference set for 10/6/2023 09:00 AM in Fayetteville –– 5th flr (Rm 509) before Honorable Timothy L. Brooks. BENCH TRIAL set for 10/16/2023 09:00 AM in Fayetteville –– 5th flr (Rm 509) before Honorable Timothy L. Brooks. Signed by Honorable Timothy L. Brooks on October 13, 2022. (slc) (Entered: 10/13/2022)** |
| 10/13/2022 | 28 | **ORDER Setting Hearings: Settlement Conference set for 8/24/2023 09:00 AM in Fayetteville – 2nd flr (Rm 210) before Honorable Christy D. Comstock. Each party shall provide a concise, confidential settlement statement NO LATER THAN ONE WEEK PRIOR TO THE SCHEDULED CONFERENCE via email to CDCsettle@arwd.uscourts.gov.. Signed by Honorable Christy D. Comstock on October 13, 2022. (rg) (Entered: 10/13/2022)** |

| 10/21/2022 | 29 | MOTION for Leave to *File Amended Complaint* by Abigail Farella, Logan W. Murphy. (Norwood, Norman) (Entered: 10/21/2022) |
|---|---|---|
| 10/24/2022 | 30 | **TEXT ONLY ORDER denying 29 Motion for Leave. Pursuant to Local rule 5.5(e), Plaintiff is instructed to refile the Motion for Leave with a copy of the proposed amended complaint attached. Signed by Honorable Timothy L. Brooks on October 24, 2022. (jld) (Entered: 10/24/2022)** |
| 10/24/2022 | 31 | First MOTION for Leave to *File Amended Complaint* by Abigail Farella, Logan W. Murphy. (Attachments: # 1 Supplement)(Norwood, Norman) (Entered: 10/24/2022) |
| 10/31/2022 | 32 | RESPONSE IN OPPOSITION TO Motion re 31 First MOTION for Leave to *File Amended Complaint* filed by A.J. Anglin, Benton County District Court, DIV. 4. (France, Vincent) (Entered: 10/31/2022) |
| 11/15/2022 | 33 | **TEXT ONLY ORDER granting 31 Plaintiffs' Motion for Leave to File Amended Complaint. This order is without prejudice to Defendants' ability to renew the objections raised in their Response in Opposition to Leave. Plaintiffs are instructed to file the amended complaint by November 17, 2022. Signed by Honorable Timothy L. Brooks on November 15, 2022. (jld) (Entered: 11/15/2022)** |
| 11/15/2022 | 34 | AMENDED COMPLAINT as to 2 Complaint against All Defendants , filed by Abigail Farella, Logan W. Murphy. Related document: 2 Complaint filed by Logan W. Murphy, Abigail Farella.(Norwood, Norman) (Entered: 11/15/2022) |
| 11/15/2022 | 35 | **TEXT ONLY ORDER finding as moot 11 Defendants' Motion to Dismiss Plaintiffs' Original Complaint. Signed by Honorable Timothy L. Brooks on November 15, 2022. (jld) (Entered: 11/15/2022)** |
| 11/18/2022 | 36 | **THE DOCUMENT IS RESTRICTED TO COURT USERS.**<br><br>***DISREGARD WRONG DOCUMENT ATTACHED*** Summons Requested as to A.J. Anglin for service of the following document: 34 Amended Complaint. (Norwood, Norman) Modified on 11/21/2022 (tg). (Entered: 11/18/2022) |
| 11/18/2022 | 37 | **THE DOCUMENT IS RESTRICTED TO COURT USERS.**<br><br>***DISREGARD WRONG DOCUMENT ATTACHED*** Summons Requested as to Gregg Parrish for service of the following document: 34 Amended Complaint. (Norwood, Norman) Modified on 11/21/2022 (tg). (Entered: 11/18/2022) |
| 11/18/2022 | 38 | **THE DOCUMENT IS RESTRICTED TO COURT USERS.**<br><br>***DISREGARD WRONG DOCUMENT ATTACHED*** Summons Requested as to Jay Saxton for service of the following document: 34 Amended Complaint. (Norwood, Norman) Modified on 11/21/2022 (tg). (Entered: 11/18/2022) |
| 11/18/2022 | 39 | **THE DOCUMENT IS RESTRICTED TO COURT USERS.**<br><br>Summons Requested as to A.J. Anglin, Gregg Parrish, Jay Saxton for service of the following document: 34 Amended Complaint. (Attachments: # 1 Summons, # 2 Summons, # 3 Summons)(Norwood, Norman) (Entered: 11/18/2022) |
| 11/18/2022 | 40 | **THE DOCUMENT IS RESTRICTED TO COURT USERS AND CASE PARTICIPANTS.**<br><br>Summons Issued as to A.J. Anglin, Gregg Parish, Jay Saxton and returned to attorney or plaintiff for service.<br><br>**YOU MUST PRINT THIS ISSUED SUMMONS, WHICH IS THE MAIN DOCUMENT. PAPER COPIES WILL NOT BE MAILED.**<br><br>(tg) (Entered: 11/18/2022) |
| 11/29/2022 | 41 | MOTION for Extension of Time to File Answer , MOTION for Extension of Time to File by A.J. Anglin, Benton County District Court, DIV. 4. (France, Vincent) (Entered: 11/29/2022) |

| 11/29/2022 | 42 | **TEXT ONLY ORDER granting 41 Defendants A.J. Anglin and Benton County District Court, Div. 4's Motion for Extension of Time to File Responsive Pleading. Said defendants must file a responsive pleading no later than December 13, 2022. Signed by Honorable Timothy L. Brooks on November 29, 2022. (jld) (Entered: 11/29/2022)** |
|---|---|---|
| 11/29/2022 | 43 | SUMMONS Returned Executed by All Plaintiffs. Jay Saxton served on 11/23/2022, answer due 12/14/2022. (Norwood, Norman) (Entered: 11/29/2022) |
| 11/29/2022 | 44 | SUMMONS Returned Executed by All Plaintiffs. A.J. Anglin served on 11/23/2022, answer due 12/14/2022. (Norwood, Norman) (Entered: 11/29/2022) |
| 11/29/2022 | 45 | SUMMONS Returned Executed by All Plaintiffs. Gregg Parish served on 11/23/2022, answer due 12/14/2022. (Norwood, Norman) (Entered: 11/29/2022) |
| 12/12/2022 | 46 | MOTION for Extension of Time to File Response/Reply as to 34 Amended Complaint by Gregg Parish, Jay Saxton. (Parrish, Gregg) (Entered: 12/12/2022) |
| 12/13/2022 | 47 | MOTION to Dismiss for Failure to State a Claim by A.J. Anglin, Benton County District Court, DIV. 4. (France, Vincent) (Entered: 12/13/2022) |
| 12/13/2022 | 48 | MEMORANDUM BRIEF in Support of 47 MOTION to Dismiss for Failure to State a Claim by A.J. Anglin, Benton County District Court, DIV. 4. (France, Vincent) (Entered: 12/13/2022) |
| 12/13/2022 | 49 | **TEXT ONLY ORDER granting 46 Defendants Parrish and Saxton's Motion for Extension of Time to File a Responsive Pleading. Defendants' deadline is extended to January 11, 2023. Signed by Honorable Timothy L. Brooks on December 13, 2022. (jld) (Entered: 12/13/2022)** |
| 12/21/2022 | 50 | RESPONSE IN OPPOSITION TO Motion re 47 MOTION to Dismiss for Failure to State a Claim filed by Abigail Farella, Logan W. Murphy. (Norwood, Norman) (Entered: 12/21/2022) |
| 12/27/2022 | 51 | MOTION for Leave to *File Reply to Response to Motion to Dismiss Plaintiffs' Amended Complaint* by A.J. Anglin, Benton County District Court, DIV. 4. (France, Vincent) (Entered: 12/27/2022) |
| 12/28/2022 | 52 | **TEXT ONLY ORDER granting 51 Motion for Leave to File Reply. Defendant's Reply must be filed no later than January 4, 2023. Signed by Honorable Timothy L. Brooks on December 28, 2022. (jld) (Entered: 12/28/2022)** |
| 01/03/2023 | 53 | NOTICE OF FILING OFFICIAL TRANSCRIPT of Case Management Hearing/Motion to Dismiss held on September 9, 2022, before Judge Timothy L. Brooks. Court Reporter/Transcriber: Paula Barden, Telephone number paula_barden@arwd.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber. After the Release of Transcript Restriction deadline, it, or a redacted transcript, may be obtained through the Court Reporter/Transcriber or PACER A Notice of Intent to Request Redaction of the Transcript MUST be filed within **7 calendar days** of the filing of the transcript and served manually on the court reporter/transcriber. Redaction Request due 1/24/2023. Redacted Transcript Deadline set for 2/3/2023. Release of Transcript Restriction set for 4/3/2023. (pkb) (Entered: 01/03/2023) |
| 01/04/2023 | 54 | REPLY to Response to Motion re 47 MOTION to Dismiss for Failure to State a Claim filed by A.J. Anglin, Benton County District Court, DIV. 4. (France, Vincent) (Entered: 01/04/2023) |
| 01/05/2023 | 55 | NOTICE by Gregg Parish (Parrish, Gregg) (Entered: 01/05/2023) |
| 01/06/2023 | 56 | NOTICE by Gregg Parish re 55 Notice (Other) *Letter re: AG Conflict* (Attachments: # 1 Letter to Parrish from Ark. AG)(Parrish, Gregg) (Entered: 01/06/2023) |
| 01/10/2023 | 57 | NOTICE of Appearance by Marshall S. Ney on behalf of Gregg Parish, Jay Saxton. (Ney, Marshall) (Entered: 01/10/2023) |
| 01/10/2023 | 58 | NOTICE of Appearance by Katherine Church Campbell on behalf of Gregg Parish, Jay Saxton. (Campbell, Katherine) (Entered: 01/10/2023) |

| 01/10/2023 | 59 | MOTION for Extension of Time to File Answer re 34 Amended Complaint by Gregg Parish, Jay Saxton. (Attachments: # 1 Exhibit Ex. A – Emails between Counsel)(Ney, Marshall) (Entered: 01/10/2023) |
|---|---|---|
| 01/11/2023 | 60 | **TEXT ONLY ORDER granting 59 Motion for Extension of Time to Answer. Separate Defendants Gregg Parish and Jay Saxton's respective answers or responsive pleadings are due 2/10/2023. Signed by Honorable Timothy L. Brooks on January 11, 2023. (jld) (Entered: 01/11/2023)** |
| 02/10/2023 | 61 | MOTION to Dismiss by Gregg Parish, Jay Saxton. (Attachments: # 1 Exhibit Exhibits A – C)(Ney, Marshall) (Entered: 02/10/2023) |
| 02/10/2023 | 62 | MEMORANDUM BRIEF in Support of 61 MOTION to Dismiss by Gregg Parish, Jay Saxton. (Ney, Marshall) (Entered: 02/10/2023) |
| 02/16/2023 | 63 | NOTICE of Appearance by Christine A. Cryer on behalf of A.J. Anglin, Benton County District Court, DIV. 4. (Cryer, Christine) (Entered: 02/16/2023) |
| 02/21/2023 | 64 | NOTICE of Appearance by Justin Brascher on behalf of A.J. Anglin, Benton County District Court, DIV. 4. (Brascher, Justin) (Entered: 02/21/2023) |
| 02/22/2023 | 65 | MOTION for Extension of Time to File Response/Reply by Abigail Farella, Logan W. Murphy. (Norwood, Norman) (Entered: 02/22/2023) |
| 02/22/2023 | 66 | **TEXT ONLY ORDER granting 65 Plaintiffs' Motion for Extension of Time to File Response/Reply. The deadline is extended to March 17, 2023. Signed by Honorable Timothy L. Brooks on February 22, 2023. (jld) (Entered: 02/22/2023)** |
| 02/23/2023 | 67 | NOTICE of Appearance by Sarah J. Breeding on behalf of Gregg Parish, Jay Saxton. (Breeding, Sarah) (Entered: 02/23/2023) |
| 03/07/2023 | 68 | MOTION to Substitute Attorney by A.J. Anglin, Benton County District Court, DIV. 4. (Cryer, Christine) (Entered: 03/07/2023) |
| 03/08/2023 | 69 | **TEXT ONLY ORDER GRANTING 68 Motion to Substitute Attorney. Attorney CHRISTINE A. CRYER replacing Attorney VINCENT P. FRANCE. Signed by Honorable Timothy L. Brooks on 3/8/23. (slc) (Entered: 03/08/2023)** |
| 03/17/2023 | 70 | RESPONSE by Abigail Farella, Logan W. Murphy re 61 MOTION to Dismiss . (Norwood, Norman) (Entered: 03/17/2023) |
| 03/21/2023 | 71 | MOTION for Leave to *File Reply in Support of Motion to Dismiss* by Gregg Parish, Jay Saxton. (Ney, Marshall) (Entered: 03/21/2023) |
| 03/21/2023 | 72 | **TEXT ONLY ORDER granting 71 Motion for Leave to File a Reply. The Public Defender Defendants may file a reply in response to their motion by March 31, 2023. Signed by Honorable Timothy L. Brooks on March 21, 2023. (ee) (Entered: 03/21/2023)** |
| 03/31/2023 | 73 | REPLY to Response to Motion re 61 MOTION to Dismiss filed by Gregg Parish, Jay Saxton. (Attachments: # 1 Exhibit)(Ney, Marshall) (Entered: 03/31/2023) |
| 04/03/2023 | | (Court ONLY) ***RESTRICTED*** Transcript deadline terminated per release of 53 . (tg) (Entered: 04/03/2023) |
| 06/01/2023 | 74 | First MOTION to Extend *Deadlines* by Abigail Farella, Logan W. Murphy. (Norwood, Norman) (Entered: 06/01/2023) |
| 07/07/2023 | 75 | **AMENDED CASE MANAGEMENT ORDER: Final Pretrial Conference reset for 7/5/2024 09:00 AM in Fayetteville –– 5th flr (Rm 509) before Honorable Timothy L. Brooks. BENCH TRIAL reset for 7/15/2024 09:00 AM in Fayetteville –– 5th flr (Rm 509) before Honorable Timothy L. Brooks. Signed by Honorable Timothy L. Brooks on July 7, 2023. (slc) (Entered: 07/07/2023)** |
| 07/07/2023 | 76 | **TEXT ONLY ORDER finding as moot 74 Motion to Extend Deadlines. Signed by Honorable Timothy L. Brooks on July 7, 2023. (slc) (Entered: 07/07/2023)** |
| 07/10/2023 | 77 | **AMENDED ORDER Resetting Hearings: Settlement Conference reset for 5/28/2024 09:00 AM in Fayetteville – 2nd flr (Rm 210) before Honorable Christy D. Comstock. Each party shall provide a concise, confidential settlement** |

| | | |
|---|---|---|
| | | statement NO LATER THAN ONE WEEK PRIOR TO THE SCHEDULED CONFERENCE via email to CDCsettle@arwd.uscourts.gov. Signed by Honorable Christy D. Comstock on July 10, 2023. (rg) (Entered: 07/10/2023) |
| 08/05/2023 | 78 | **ORDER DENYING 47 Defendant Anglin's Motion to Dismiss; and also DENYING 61 the Public Defenders' Motion to Dismiss. These Defendants shall file their respective Answers to the First Amended complaint by no later than August 21, 2023. Signed by Honorable Timothy L. Brooks on August 5, 2023. (Brooks, Timothy) (Entered: 08/05/2023)** |
| 08/21/2023 | 79 | ANSWER to 34 Amended Complaint by A.J. Anglin.(Cryer, Christine) (Entered: 08/21/2023) |
| 08/21/2023 | 80 | ANSWER to 34 Amended Complaint by Gregg Parish, Jay Saxton.(Ney, Marshall) (Entered: 08/21/2023) |
| 10/30/2023 | 81 | Joint MOTION to Extend *Deadline for Class Certification* by Gregg Parish, Jay Saxton. (Campbell, Katherine) (Entered: 10/30/2023) |
| 11/06/2023 | 82 | **TEXT ONLY ORDER deferring ruling on 81 Motion to Extend. The parties are directed to file a joint brief (or separate briefs, if they prefer) in support of their Motion to Extend by Friday, November 10, 2023. Specifically, the Court requests that the parties further explain how and why they anticipate *Burnett v. State of Arkansas*, Case No. CR–22–253, will impact the instant case. Signed by Honorable Timothy L. Brooks on November 6, 2023. (nma) (Entered: 11/06/2023)** |
| 11/06/2023 | 83 | NOTICE of Appearance by John O. Payne on behalf of A.J. Anglin. (Payne, John) (Entered: 11/06/2023) |
| 11/10/2023 | 84 | MEMORANDUM BRIEF in Support *of Motion for Class Certification Extension* by Abigail Farella, Logan W. Murphy. (Norwood, Norman) (Entered: 11/10/2023) |
| 11/13/2023 | 85 | **TEXT ONLY ORDER granting in part and denying in part 81 Joint Motion to Extend *Deadline for Class Certification*. The deadline for class certification is hereby extended to November 20, 2023. Signed by Honorable Timothy L. Brooks on November 13, 2023. (nma) (Entered: 11/13/2023)** |
| 11/20/2023 | 86 | MEMORANDUM BRIEF in Support *of Motion for Class Certification* by Abigail Farella, Logan W. Murphy. (Attachments: # 1 Exhibit, # 2 Exhibit)(Norwood, Norman) (Entered: 11/20/2023) |
| 11/20/2023 | 87 | MOTION to Certify Class by Abigail Farella, Logan W. Murphy. (Norwood, Norman) (Entered: 11/20/2023) |
| 11/27/2023 | 88 | Unopposed MOTION for Extension of Time to File Response/Reply as to 87 MOTION to Certify Class by Gregg Parish, Jay Saxton. (Ney, Marshall) (Entered: 11/27/2023) |
| 11/29/2023 | 89 | **TEXT ONLY ORDER granting 88 Motion for Extension of Time to File Response as to 87 MOTION to Certify Class. The response deadline at issue is hereby extended to December 18, 2023. Signed by Honorable Timothy L. Brooks on November 29, 2023. (nma) (Entered: 11/29/2023)** |
| 12/18/2023 | 90 | RESPONSE IN OPPOSITION TO Motion re 87 MOTION to Certify Class filed by Gregg Parish, Jay Saxton. (Ney, Marshall) (Entered: 12/18/2023) |
| 12/18/2023 | 91 | MEMORANDUM BRIEF in Support of 90 Response to Motion by Gregg Parish, Jay Saxton. (Ney, Marshall) (Entered: 12/18/2023) |
| 12/18/2023 | 92 | RESPONSE IN OPPOSITION TO Motion re 87 MOTION to Certify Class filed by A.J. Anglin. (Attachments: # 1 Exhibit Declaration of A.J. Anglin)(Brascher, Justin) (Entered: 12/18/2023) |
| 12/21/2023 | 93 | REPLY to Response to Motion re 88 Unopposed MOTION for Extension of Time to File Response/Reply as to 87 MOTION to Certify Class *Plaintiffs' Reply Brief To Defendant Judge Anglin's Motion Opposing Class Certification* filed by Abigail Farella, Logan W. Murphy. (Attachments: # 1 Exhibit Affidavit of Logan W. Murphy, # 2 Exhibit Affidavit of Abigail Farella)(Norwood, Norman) (Entered: 12/21/2023) |

| 02/27/2024 | 94 | MOTION for Extension of Time to Complete Discovery by Abigail Farella, Logan W. Murphy. (Norwood, Norman) (Entered: 02/27/2024) |
|---|---|---|
| 03/01/2024 | 95 | **TEXT ONLY ORDER granting 94 Motion for Extension of Time to Complete Discovery. As stated on page 2 of the 75 Amended Case Management Order, "[t]he parties may conduct discovery beyond [the discovery deadline] if all parties are in agreement to do so.... That said, the Court will not resolve any disputes which may arise in the course of extended discovery." The parties are so advised, and the Amended Case Management Order is thus modified as follows: The discovery deadline is hereby extended to April 1, 2024. The deadline to file dispositive motions is extended to May 1, 2024. Signed by Honorable Timothy L. Brooks on March 1, 2024. (nma) Modified on 3/4/2024 (bjb). (Entered: 03/01/2024)** |
| 05/01/2024 | 96 | MOTION for Summary Judgment by Abigail Farella, Logan W. Murphy. (Norwood, Norman) (Entered: 05/01/2024) |
| 05/01/2024 | 97 | MEMORANDUM BRIEF in Support of 96 MOTION for Summary Judgment by Abigail Farella, Logan W. Murphy. (Norwood, Norman) (Entered: 05/01/2024) |
| 05/01/2024 | 98 | STATEMENT OF FACTS in support of 96 MOTION for Summary Judgment by Abigail Farella, Logan W. Murphy. (Attachments: # 1 Exhibit Anglin Deposition 1 of 2, # 2 Exhibit Anglin Deposition 2 of 2, # 3 Exhibit Murphy Deposition, # 4 Exhibit Farella Deposition, # 5 Exhibit Agreed Statement of Facts)(Norwood, Norman) (Entered: 05/01/2024) |
| 05/01/2024 | 99 | MOTION for Summary Judgment by A.J. Anglin. (Attachments: # 1 Exhibit Declaration of AJ Anglin, # 2 Exhibit Deposition Excerpts of AJ Anglin, # 3 Exhibit Administrative Order, # 4 Exhibit Deposition Excerpts of Abigail Farella, # 5 Exhibit Deposition Excerpts of Logan Murphy)(Cryer, Christine) (Entered: 05/01/2024) |
| 05/01/2024 | 100 | STATEMENT OF FACTS in support of 99 MOTION for Summary Judgment by A.J. Anglin. (Cryer, Christine) (Entered: 05/01/2024) |
| 05/01/2024 | 101 | MEMORANDUM BRIEF in Support of 100 Statement of Facts, 99 MOTION for Summary Judgment by A.J. Anglin. (Cryer, Christine) (Entered: 05/01/2024) |
| 05/06/2024 | 102 | REPLY to Response to Motion re 99 MOTION for Summary Judgment filed by Abigail Farella, Logan W. Murphy. (Norwood, Norman) (Entered: 05/06/2024) |
| 05/07/2024 | 103 | **MEMORANDUM OPINION AND ORDER granting 87 Motion to Certify Class (See Order for specifics for Class Representation) filed by Logan W. Murphy, Abigail Farella. Signed by Honorable Timothy L. Brooks on May 7, 2024. (ria) Modified on 5/10/2024 (ria). (Entered: 05/07/2024)** |
| 05/15/2024 | 104 | RESPONSE by A.J. Anglin re 98 Statement of Facts, . (Cryer, Christine) (Entered: 05/15/2024) |
| 05/15/2024 | 105 | RESPONSE IN OPPOSITION TO Motion re 96 MOTION for Summary Judgment filed by Gregg E Parrish, Jay Saxton. (Campbell, Katherine) (Entered: 05/15/2024) |
| 05/15/2024 | 106 | RESPONSE by Gregg E Parrish, Jay Saxton re 98 Statement of Facts, . (Campbell, Katherine) (Entered: 05/15/2024) |
| 05/15/2024 | 107 | RESPONSE IN OPPOSITION TO Motion re 96 MOTION for Summary Judgment filed by A.J. Anglin. (Cryer, Christine) (Entered: 05/15/2024) |
| 05/16/2024 | 108 | **AMENDED ORDER Resetting Hearings: Settlement Conference set for 6/24/2024 11:30 AM in Fayetteville – 2nd flr (Rm 210) before Honorable Christy D. Comstock. Each party shall provide a concise, confidential settlement statement NO LATER THAN ONE WEEK PRIOR TO THE SCHEDULED CONFERENCE via email to CDCsettle@arwd.uscourts.gov. Signed by Honorable Christy D. Comstock on May 16, 2024. (rg) (Entered: 05/16/2024)** |
| 06/03/2024 | 109 | MOTION to Deem Separate Defendant AJ Anglin's Statement of Undisputed Material Facts Admitted re 100 Statement of Facts by A.J. Anglin. (Cryer, Christine) (Entered: 06/03/2024) |

| 06/06/2024 | 110 | MOTION of Gregg Parrish to Withdraw as Attorney by Gregg E Parrish, Jay Saxton. (Ney, Marshall) (Entered: 06/06/2024) |
|---|---|---|
| 06/07/2024 | 111 | **TEXT ONLY ORDER GRANTING 110 Motion to Withdraw as Attorney. Attorney Gregg E. Parrish withdrawn, and the Clerk of Court is directed to remove his/her name from the list of attorneys who receive Notices of Electronic Filing in this case. Signed by Honorable Timothy L. Brooks on June 7, 2024. (slc) (Entered: 06/07/2024)** |
| 06/07/2024 | 112 | PRETRIAL DISCLOSURE SHEET by Gregg E Parrish, Jay Saxton. (Campbell, Katherine) (Entered: 06/07/2024) |
| 06/07/2024 | 113 | PRETRIAL DISCLOSURE SHEET by Abigail Farella, Logan W. Murphy. (Attachments: # 1 Exhibit EXHIBIT LIST, # 2 Exhibit WITNESS LIST)(Norwood, Norman) (Entered: 06/07/2024) |
| 06/07/2024 | 114 | PRETRIAL DISCLOSURE SHEET by A.J. Anglin. (Attachments: # 1 Exhibit A – Exhibit List, # 2 Exhibit B – Witness List)(Cryer, Christine) (Entered: 06/07/2024) |
| 06/17/2024 | 115 | **SECOND AMENDED CASE MANAGEMENT ORDER: Final Pretrial Conference reset for 9/13/2024 09:00 AM in Fayetteville –– 5th flr (Rm 509) before Honorable Timothy L. Brooks. BENCH TRIAL reset for 9/23/2024 09:00 AM in Fayetteville –– 5th flr (Rm 509) before Honorable Timothy L. Brooks. Signed by Honorable Timothy L. Brooks on June 17, 2024. (slc) (Entered: 06/17/2024)** |
| 06/24/2024 | 116 | TEXT ONLY Minute Entry for proceedings held before Honorable Christy D. Comstock: Settlement Conference held on 6/24/2024. (Roxana Guerrero–Digital Recorder)(Proceedings held in Fayetteville–Room 210) (rg) (Entered: 06/24/2024) |
| 08/14/2024 | 117 | **TEXT ONLY ORDER granting 109 Motion to Deem Separate Defendant AJ Anglin's Statement of Undisputed Material Facts Admitted. Signed by Honorable Timothy L. Brooks on August 14, 2024. (nma) (Entered: 08/14/2024)** |
| 08/16/2024 | 118 | PRETRIAL DISCLOSURE SHEET by A.J. Anglin. (Attachments: # 1 Exhibit Exhibit List, # 2 Exhibit Witness List)(Cryer, Christine) (Entered: 08/16/2024) |
| 08/16/2024 | 119 | PRETRIAL DISCLOSURE SHEET by Gregg E Parrish, Jay Saxton. (Ney, Marshall) (Entered: 08/16/2024) |
| 08/21/2024 | 120 | **MEMORANDUM OPINION AND ORDER granting 96 Motion for Summary Judgment; denying 99 Motion for Summary Judgment. See order for specifics. Signed by Honorable Timothy L. Brooks on August 21, 2024. (ria) (Entered: 08/21/2024)** |
| 08/21/2024 | 121 | **JUDGMENT for the reasons set forth in the 120 Memorandum Opinion and Order filed this day, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Defendants and their respective officers, agents, and attorneys are immediately ENJOINED. See Judgment for specifics. Signed by Honorable Timothy L. Brooks on August 21, 2024. (ria) Modified link on 8/22/2024 (ria). (Entered: 08/21/2024)** |
| 09/19/2024 | 122 | NOTICE of Appearance by Dylan L Jacobs on behalf of A.J. Anglin. (Jacobs, Dylan) (Entered: 09/19/2024) |
| 09/19/2024 | 123 | NOTICE OF APPEAL as to 120 Order on Motion for Summary Judgment,, Memorandum Opinion and Order, 121 Judgment, by A.J. Anglin. Filing fee $ 605, receipt number AARWDC–3057181. (Jacobs, Dylan) (Entered: 09/19/2024) |
| 09/20/2024 | 124 | NOA SUPPLEMENT FORM re 123 Notice of Appeal (atty) filed by A.J. Anglin. (lgd) (Entered: 09/20/2024) |

**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

| | |
|---|---|
| **ABIGAIL FARELLA; LOGAN W. MURPHY;**<br>**and All Others Similarly Situated** | **PLAINTIFFS** |
| **V.**            **CASE NO. 5:22-CV-5121** | |
| **DISTRICT JUDGE A.J. ANGLIN;**<br>**GREGG PARRISH; and JAY SAXTON** | **DEFENDANTS** |

<u>**MEMORANDUM OPINION AND ORDER**</u>

<u>**TABLE OF CONTENTS**</u>

**I. BACKGROUND** ........................................................................................... **3**

   A. Factual Background ................................................................................ 3

     1. Plaintiffs' Arrests, Incarceration, and Bail Hearings.......................... 3

     2. The Governing Arkansas Rules of Criminal Procedure...................... 6

     3. Judge Anglin's Rule 8.1 Hearings ..................................................... 9

     3. The Public Defenders........................................................................ 10

   B. Procedural Background............................................................................ 11

**II. LEGAL STANDARD** ................................................................................. **12**

**III. DISCUSSION** ........................................................................................... **13**

   A. Plaintiffs' Sixth Amendment Right to Counsel....................................... 13

     1. Attachment........................................................................................ 14

     2. Critical Stage .................................................................................... 16

   B. Injunctive Relief ..................................................................................... 35

     1. Irreparable Harm to Plaintiff ............................................................. 36

     2. Balance of Harms.............................................................................. 37

     3. Public Interest ................................................................................... 38

**IV. CONCLUSION**.......................................................................................... **38**

1

The questions presented in this case are whether indigent criminal defendants have a constitutional right to attorney representation during the judicial officer's determination of bail, and if so, whether Defendants violated that right by failing to timely appoint counsel before Plaintiffs' bail was set. The Defendants are Executive Director of the Arkansas Public Defender Commission Gregg Parrish and Chief Benton County Public Defender Jay Saxton (together, the "Public Defenders") and Benton County District Judge A.J. Anglin, all of whom are sued in their official capacities. The matter arises from a bail hearing procedure in Judge Anglin's court that Plaintiffs allege is constitutionally defective. The Plaintiffs are Abigail Farella and Logan W. Murphy, who represent a certified class of (1) pretrial detainees, (2) who have or will appear before District Judge A.J. Anglin, (3) for a bail or pretrial release hearing under Arkansas Rules of Criminal Procedure 8–9, (4) who are indigent, and (5) do not have appointed (public defender) representation at that hearing. *See generally* Doc. 103.

Presently before the Court are Cross-motions for Summary Judgment from Plaintiffs (Doc. 96)[1] and Judge Anglin (Doc. 99).[2] Plaintiffs ask the Court to find as a matter of law that indigent persons have a right to have appointed counsel present at bail hearings under the Sixth and Fourteenth Amendments, and that Judge Anglin's bail hearing procedure violates that right. They seek a declaratory judgment to that effect and

---

[1] *See also* Doc. 97 (Plaintiffs' Brief in Support); Doc. 98 (Plaintiffs' Statement of Facts); Doc. 104 (Judge Anglin's Response to Plaintiffs' Statement of Facts); Doc. 105 (the Public Defenders' Response to Plaintiffs' Motion); Doc. 106 (the Public Defenders' Response to Plaintiffs' Statement of Facts); Doc. 107 (Judge Anglin's Response to Plaintiffs' Motion).

[2] *See also* Doc. 100 (Judge Anglin's Statement of Facts); Doc. 101 (Judge Anglin's Brief in Support); Doc. 102 (Plaintiffs' Response).

a permanent injunction requiring that indigent persons must have appointed counsel present at bail hearings in Judge Anglin's court. Judge Anglin's Motion asks the Court to find the opposite—that Plaintiffs do not have a right to counsel at bail hearings under the Sixth Amendment and that Judge Anglin did not violate Plaintiffs' Sixth or Fourteenth Amendment rights—and that his decision setting Plaintiffs' bonds is entitled to judicial immunity.[3] Accordingly, Judge Anglin argues that he should be dismissed from this lawsuit. The Public Defenders filed a separate Response to Plaintiffs' Motion (Doc. 105). They take no position on Plaintiffs' request for declaratory judgment; however, they oppose the permanent injunction. They argue that "the requested injunction would impose significant strain on the provision of public defense services such that the public defender's ability to provide constitutionally effective representation would be seriously compromised, if not impossible." *Id.* at p. 2. The Court finds that the Motions are ripe and ready for review. For the reasons that follow, Plaintiffs' Motion for Summary Judgment is **GRANTED** and Judge Anglin's Motion for Summary Judgment is **DENIED**.

## I. BACKGROUND

### A. Factual Background[4]

#### 1. Plaintiffs' Arrests, Incarceration, and Bail Hearings

On May 20, 2022, Bentonville Police Department ("BPD") officers arrested Abigail Farella for felony possession of a controlled substance, misdemeanor possession of drug

---

[3] On this last point, the Court has thoroughly reviewed Plaintiffs' Amended Complaint and Motion for Summary Judgment and finds no indication that Plaintiffs are contesting the outcome of their bond determinations. They claim only that the process was constitutionally defective. Accordingly, the Court declines to rule on judicial immunity.

[4] The following facts are undisputed unless otherwise indicated.

paraphernalia, and misdemeanor shoplifting. She was transported to the Benton County Jail and—after waiting for more than ten hours—booked. That was Friday. On the following Sunday, May 22, Ms. Farella appeared before Judge Anglin. The hearing was held in a small courtroom in the jail. It contained an elevated judge's seat and approximately twelve chairs. Ms. Farella was one of several defendants to appear that day. She was not represented by an attorney.

Before the hearing, Judge Anglin was presented with a sworn Affidavit of Probable Cause from the BPD, signed by Corporal Kevin Albert. The Affidavit stated the charge against Ms. Farella, listed her criminal history, and attached an Arrest Narrative—an approximately two-page statement of factual allegations about Ms. Farella's offense conduct and arrest, written by the arresting officer. *See* Doc. 98-2, pp. 56–58. Ms. Farella testified that she did not agree with various factual statements in the Affidavit and Arrest Narrative. *See, e.g.*, Doc. 98-4, p. 23. Corporal Albert's Affidavit concluded with the following sentence: "Based upon the nature of the crime, the likelihood of conviction, the possible severity of penalty that could be imposed, *the State joins me in requesting that a bond of $2,500, be set on the defendant*, Abigail Ella Farella." (Doc. 98-2, p. 54 (emphasis added)).

After reviewing these materials, Judge Anglin conducted Ms. Farella's hearing. He read her charges and, after considering her criminal history and lack of ties to the state of Arkansas (Ms. Farella was a Missouri resident), set her bond at $10,000.00 cash or corporate surety. Then Judge Anglin scheduled her arraignment, Ms. Farella's next court date, for June 27, 2022. After bail was set and the arraignment scheduled, Judge Anglin

4

found her indigent and appointed a public defender to represent her in subsequent proceedings. Then he concluded the hearing.

Ms. Farella remained incarcerated in the Benton County Jail for more than five weeks following her arrest, until June 27, when Arkansas Circuit Court Judge Brad Karren entered a diversion order in her case. *See* Doc. 78, p. 4 n.2 (taking judicial notice of Ms. Farella's state court docket). Judge Karren also entered an order vacating Ms. Farella's $10,000 bond and stating that "counsel for Defendant and Deputy Prosecutor Sharon Nowlin have agreed that a written promise to appear for future court dates is sufficient to assure Defendant's appearance . . . ." *Id.* at p. 4. Ms. Farella pleaded guilty to a misdemeanor theft of property charge on July 25, 2023.

Bentonville Police arrested Logan Murphy for felony fleeing and misdemeanor reckless driving on June 20, 2022. He was taken to the Benton County Jail, booked, and held overnight. The next morning, June 21, Mr. Murphy appeared for his hearing before Judge Anglin. He and the other defendants lined up against the back wall of the courtroom and waited for their names to be called.

When it was Mr. Murphy's turn, Judge Anglin read him his rights, asked if he understood them, and asked if he had an attorney. He did not, and he did not request one. Looking back, Mr. Murphy testified that if he had an attorney present, they might have been "able to talk the judge down a little bit" because "it was my first offense" and "I had no criminal background or anything." (Doc. 98-3, p. 30).

As in Ms. Farella's case, prior to Mr. Murphy's hearing, Judge Anglin had been provided with a sworn Affidavit of Probable Cause by the BPD. It included the charges against him, a recitation of his criminal history, and an arrest report. *See id.* at pp. 44–45.

Also like in Ms. Farella's case, the Affidavit concluded as follows: "Based on the nature of the crime, the likelihood of conviction, the possible severity of penalty that could be imposed, *the State joins me in requesting that a bond of $25,000 be set on the defendant*, Logan Wade Murphy." (Doc. 98-2, p. 45 (emphasis added)).

After their initial colloquy, Judge Anglin set Mr. Murphy's bail at $40,000 cash or corporate surety. Mr. Murphy testified that he had "not even seen $10,000 in my life," much less $40,000. But Mr. Murphy did not ask Judge Anglin why he set the bail at $40,000; he feared that Judge Anglin would raise it further. Judge Anglin then set Mr. Murphy's arraignment for July 25, 2022, found him indigent, and appointed a public defender to represent him at future proceedings. It appears that he remained in jail until July 22, 2022, when he posted bail. (Doc. 78, p. 5 n.3 (taking judicial notice of Mr. Murphy's state court docket)). Mr. Murphy pleaded guilty to felony fleeing on June 12, 2023. (Doc. 98-2, p. 49). He was sentenced to 60 months of probation. *Id*.

### 2. The Governing Arkansas Rules of Criminal Procedure

The hearings at issue are governed by Arkansas Rules of Criminal Procedure 8 and 9. Rule 8.1 provides that "[a]n arrested person who is not released by citation or by other lawful manner shall be taken before a judicial officer without unnecessary delay" for a first appearance—also referred to as a "Rule 8.1 hearing." The primary purpose of a Rule 8.1 hearing is to "ensure that an arrested person hears directly from the judicial officer an explanation of the charges and his constitutional rights, particularly his right to counsel and his right to remain silent." *Landrum v. State*, 328 Ark. 361, 372 (1997) (Newbern, J., dissenting). Next, Rule 8.2 provides that "[a] judicial officer shall determine whether the defendant is indigent and, if so, appoint counsel to represent him or her at

6

the first appearance, unless the defendant knowingly and intelligently waives the appointment of counsel." And Rule 8.3 sets forth the Rule 8.1 Hearing procedure:

> (a) Upon the first appearance of the defendant the judicial officer shall inform him of the charge. The judicial officer shall also inform the defendant that:
>
>> (i) he is not required to say anything, and that anything he says can be used against him;
>>
>> (ii) he has a right to counsel; and
>>
>> (iii) he has a right to communicate with his counsel, his family, or his friends, and that reasonable means will be provided for him to do so.
>
> (b) No further steps in the proceedings other than pretrial release inquiry may be taken until the defendant and his counsel have had an adequate opportunity to confer, unless the defendant has intelligently waived his right to counsel or has refused the assistance of counsel.
>
> (c) The judicial officer, if unable to dispose of the case at the first appearance, shall proceed to decide the question of the pretrial release of the defendant. In so doing, the judicial officer shall first determine by an informal, non-adversary hearing whether there is probable cause for detaining the arrested person pending further proceedings. The standard for determining probable cause at such hearing shall be the same as that which governs arrests with or without a warrant.

As described in Rule 8.3, the judicial officer often incorporates certain pretrial tasks into the hearing, including conducting a pretrial release inquiry[5] and determining bail. Rule 8.5 provides that "[a] pretrial release inquiry shall be conducted by the judicial officer prior to or at the first appearance of the defendant" and instructs that "[t]he prosecuting attorney should make recommendations to the judicial officer concerning: (i) the

---

[5] The pretrial release inquiry is required "in all cases where the maximum penalty for the offense charged exceeds one (1) year and the prosecuting attorney does not stipulate that the defendant may be released on his own recognizance," as well as "in those cases where the maximum penalty for the offense charged is less than one (1) year and in which a law enforcement officer gives notice to the judicial officer that he intends to oppose release of the defendant on his own recognizance." Ark. R. Crim. P. 8.4.

advisability and appropriateness of pretrial release; (ii) the amount and type of bail bond; [and] (iii) the conditions, if any, which should be imposed on the defendant's release." Finally, Rule 9.2 instructs the judicial officer as to the bail determination procedure. It provides that "[t]he judicial officer shall set money bail only after he determines that no other conditions will reasonably ensure the appearance of the defendant in court." Ark. R. Crim. P. 9.2(a).

Under Rule 9.2(c), the judicial officer is instructed to consider the following factors in conducting its bail determination:

> In setting the amount of bail the judicial officer should take into account all facts relevant to the risk of willful nonappearance including:
>
> (i) the length and character of the defendant's residence in the community;
>
> (ii) his employment status, history and financial condition;
>
> (iii) his family ties and relationship;
>
> (iv) his reputation, character and mental condition;
>
> (v) his past history of response to legal process;
>
> (vi) his prior criminal record;
>
> (vii) the identity of responsible members of the community who vouch for the defendant's reliability;
>
> (viii) the nature of the current charge, the apparent probability of conviction and the likely sentence, in so far as these factors are relevant to the risk of nonappearance; and
>
> (ix) any other factors indicating the defendant's roots in the community.

Like all Arkansas district judges, Judge Anglin's jurisdiction to conduct Rule 8.1 Hearings is derived from Arkansas Supreme Court Administrative Order 18, which provides that "[a] state district court judge may be referred matters pending in the circuit

8

court," including "a first appearance pursuant to Rule 8.1, at which the judge may appoint counsel pursuant to Rule 8.2; inform a defendant pursuant to Rule 8.3; accept a plea of 'not guilty' or 'not guilty by reason insanity'; conduct a pretrial release inquiry pursuant to Rules 8.4 and 8.5; or release a defendant from custody pursuant to Rules 9.1, 9.2, and 9.3." *See* Order 18.6(b)(5) of Administrative Orders of the Arkansas Supreme Court.

### 3. Judge Anglin's Rule 8.1 Hearings

Judge Anglin is one of four district court judges in Benton County, all of whom conduct Rule 8.1 Hearings in both felony and misdemeanor cases. Each judge takes 25% of the hearings, which are divided such that each judge conducts them for thirteen weeks per year, in an on-one-week, off-three-weeks rotation. In an average week, Judge Anglin estimates that a district judge hears around 120 cases: approximately 40 misdemeanors, 75 felonies, and 5 extraditions. Judges in Benton County do not require the presence of public defenders at Rule 8.1 Hearings, and no representatives from the prosecutor's or public defender's offices are physically or virtually present at the hearings conducted at the Benton County Jail. In fact, Judge Anglin testified in his deposition that he could recall only one occasion in which a public defender appeared at a Rule 8.1 Hearing. *See id.* at pp. 21–22.

Judge Anglin conducts his Rule 8.1 Hearings at 6:00 a.m. every day during his allocated weeks. The jail provides him a list of names before the hearings, and he arrives at 5:00 a.m. to read the BPD's probable-cause affidavits before any inmates are brought in to appear. He testified that he reads every affidavit closely. At the hearing, Judge Anglin advises defendants of their Miranda rights, and informs them of the nature, number, and classification of the charge(s) against them, pursuant to Rule 8.3. He asks defendants

about their employment, residence, and some of the other Rule 9.2 factors that influence whether they are released on bond and the bond amount (as discussed *infra* in subsection (III)(A)(2)(ii), he does not cover every factor). Then he makes his bail determination.

The primary purposes of setting bail for a criminal defendant are: (1) to permit the defendant to avoid incarceration while their case proceeds and (2) to ensure that they will appear for future court dates while they are out. Judge Anglin testified in his deposition as to the purpose of bonds this way: "[I]f 100 percent of the people showed up in court, then bonds would probably go down"; "that would change the Court's perspective." (Doc. 98-1, p. 22). However, he testified that approximately 35% of offenders do not appear in district court even though they have been ordered to do so.

After making his bail determination, Judge Anglin asks the defendant if they would like to be appointed a public defender. If they respond in the affirmative, he reviews an indigency form with the defendant to determine whether a public defender should be appointed to their case and makes an indigency ruling. Judge Anglin testified in his deposition that it is "extremely rare" that he finds a defendant is not indigent. *Id.* at p. 27. He appoints a public defender in approximately 95% of his cases.

### 4. The Public Defenders

The Public Defenders argue that the injunction Plaintiffs request would impose significant strain on their capacity to provide public defense services. The Arkansas Public Defender Commission ("APDC") is afforded 186 full-time positions by the Arkansas legislature, which it allocates to 117 full-time and 112 part-time attorney positions. Benton County currently holds 15 full-time public defender positions: 6.5 state-funded public defenders and 8.5 attorney positions funded by Benton County. *See* Ark. Code Ann. §

16-87-302 (authorizing this joint funding structure for personnel). Benton County also has five additional attorney positions which are funded under the American Rescue Plan; however, this funding will expire in September of this year. Benton County public defenders do not appear for Rule 8.1 Hearings in district court.

In Washington County, by contrast, both prosecutors and public defenders are present for Rule 8.1 hearings. A court reporter is also present to make a record. The hearings are held every Monday, Wednesday, and Friday at 8:00 a.m. at the Washington County Jail. Washington County has authorized their district judges to conduct arraignments in felony cases, which are held during the same times.

## B. Procedural Background

Ms. Farella and Mr. Murphy filed their Complaint (Doc. 2) in this matter on June 24, 2022, on behalf of themselves and other similarly situated individuals. They brought denial of right-to-counsel claims under the Sixth Amendment and the Due Process and Equal Protection Clauses of the Fourteenth Amendment. *Id.* at ¶¶ 21–26. They pleaded the case as a class action. *Id.* at ¶¶ 16–20. Plaintiffs filed an Amended Complaint on November 15, 2022 (Doc. 34). Judge Anglin and the Public Defenders each filed Motions to Dismiss (Docs. 47 & 61) on December 13, 2022, and February 10, 2023, invoking the doctrines of sovereign immunity and abstention and also alleging that the Amended Complaint failed to state a claim and omitted indispensable parties. On August 5, 2023, the Court denied Defendants' Motions to Dismiss (Doc. 78), and on August 21, Judge Anglin and the Public Defenders filed Answers to the Amended Complaint (Docs. 79 & 80). Plaintiffs filed a Motion to Certify Class (Doc. 87) on November 20, 2023, which the

11

Court granted (Doc. 103) on May 7, 2024. Plaintiffs appear at summary judgment representing the certified class.

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must review the facts in the light most favorable to the opposing party and give that party the benefit of any inferences that logically can be drawn from those facts. *Canada v. Union Elec. Co.*, 135 F.3d 1211, 1212–13 (8th Cir. 1997). The moving party bears the burden of proving the absence of a genuine dispute of material fact and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Nat'l Bank of Commerce of El Dorado v. Dow Chem. Co.*, 165 F.3d 602 (8th Cir. 1999).

Once the moving party has met its burden, the nonmoving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(c)). "[T]he mere existence of a scintilla of evidence in support of the [moving party's] position will be insufficient" to survive summary judgment. *Anderson v. Durham D&M, L.L.C.*, 606 F.3d 513, 518 (8th Cir. 2010) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Rather, for there to be a genuine issue of material fact that would preclude summary judgment, the nonmoving party must produce evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994) (quoting *Liberty Lobby, Inc.*, 477 U.S. at 248).

Where, as here, the parties have filed cross-motions for summary judgment, this same standard applies. But each motion must be reviewed in its own right, with each side "entitled to the benefit of all inferences favorable to them which might reasonably be drawn from the record." *Wermager v. Cormorant Twp. Bd.*, 716 F.2d 1211, 1214 (8th Cir. 1983); *see also Canada v. Union Elec. Co.*, 135 F.3d 1211, 1212-13 (8th Cir. 1998).

## III. DISCUSSION

### A.  Plaintiffs' Sixth Amendment Right to Counsel

The threshold question presented is whether Plaintiffs have a Sixth Amendment right to counsel at Judge Anglin's bail determination. The Court finds in the affirmative. The undisputed facts show that Plaintiffs' Sixth Amendment right attaches at their Rule 8.1 Hearings, that Judge Anglin's bail determination is a critical stage of their criminal proceedings, and that Plaintiffs' Sixth Amendment right was therefore violated when no counsel was appointed before their bail was determined.

The Sixth Amendment, applicable to the States by the terms of the Fourteenth Amendment, provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI.; *Missouri v. Frye*, 566 U.S. 134, 138 (2012). "The purpose of the Sixth Amendment counsel guarantee . . . is to 'protec[t] the unaided layman at critical confrontations' with his 'expert adversary,' the government, after 'the adverse positions of government and defendant have solidified' with respect to a particular alleged crime." *McNeil v. Wisconsin*, 501 U.S. 171, 177–78 (1991) (alterations in original) (quoting *United States v. Gouveia*, 467 U.S. 180, 189 (1984)). However, "[t]he Sixth Amendment Right . . . is limited by its terms: 'it does not attach until a prosecution is commenced.'" *Rothgery v. Gillespie Cnty., Tex.*, 554

U.S. 191, 198 (2008) (quoting *McNeil*, 501 U.S. at 175 and citing *Moran v. Burbine*, 475 U.S. 412, 430 (1986)). Once the right attaches, the "Sixth Amendment guarantees a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings." *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009) (quoting *United States v. Wade*, 388 U.S. 218, 227–228 (1967)).

The Sixth Amendment inquiry is thus a two-part test. First, the Court must determine whether Plaintiffs' right to counsel attached during their Rule 8.1 Hearings. And second, the Court must determine whether the Judge Anglin's bail determination was a "critical stage" of their criminal proceedings.

### 1. Attachment

"In a line of constitutional cases . . . stemming back to the Court's landmark opinion in *Powell v. Alabama*, 287 U.S. 45 (1932)," the Supreme Court has "firmly established that a person's Sixth and Fourteenth Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him, . . . whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Kirby v. Illinois*, 406 U.S. 682, 688–89 (1972) (collecting cases). In *Kirby* and its progeny, the Supreme Court explained that "our conclusion that the right to counsel attaches at the initiation of adversary judicial criminal proceedings 'is far from a mere formalism,'" *Gouveia*, 467 U.S. at 189 (quoting *Kirby*, 406 U.S. at 689),

> [f]or it is only then that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law. It is this point, therefore, that marks the commencement of the 'criminal prosecutions' to which alone the explicit guarantees of the Sixth Amendment are applicable.

*Kirby*, 406 U.S. at 689–90 (citations omitted). Consistent with this reasoning—and of particular importance here—the Supreme Court clarified in *Rothgery*, that "the right to counsel guaranteed by the Sixth Amendment applies *at the first appearance* before a judicial officer at which a defendant is told of the formal accusation against him and restrictions are imposed on his liberty." 554 U.S. at 194 (emphasis added) (citing *Brewer v. Williams*, 430 U.S. 387, 398–99 (1977) and *Michigan v. Jackson*, 475 U.S. 625, 629, n.3 (1986)).

 *Rothgery* is directly on point. There, the Supreme Court considered whether the Sixth Amendment right to counsel attached in an "article 15.17 hearing"—the first appearance before a magistrate judge that is administered under Texas law. At Rothgery's article 15.17 hearing, "[t]he arresting officer submitted a sworn 'Affidavit Of Probable Cause' that described the facts supporting the arrest . . . ." *Id.* "After reviewing the affidavit, the magistrate 'determined that probable cause existed for the arrest, . . . informed Rothgery of the accusation, set his bail at $5,000, and committed him to jail, from which he was released after posting a surety bond." *Id.*

 Judge Anglin's Rule 8.1 hearing follows the same procedure. Like the initial appearance at issue in *Rothgery*, Judge Anglin's Rule 8.1 hearing "combines the Fourth Amendment's required probable-cause determination with the setting of bail, and is the point at which the arrestee is formally apprised of the accusation against him." *Id.* at 195 (citations and footnote omitted). And like in *Rothgery*, each defendant's "arresting officer submit[s] a sworn Affidavit Of Probable Cause that describe[s] the facts supporting the arrest" and the charges against them. *Id.* "After reviewing the affidavit," Judge Anglin, like an article 15.17 magistrate judge, "determine[s] [whether] probable cause existed for the

arrest," "inform[s] [the defendants] of the accusation[s]" against them, "set[s] [their] bail," "and commit[s] them to jail," pending bond. *Id.* at 196 (internal quotation marks, alterations, and citations omitted). Based on the similarities between the two hearings, the Court finds that, under *Rothgery*, "the government has used the judicial machinery to signal a commitment to prosecute" at Judge Anglin's Rule 8.1 hearing, and Plaintiffs' right to counsel has attached. *Id*. at 198.

### 2. Critical Stage

To recap, Judge Anglin's Rule 8.1 Hearings include three stages as to each defendant. First, after reviewing the BPD's Probable Cause Affidavit before the hearing, Judge Anglin reads the defendant's charges and makes a determination as to probable cause. Second, after considering the joint bond recommendation from the State and the BPD, Judge Anglin makes his bail determination. Judge Anglin then schedules the defendant's arraignment. Third, after bail is set and the arraignment scheduled, Judge Anglin asks the defendant if they would like the State to appoint an attorney to represent them and, if so, makes a finding as to whether the defendant is indigent. If warranted, he appoints a public defender to represent the defendant in subsequent proceedings and concludes the hearing. Applying *Rothgery*, the Court finds that the Sixth Amendment right to counsel attaches at Judge Anglin's Rule 8.1 Hearings. The narrow issue is whether the second stage of those hearings—the bail determination—is a "critical stage" of Plaintiffs' criminal proceedings.

"Once attachment occurs, the accused . . . is entitled to the presence of appointed counsel during any 'critical stage' of the postattachment proceedings . . . ." *Rothgery*, 554 U.S. at 212; *see also United States v. Lewis*, 483 F.3d 871, 873 (8th Cir. 2007) ("The right

16

to counsel under the Sixth Amendment applies only to 'critical stages' of the proceedings against the defendant." (citing *Wade*, 388 U.S. at 224–25)). The critical stage determination asks whether denying counsel at a given stage is likely to compromise the defendant's trial rights. *Id.* at 226 (footnotes omitted) ("[I]n addition to counsel's presence at trial, the accused is guaranteed that he need not stand alone against the State at any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial."); *United States v. Ash*, 413 U.S. 300, 322 (1973) (Stewart, J., Concurring) (citations omitted) ("Pretrial proceedings are 'critical,' then, if the presence of counsel is essential 'to protect the fairness of the trial itself.'").

The Supreme Court and Eighth Circuit have held that arraignments, postindictment interrogations, postindictment lineups, competency hearings, plea bargain negotiations, and the entry of a guilty plea are all critical stages of a criminal proceeding. *Hamilton v. Alabama*, 368 U.S. 52, 54 (1961) (arraignment); *Massiah v. United States*, 377 U.S. 201, 206–07 (1964) (postindictment interrogation); *Wade*, 388 U.S. at 236–37 (postindictment lineup); *Raymond v. Weber*, 552 F.3d 680, 684 (8th Cir. 2009) (competency hearing); *Frye*, 566 U.S. at 143–44 (plea bargain negotiation); *Argersinger v. Hamlin*, 407 U.S. 25, 34–35 (1972) (guilty plea). By contrast, the collection and scientific analysis of evidence including clothing, handwriting exemplars, fingerprints, blood and hair samples, and DNA "are not critical stages since there is minimal risk that [defense] counsel's absence at such stages might derogate from [the defendant's] right to a fair trial." *Wade*, 388 U.S. at 227–28; *see also id.* (clothing, fingerprints, blood and hair samples); *Gilbert v. California*, 388 U.S. 263, 267 (1967) (handwriting exemplars); *Lewis*, 483 F.3d at 874 (DNA).

17

The Supreme Court has narrowed but not directly reached the question of whether the judicial officer's determination of bail at "the first appearance before a judicial officer at which a defendant is told of the formal accusation against him and restrictions are imposed on his liberty" is a critical stage. *Rothgery*, 554 U.S. at 194 (citations omitted). The closest cases on point are *Gerstein v. Pugh,* 420 U.S. 103 (1975), and *Coleman v. Alabama*, 399 U.S. 1 (1970). In *Gerstein*, the Supreme Court held that "the probable cause determination is not a 'critical stage' in the prosecution that would require appointed counsel." 420 U.S. at 122. So, whereas under *Rothgery*, attachment occurs "*at the first appearance*," 554 U.S. at 194 (emphasis added), under *Gerstein*, the Sixth Amendment does not demand the appointment of counsel at the *first stage* of Judge Anglin's Rule 8.1 hearing when he makes a finding as to probable cause. *Gerstein* thus sharpened the focus on the narrow issue here—whether the judicial officer's bail determination is, itself, a critical stage—but did not address it directly.

In *Coleman*, the Supreme Court considered whether a preliminary hearing prior to an indictment was a "critical stage" of an Alabama prosecution. 399 U.S. at 3. Under Alabama law, "the sole purposes" of the preliminary hearing were "to determine whether there [was] sufficient evidence against the accused to warrant presenting his case to the grand jury and, if so, to fix bail if the offense [was] bailable." *Id.* at 8. Applying *Wade*, the Supreme Court held that "the guiding hand of counsel at the preliminary hearing is essential to protect the indigent accused against an erroneous or improper prosecution," *id.* at 9, for the following reasons:

> First, the lawyer's skilled examination and cross-examination of witnesses may expose fatal weaknesses in the State's case that may lead the magistrate to refuse to bind the accused over. Second, in any event, the skilled interrogation of witnesses by an experienced lawyer

18

> can fashion a vital impeachment tool for use in cross-examination of the State's witnesses at the trial, or preserve testimony favorable to the accused of a witness who does not appear at the trial. Third, trained counsel can more effectively discover the case the State has against his client and make possible the preparation of a proper defense to meet that case at the trial. *Fourth, counsel can also be influential at the preliminary hearing in making effective arguments for the accused on such matters as the necessity for an early psychiatric examination or bail.*

*Id.* (emphasis added). Accordingly, the Supreme Court held that "[t]he inability of the indigent accused on his own to realize these advantages of a lawyer's assistance compels the conclusion that the Alabama preliminary hearing is a 'critical stage' of the State's criminal process at which the accused is 'as much entitled to such aid (of counsel) . . . as at the trial itself.'" *Id.* (quoting *Powell*, 287 U.S. at 57).

The *Coleman* case offers unambiguous guidance from the Supreme Court that a preliminary hearing in which "counsel can . . . be influential . . . in making effective arguments for the accused on such matters as . . . bail" may constitute a critical stage, and the Court takes that guidance seriously. *Id*. However, the instant case presents at least one distinguishing fact: Judge Anglin's Rule 8.1 hearings do not include the direct or cross-examination of witnesses. Therefore, the Court finds that although *Coleman* suggests that the judicial officer's bail determination is a critical stage, it does not answer that question directly, as applied to the undisputed facts presented here.

Looking beyond Supreme Court jurisprudence, the Court's review of the relevant case law reveals an emerging circuit split on the narrow issue presented. The Second and Third Circuits have held that a bail hearing is a critical stage. *See Higazy v. Templeton*, 505 F.3d 161, 172 (2d Cir. 2007) ("a bail hearing is a 'critical stage of the State's criminal process'" (quoting *Coleman*, 399 U.S. at 9–10)); *Ditch v. Grace*, 479 F.3d 249, 252–53 (3rd Cir. 2007) (a preliminary hearing, which includes a determination as to

whether a defendant will be discharged or bound over to the court, is a "critical stage"). Several district and state courts have held similarly. *See, e.g.*, *Torres v. Collins*, 2023 WL 6166523, at *12 (E.D. Tenn. Sept. 21, 2023) ("[A] bail hearing is a 'critical stage' of the criminal prosecution against an arrestee, requiring the presence of counsel."); *Remick v. Utah*, 2018 WL 1472484, at *10 (D. Utah Mar. 23, 2018) ("[The Defendant] had no counsel at his arraignment and bail hearing. These are critical stages in a criminal proceeding . . . ." (footnotes omitted)); *Caliste v. Cantrell*, 329 F. Supp. 3d 296, 314 (E.D. La. Aug. 6, 2018), *aff'd*, 937 F.3d 525 (5th Cir. 2019) (holding that, in Louisiana, an initial bail hearing is a "critical stage" of the proceedings because "[t]here is no question that the issue of pretrial detention is an issue of significant consequence for the accused"); *Hurrell-Harring v. New York*, 930 N.E.2d 217, 223 (N.Y. 2010) ("There is no question that a bail hearing is a critical stage of the State's criminal process." (internal quotation marks and citation omitted)); *Gonzalez v. Comm'r of Corr.*, 68 A.3d 624, 631–37 (Conn. 2013) ("[T]he [defendant] had a [S]ixth [A]mendment right to effective assistance of counsel at the arraignment stage in which proceedings pertaining to the setting of bond and credit for presentence confinement occurred . . . ."); *State v. Farm*, 571 A.2d 1023, 1030 (N.J. Super. Ct. 1990) ("The setting of bail certainly is a 'critical stage' in the criminal proceedings."); *Walsh v. Commonwealth*, 151 N.E.3d 840, 860 (Mass. 2020) ("The defendant has the right to be represented by counsel at a bail hearing . . . ."); *Valdex-Jiminez v. Eight Jud. Dist. Ct.*, 460 P.3d 976, 987 (Nev. 2020) (holding that the defendant was entitled to counsel when the state requests bail).

On the other side of the ledger, the Fifth and Ninth Circuits, as well as several district and state courts, have held that a bail hearing is not a critical stage. *See United*

20

*States v. Portillo*, 969 F.3d 144, 161 (5th Cir. 2020) (holding that an initial appearance that included a Texas state judicial officer's bail determination "b[ore] none of the markings of a critical stage"); *Farrow v. Lipetzky*, 637 F. App'x 986, 988 (9th Cir. 2016) (holding that "the preliminary bail determination made at the initial appearance [did not] render that hearing a critical stage"); *see also, e.g.*, *United States v. Bour*, 2020 WL 7353775, at *12 (N.D. Ind. Dec. 15, 2020) (holding that the defendant's initial appearance, during which he was informed of the charges against him, advised of his right to counsel, and had bail and conditions of release set, was not a critical stage); *Ransdell v. Lumpkin*, 2021 WL 4392084, at *4 (W.D. Tex. Sept. 23, 2021) ("[W]hile an Article 15.17 hearing 'plainly signals attachment,' it is not a 'critical stage' of the state criminal proceeding at which an attorney's presence is mandatory." (quoting *Rothgery*, 554 U.S. at 213)); *Roeder v. State*, 444 P.3d 379 (Kan. Ct. App. 2019) ("Roeder's first appearance and initial bail hearing was not a critical stage of his criminal proceeding.").

The Eighth Circuit provided some guidance on the issue in *Smith v. Lockhart*, 923 F.2d 1314 (8th Cir. 1991). In *Smith*, the court held that an Arkansas Rule 20 omnibus pretrial hearing was a "critical stage" of the proceeding that required representation by counsel. *Id.* at 1319. Importantly, a Rule 20 omnibus hearing occurs later in the Arkansas criminal process than a Rule 8.1 hearing, and *Smith* is distinguishable from the instant case as such. But the Eighth Circuit's reasoning with respect to the bail determination is nonetheless instructive. Citing *Coleman*, the court explained that "[t]he Supreme Court has recognized the special role played by counsel at preliminary hearings in which bail reduction motions are considered." *Id.* Accordingly, the court specifically held that the "omnibus hearing was a critical stage necessitating the assistance of counsel" because

21

"[a]t least two of Smith's motions constituted important matters in which the assistance of counsel could have been of critical importance," the first of which "was a motion to reduce bail." *Id.* The Court finds the Eighth Circuit's holding that a motion to reduce bail is a stage of a criminal proceeding in which the assistance of counsel is of "critical importance" is a directional indicator that the judicial officer's initial bail determination is likely a "critical stage" in this Circuit. However, in lieu of an instruction from the Court of Appeals that is directly on point, the Court returns to the Supreme Court's Sixth Amendment jurisprudence for further guidance on the issue.

The Supreme Court has set forth at least two conceptions of a critical stage in which counsel is necessary to protect a defendant's trial rights. The first is a "*trial-like confrontation*[ ]," e.g., a competency hearing or a hearing in which witnesses are examined, "at which counsel would help the accused in coping with legal problems or meeting his adversary." *Rothgery*, 554 U.S. at 212 n.16 (cleaned up) (emphasis added). "The presence of counsel at such critical confrontations, as at the trial itself, operates to assure that the accused's interests will be protected consistently with our adversary theory of criminal prosecution." *Wade*, 388 U.S. at 227. In *United States v. Ash*, the Supreme Court explained that "the test utilized by the Court has called for examination of the event in order to determine whether the accused required aid in coping with legal problems or assistance in meeting his adversary." 413 U.S. 300, 313 (1973). For clarity, the Court will refer to this first conception as a "trial-like" stage.

The Supreme Court's second critical-stage conception is of a stage that is, itself, so consequential that it "*might well settle the accused's fate* and reduce the trial . . . to a mere formality." *Gouveia*, 467 U.S. at 189 (citing *Wade*, 388 U.S. at 224) (emphasis

added). The Court will refer to this second conception as an "outcome-influencing" stage. The most obvious outcome-influencing stage in a pretrial criminal proceeding is a plea negotiation, in which the defendant is presented with the opportunity to "settle the[ir] [ ] fate" by pleading guilty. *Id.*; *see also Missouri v. Frye*, 566 U.S. 134, 144 (2012) ("[C]riminal defendants require effective counsel during plea negotiations. 'Anything less . . . might deny a defendant effective representation by counsel at the only stage when legal aid and advice would help him.'" (quoting *Massiah*, 377 U.S. at 204 and *Spano v. New York*, 360 U.S. 315, 326 (1959) (Douglas, J., concurring))). The Court looks to both conceptions to determine whether Judge Anglin's Rule 8.1 hearings are sufficiently trial-like or outcome-influencing to be considered a critical stage under Supreme Court precedent.

(i) Is the Bail Determination a Trial-Like Stage?

Turning first to the Supreme Court's trial-like stage framework, the Court first notes that Judge Anglin testified in his deposition that he places meaningful limits on his Rule 8.1 hearings to ensure that they are not adversarial—unlike a trial. As the Court highlighted, *supra*, Judge Anglin does not allow witnesses during his bail determination based on his interpretation of his jurisdiction, as set forth by Arkansas Supreme Court Administrative Order 18 and Arkansas Rules of Criminal Procedure 8 and 9. Accordingly, he testified that if a defendant wanted to call a witness, he would reset the bail hearing to take place before a circuit judge. (Doc. 100, ¶ 44). Without taking a position on Judge Anglin's interpretation of his jurisdiction, the Court simply observes that his bail determination is not trial-like in the sense that it does not involve direct and cross-examination of witnesses.

23

But the undisputed facts also show that Judge Anglin's bail determination include at least two trial-like features. The first is that he considers the prosecutor's bail recommendation in his bail determination, pursuant to Rule 8.5. *See* Ark. R. Crim. P. 8.5 ("The prosecuting attorney should make recommendations to the judicial officer concerning: (i) the advisability and appropriateness of pretrial release; (ii) the amount and type of bail bond; [and] (iii) the conditions, if any, which should be imposed on the defendant's release."); Doc. 98-2, pp. 45, 54 ("the State joins me in requesting that a bond of $25,000 be set on the defendant, Logan Wade Murphy"; "the State joins me in requesting that a bond of $2,500, be set on the defendant, Abigail Ella Farella"). The Court finds that the recommendation from the State as to the defendants' bond positions the State in a substantively trial-like, adversarial posture to Plaintiffs in the Rule 8.1 hearing. The State's recommendation is a single sentence, but it constitutes consequential advocacy as to the defendant's conditions of pretrial detention or release— to which the defendant is denied a parallel opportunity to respond with the assistance of counsel, and which Judge Anglin nonetheless considers. This fact is critical because it does violence to the defendant's constitutional "guarantee[ ] that he need not stand alone against the State at any stage of the prosecution" *Wade*, 388 U.S. at 226.

The second trial-like feature is Judge Anglin's consideration of the Rule 9.2 factors as he determines bail. Rule 9.2(c) instructs the judicial officer as follows:

> In setting the amount of bail the judicial officer should take into account all facts relevant to the risk of willful nonappearance including:
>
> > (i) the length and character of the defendant's residence in the community;
> >
> > (ii) his employment status, history and financial condition;
> >
> > (iii) his family ties and relationship;

24

(iv) his reputation, character and mental condition;

(v) his past history of response to legal process;

(vi) his prior criminal record;

(vii) the identity of responsible members of the community who vouch for the defendant's reliability;

(viii) the nature of the current charge, the apparent probability of conviction and the likely sentence, in so far as these factors are relevant to the risk of nonappearance; and

(ix) any other factors indicating the defendant's roots in the community.

Several of these factors are indicia that the judicial officer's bail determination is a trial-like stage because, although witnesses are not called, the opportunity to argue for the accused under the Rule 9.2 factors is "a time when [the accused] [is] clearly entitled to a lawyer's help." *Massiah v. United States*, 377 U.S. 201, 204 (1964).

First, the Court observes that Rule 9.2(c)(iv) instructs the judicial officer to consider the accused's mental condition. That consideration falls squarely within *Coleman*'s holding that "counsel can [ ] be influential . . . in making effective arguments for . . . the necessity for an *early psychiatric examination* or bail." 399 U.S. at 3. As Plaintiffs argue in their Brief,

> [p]erhaps one of the most effective ways an attorney can help is with someone who is mentally ill. As anyone who practices in the criminal justice system[ ] knows, many defendants suffer from mental illness or a developmental disability. . . . If a defendant is mentally ill or developmentally delayed, he may not be mentally competent to even understand the judge's questions. He may be suffering from a psychotic break or be unable to understand . . . . An attorney would be invaluable in these instances by explaining to the judge that the defendant has mental incapabilities[ ] or explain[ing] that his family has already found a facility for the defendant to receive treatment. He may be able to immediately request a psychological examination as the Court in *Coleman* noted.

25

(Doc. 97, pp. 9–10). The Court agrees. Mentally ill defendants undoubtably "require[ ] aid in coping with legal problems or assistance in meeting [their] adversary" through argument at the bail determination. *Ash*, 413 U.S. at 313. Yet Judge Anglin testified that he is reticent to ask unrepresented defendants about mental health conditions at all because "as [ ] judge[s], we have to be cautious that we're not embarrassing people and not making people reveal if they have a mental disorder. . . . I am cautionary that there is a degree of privacy that people are entitled to." (Doc. 98-1, p. 54:14–24). The Court empathizes with and shares Judge Anglin's concern. But it only underscores that an attorney's advocacy is critical at this stage. Representation ensures that mentally ill defendants are not left to "stand alone against the State," *Wade*, 388 U.S. at 226, leaving Judge Anglin unaware of their condition as he determines their bail under the Rule 9.2 factors.

Similarly, although Rule 9.2(c)(iv) also includes "reputation" and "character" as factors to be assessed in the bail determination, it is undisputed that Judge Anglin typically does not ask about these factors to prevent defendants from incriminating themselves or discussing the facts of the case in an adversarial manner, which he does not allow. (Doc. 98-1, p. 28 ("I have to continually remind people that [they] have the right to remain silent when they want to talk about the facts of the case" because, in some cases, "people will think they are helping but they are actually partially incriminating themselves.")). Attorney representation would undoubtably mitigate these obstacles to advocacy under Rule 9.2. Indeed, Judge Anglin testified to that effect: "I feel a public defender could be helpful because the public defender would be able to maybe have a little more influence over whether the person is going to talk about the facts of the case." *Id*. at 28.

Judge Anglin also noted several other factors in his deposition testimony that would be impacted by an attorney's advocacy, including: identifying family members present at the hearing and those who would help ensure that the defendant appears for future court dates, Rule 9.2(c)(vii); presenting documents for the judge to consider, like a pay-stub or work identification as evidence of employment, Rule 9.2(c)(ii); and highlighting where a defendant's criminal history shows their attendance in court, not failure to appear, Rule 9.2(c)(vi, viii). (Doc. 98-1, p. 20–21 ("[T]hat would be [ ] helpful information for the Court.")). These factors also show that the opportunity to advocate on the defendant's behalf under Rule 9.2 is a trial-like element of Judge Anglin's bail determination.

Consistent with Judge Anglin's testimony, both Ms. Farella and Mr. Murphy testified that they, in effect, "required aid in coping with legal problems or assistance in meeting [their] adversary." *Ash*, 413 U.S. at 313. At her deposition, Ms. Farella testified that had she been represented by an attorney during her bail hearing, "I probably would have been able to understand the situation a lot better, probably would have been able to get out [of jail] faster, and probably wouldn't have lost my job, my house, and my car" as a result of her pretrial incarceration. (Doc. 98-4, p. 22). Mr. Murphy testified that he didn't ask Judge Anglin why he set the bail at $40,000 because he "didn't want to argue" or "make the bail go up more." (Doc. 98-3, p. 31).

These facts comport with empirical research on the effects of appearing unrepresented at a bail hearing. As one of the scholars cited in Plaintiffs' brief put it, "[s]ubstantial evidence demonstrates that pretrial counsel improves outcomes for defendants, including improved likelihood of pretrial release and lower bail amounts

27

imposed, and more favorable plea negotiations." Shima Baradaran Baughman, *Taming Dangerousness*, 112 Geo. L.J. 215, 245 (2023) (citing Douglas L. Colbert, *"With a Little Help from My Friends:" Counsel at Bail and Enhanced Pretrial Justice Becomes the New Reality*, 55 Wake Forest L. Rev. 795, 803 (2020) ("With representation, data shows that an incarcerated defendant charged with a nonviolent crime stands five times as likely to be released on recognizance or affordable bail than an unrepresented defendant.").

Another scholar, discussing another study run by Professor Colbert, noted that:

> according to a study in Baltimore, defendants with counsel are more than twice as likely to be released on their own recognizance. And, when represented defendants are granted bail, it is on average around six hundred dollars less than what is set for unrepresented defendants. Appointing counsel at bail hearings, then, [ ] substantially reduce[s] the amount of time a substantial number of indigent defendants spend in jail awaiting their trials. And that [ ] cut[s] down on the number of plea deals those defendants have to take just to get out of jail—regardless of their guilt or innocence.

Charlie Gerstein, Note, *Plea Bargaining and the Right to Counsel at Bail Hearings*, 111 Mich. L.R. 1513, 1516 (2013) (citing Douglas L. Colbert et al., *Do Attorneys Really Matter? The Empirical and Legal Case for the Right to Counsel at Bail*, 23 Cardozo L. Rev. 1719, 1720, 1753–54 (2002) (describing the results of a randomized experiment on the effects of counsel at bail determinations in Baltimore) [hereinafter the Baltimore Study]).

Viewed in light of this empirical context, the trial-like elements of Judge Anglin's bail determination reveal the subtly orthogonal trajectories of the prosecutor and defendant appearing before him in the Benton County Jail. Though neither party is formally represented by counsel and the hearings are nominally non-adversarial, prosecutors submit a bail recommendation, which Judge Anglin considers. Conversely, indigent defendants are left "stand[ing] alone," *Wade*, 388 U.S. at 226, unable to

effectively advocate for themselves under some Rule 9.2 factors (e.g., character and reputation), and functionally barred from doing so under others (e.g., mental condition).

The Court reiterates that, at first blush, there are important distinctions between Judge Anglin's Rule 8.1 Hearings and more adversarial hearings in which witnesses are examined and cross-examined, like the preliminary hearing at issue in *Coleman*. But as the Seventh Circuit recently explained in *Garcia v. Hepp*, the Supreme Court's reasoning in *Rothgery*, *Kirby*, *Brewer*, *Jackson*, and its other Sixth Amendment cases emphasizes "the Sixth Amendment's commitment to substance over form." *Garcia v. Hepp*, 65 F.4th 945, 952 (7th Cir. 2023). Here, the substance is clear: On balance, the undisputed facts show that the presence of counsel at Judge Anglin's bail determination, "as at the trial itself, operates to assure that the accused's interests will be protected consistently with our adversary theory of criminal prosecution." *Wade*, 388 U.S. at 227. For the purpose of the critical-stage analysis that the Sixth Amendment demands, the Court finds Judge Anglin's bail determination to be a substantively trial-like stage.

(ii) Is the Bail Determination an Outcome-Influencing Stage?

The Court next considers whether Judge Anglin's bail determination is an outcome-influencing stage, in which "counsel's absence . . . might derogate from [Plaintiffs'] right to a fair trial." *Wade*, 388 U.S. at 226. Here, the Court begins with the research cited in Plaintiffs' Brief. To start, the empirical work by Professor Colbert suggests an important relationship between representation at bail hearings and pleading guilty prior to trial. In 2002, Professor Colbert published the results of a randomized experiment conducted in Baltimore, in which several thousand low-income criminal defendants were assigned an attorney to represent them at bail hearings over the course of eighteen months. The study was remarkable for two reasons. First, it was one of the

29

first social science experiments to "present[ ] convincing empirical data that the benefits of representation are *measurable*." Baltimore Study at 1720 (emphasis added). Measurability is no small thing. Since an outcome-influencing stage is one in which counsel's absence might derogate from Plaintiffs' right to a fair trial, the best way to determine whether a stage is outcome-influencing is to measure the effect of the presence of counsel at that stage on subsequent outcomes that serve as reliable proxies for trial fairness. In an ideal study, the presence of counsel would be the independent variable that researchers would isolate to observe its effect on the dependent variable— in this instance an outcome that would serve as a strong proxy for trial fairness. The Baltimore Study solved a piece of this methodological puzzle by measuring the effect of counsel at bail hearings on *pretrial* outcomes.

The results of that measurement are the second reason the Baltimore Study was remarkable. It found that "more than two-and-one-half times as many represented defendants were released on recognizance from pretrial custody as were unrepresented defendants" and, additionally, that "two-and-one-half times as many represented defendants had their bail reduced to an affordable amount." *Id.* The importance of these results cannot be overstated for criminal defendants. *Gerstein*, 420 U.S. at 114 ("The consequences of prolonged detention may be more serious than the interference occasioned by arrest. Pretrial confinement may imperil the suspect's job, interrupt his source of income, and impair his family relationships." (citations omitted)). But pretrial outcomes are imperfect proxies for trial fairness. Whereas the Baltimore Study shows that, on average, the presence of counsel at bail hearings significantly improves pretrial detention outcomes for indigent defendants, it does little to measure its effect on trial

30

fairness itself. Put differently, the Baltimore Study shows that bail hearings are a pretrial *process-influencing* stage (because the presence of counsel improves pretrial detention outcomes for indigent defendants), but it does not directly measure whether bail hearings are *outcome-influencing* with respect to trial fairness.

Recall that the archetype outcome-influencing stage identified by the Supreme Court's Sixth Amendment jurisprudence is a plea negotiation, *Missouri v. Frye*, 566 U.S. 134, 144 (2012), because, more than any other pretrial stage of a criminal proceeding, plea bargaining "might well settle the accused's fate and reduce the trial . . . to a mere formality." *Gouveia*, 467 U.S. at 189 (citing *Wade*, 388 U.S. at 224). Applying this guidance from the Supreme Court, several scholars cited in Plaintiffs' Brief sought to show a theoretical connection between representation at bail hearings and the outcome of plea negotiations as a better proxy measure for trial fairness—including by theorizing that unrepresented defendants are more likely to plead guilty, *regardless of whether they are guilty*. *See, e.g.*, Gerstein, *supra*, at 1514.

That theory is a powerful indicator that bail hearings are indeed an outcome-influencing stage with respect to trial fairness. But the Court is well aware of the evidentiary expanse between theory and proof, and it cannot bridge the gap between the Baltimore Study and the Supreme Court's outcome-influencing measure of criticality on theory alone.

Fortunately, in 2017—nine years after *Rothgery*—another group of researchers published the results of a second empirical study that closes the gap. Paul Heaton, Sandra Mayson & Megan Stevenson, *The Downstream Consequences of Misdemeanor*

*Pretrial Detention*, 69 Stan. L. Rev. 711, 714 (2017) [hereinafter the Harris County Study].

They described the gap this way:

> There is ample documentation that those detained pretrial are convicted more frequently, receive longer sentences, and commit more future crimes than those who are not (on average). But this is precisely what one would expect if the system detained those who pose the greatest flight or public safety risk. One key question for pretrial law and policy is whether detention actually *causes* the adverse outcomes with which it is linked, independently of other factors. On this question, past empirical work is inconclusive.

*Id.* at 714. To address this problem, the Harris County Study used data from hundreds of thousands of misdemeanor cases resolved in Harris County, Texas to measure the effect of pretrial detention on trial outcomes, including the likelihood of conviction, the likelihood of being sentenced to jail or prison, and the length of carceral sentences. *Id.* The researchers found that "detained defendants are 35% more likely than similarly situated releasees to plead guilty, are 43% more likely to be sentenced to jail, and receive sentences that are more than twice as long on average." *Id.* at 711.

The Harris County study found a near-perfect proxy for trial fairness in its measurement of the effect of pretrial detention on the defendant's likelihood of pleading guilty—again, regardless of *actual* guilt. Put simply, a trial that is obviated by an innocent defendant pleading guilty to avoid pretrial detention is certainly not a fair one. However, although the Harris County Study measured an apposite *dependent* variable (the defendant's likelihood of pleading guilty), its independent variable was pretrial detention—not representation at a bail hearing, the Court's focus here.

Taken together, however, the Baltimore and Harris County Studies complete the two-step puzzle; each provides a piece of empirical evidence that representation at bail hearings is outcome-determinative. The Baltimore Study shows that unrepresented

32

criminal defendants are much more likely than represented defendants to be held in pretrial detention. And the Harris County Study shows that detained defendants are much more likely to plead guilty than releasees, regardless of their actual guilt. These findings dovetail to present empirical evidence that defendants who are unrepresented at bail hearings are much more likely to plead guilty before trial, thus "reduc[ing] the trial . . . to a mere formality." *Gouveia*, 467 U.S. at 189 (citing *Wade*, 388 U.S. at 224)

The Court finds this research to be an important advance in understanding the effects of representation at bail hearings on trial outcomes. *Compare Gerstein*, 420 U.S. at 123 ("To be sure, pretrial custody may affect to some extent the defendant's ability to assist in preparation of his defense, but this does not present the high probability of substantial harm identified as controlling in *Wade* and *Coleman*."), *with* Heaton, Mayson & Stevenson, *supra* at 711 ("detained defendants are *35% more likely . . . to plead guilty*" than similarly situated releasees (emphasis added)). Using data that were unavailable to the Supreme Court in *Rothgery* and its progeny, the Baltimore and Harris County studies show that the judicial officer's bail determination is an outcome-influencing stage.

To be sure, the Court cannot reasonably infer how the outcome-influencing theory of bail representation played out in Ms. Farella's and Mr. Murphy's cases directly. It is much too great a leap to assume that appearing with counsel at their bail determinations would have caused Judge Anglin to assign them affordable bonds or that bonding out would have caused them to take their cases to trial. The measurement methods employed in the Baltimore and Harris County Studies have far more explanatory power at the population level than the individual level—that's the nature of social science and statistics. But Plaintiffs appear in this lawsuit as representatives of *a class.* And based on the

33

methodological sophistication of the Baltimore and Harris County Studies, the Court finds it reasonable to assume that their results are extensible to the *population* of indigent defendants that Plaintiffs represent.

Returning to the case law, in *Torres v. Collins*, the U.S. District Court for the Eastern District of Tennessee incorporated the outcome-influencing theory in its holding that "a bail hearing is a 'critical stage' of the criminal prosecution against an arrestee, requiring the presence of counsel." 2023 WL 6166523, at *12 (E.D. Tenn. Sept. 21, 2023).

> Without the assistance of counsel at pretrial detention hearings, an arrestee's case can suffer significant consequences because erroneous pretrial detention can negatively impact an arrestee's ability to meet with counsel, result in physical and psychological burdens that can obstruct trial preparation with counsel, *and heighten the possibility that an arrestee will accept a plea agreement he would have otherwise rejected but for his erroneous pretrial detention*.

*Id.* (emphasis added) (footnote omitted). The Court finds *Torres* to be a persuasive application of the outcome-influencing theory to Sixth Amendment law.

A similar logic applies here. Applying the Supreme Court's reasoning in *Wade* to the empirical findings and undisputed facts at bar, the Court finds that bail hearings are an outcome-influencing stage because counsel's absence at the bail determination derogates from the defendants Sixth Amendment trial rights by increasing the likelihood that defendants will plead guilty before trial. *See* 388 U.S. at 226.

* * *

For these reasons, the Court concludes that Plaintiffs' Sixth Amendment right to counsel attaches at Judge Anglin's Rule 8.1 Hearings and that his bail determination is a "critical stage." With respect to attachment, *Rothgery* is directly on point: it clearly shows that Plaintiffs' right to counsel attaches at the Rule 8.1 hearing. And on the balance of the legal authority and undisputed facts presented, the Court finds that Judge Anglin's bail

34

determination is a critical stage of Plaintiffs' criminal proceedings. This finding is consistent with the Supreme Court's trial-like and outcome-influencing frameworks for critical-stage analysis and with guiding precedent. *See*, *e.g.*, *Coleman*, 399 U.S. at 9 ("Plainly the guiding hand of counsel at the preliminary hearing is essential to protect the indigent accused against an erroneous or improper prosecution" because, *inter alia*, "counsel can . . . be influential . . . in making effective arguments for the accused on such matters as . . . bail."); *Smith*, 923 F.2d at 1319 (The assistance of counsel is of "critical importance" at a hearing that includes a bail determination.).

It follows that Plaintiffs have a Sixth Amendment right to counsel at Judge Anglin's bail determination, and that their right to counsel was violated when none was appointed at their Rule 8.1 Hearings before bail was set. Accordingly, Plaintiffs' Motion for Summary Judgment (Doc. 96) is **GRANTED** as to their Sixth Amendment Claim and request for declaratory judgment, and Judge Anglin's Motion for Summary Judgment (Doc. 99) is **DENIED** as to the same.[6]

## B. Injunctive Relief

In addition to a declaratory judgment, Plaintiffs ask the Court to enter a permanent injunction ordering that indigent defendants must have appointed counsel present at bail hearings before Judge Anglin. (Doc. 34, ¶ 50). The Court considers the injunction under the following legal standard:

> "A permanent injunction requires the moving party to show actual success on the merits." If actual success is found, courts must then

---

[6] Because Plaintiffs' Fourteenth Amendment Due Process and Equal Protection claims mirror their Sixth Amendment Claims, the Court's analysis and conclusion would ultimately be the same. Consequently, having ruled in their favor on the Sixth Amendment claim, the Court need not reach, address, or remedy Plaintiffs' theories under Counts II and III.

consider three factors to determine whether a permanent injunction is warranted: "(1) the threat of irreparable harm to the moving party; (2) the balance of harms with any injury an injunction might inflict on other parties; and (3) the public interest."

*Miller v. Thurston*, 967 F.3d 727, 735–36 (8th Cir. 2020) (quoting *Oglala Sioux Tribe v. C & W Enters., Inc.*, 542 F.3d 224, 229 (8th Cir. 2008)); *see also Dataphase Systems, Inc. v. C.L. Systems, Inc.*, 640 F.2d 109, 113 (8th Cir.1981) (en banc) (applying these factors to a preliminary injunction analysis); *Bank One, Utah v. Guttau*, 190 F.3d 844, 847 (8th Cir. 1999) ("[T]he four *Dataphase* factors are applicable in cases involving permanent injunctions."). Plaintiffs have shown actual success on the merits, so the Court turns to the remaining three *Dataphase* factors.

### 1. Irreparable Harm to Plaintiff

"To succeed in demonstrating a threat of irreparable harm, 'a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief.'" *S.J.W. ex rel. Wilson v. Lee's Summit R-7 Sch. Dist.*, 696 F.3d 771, 778 (8th Cir. 2012) (quoting *Roudachevski v. All–Am. Care Ctrs., Inc.*, 648 F.3d 701, 706 (8th Cir.2011) and *Iowa Utils. Bd. v. Fed. Commc'ns Comm'n*, 109 F.3d 418, 425 (8th Cir.1996)). Here, the harm to Plaintiffs is clearly irreparable. The undisputed facts show that their Sixth Amendment right to counsel was violated. And the right to counsel of the class they represent will continue to be violated absent an injunction. Moreover, the certain constitutional harm to Plaintiffs causes them to "suffer[ ] a loss of liberty—which is perhaps the best example of irreparable harm." *Matacua v. Frank*, 308 F. Supp. 3d 1019, 1025 (D. Minn. 2018). The Court finds that this factor weighs heavily in favor of injunctive relief.

## 2. Balance of Harms

The next factor requires that "a court should flexibly weigh the case's particular circumstances to determine whether . . . justice requires the court to intervene . . . ." *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1179 (8th Cir. 1998) (citation and internal quotation marks omitted). "When balancing harms, the balance must tip 'decidedly in favor' of the requesting party." *CitiMortgage, Inc. v. Sellors*, 2017 WL 6398174, at *12 (D. Minn. Nov. 21, 2017), *report and recommendation adopted*, 2017 WL 6389673 (D. Minn. Dec. 13, 2017) (quoting *United Indus. Corp.*, 140 F.3d at 1184).

On one hand, Plaintiffs face the irreparable harm of appearing unrepresented at a critical stage of the criminal proceedings against them in violation of their Sixth Amendment right to counsel. And Judge Anglin testified that he wishes public defenders were present at and engaged in his bail determinations—he believes it would benefit the judicial system for them to do so and would welcome their participation. (Doc. 98-2, pp. 22, 56 ("I would prefer that the public defender's office . . . show up at the bond hearings. . . . I think it would be beneficial.")).

On the other hand, the Public Defenders argue that the requested injunction would strain their capacity to provide effective public defense services because public defenders would have to attend bail hearings in addition to their current duties. However, their argument is undercut by the undisputed fact that in Washington County, an adjacent county in the same metropolitan area, which is nearly identical size, public defenders (and prosecutors) *do* attend Rule 8.1 hearings. Moreover, to the Court's knowledge, there is no fiscal-strain exception to a remedy that merely requires compliance with the Constitution. The Court acknowledges the significant workload that public defenders

37

face—they are among our State's most dedicated public servants and form the very foundation of our criminal justice system. But the paramount importance of their constitutional role is precisely why the Court cannot find that the administrative burden they face outweighs the injury to Plaintiffs' Sixth Amendment rights. The balance of harms weighs heavily towards Plaintiffs.

### 3. Public Interest

Turning, to the last *Dataphase* factor, the Court restates the axiom that "[i]n the end, 'it is always in the public interest to protect constitutional rights.'" *Carson v. Simon*, 978 F.3d 1051, 1061 (8th Cir. 2020) (quoting *Phelps-Roper v. Nixon*, 545 F.3d 685, 690 (8th Cir. 2008), *overruled on other grounds by Phelps-Roper v. City of Manchester*, 697 F.3d 678, 692 (8th Cir. 2012) (en banc)). Here, Plaintiffs' Sixth Amendment right to counsel is at stake, and it is in the public interest to enforce it.

* * *

Taken together, the Court finds that the *Dataphase* factors show that a permanent injunction is warranted. Plaintiffs have shown success on the merits, and the other *Dataphase* factors clearly weigh in their favor. Plaintiffs' Motion for Summary Judgment is thus **GRANTED** as to their prayer for injunctive relief.

### IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Summary Judgment (Doc. 96) is **GRANTED** and Defendant Anglin's Motion for Summary Judgment (Doc. 99) is **DENIED**.

38

**IT IS FURTHER ORDERED** that:

1. Plaintiffs' prayer for declaratory relief is granted as to Count I.

2. Defendants and their respective officers, agents, and attorneys are immediately enjoined: they must ensure that indigent defendants are represented by appointed counsel at Judge Anglin's Rule 8.1 Hearings when he determines bail.

   Judgment will enter contemporaneously with this opinion.

   **IT IS SO ORDERED** on this 21st day of August, 2024.

   _____
   TIMOTHY L. BROOKS
   UNITED STATES DISTRICT JUDGE

**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

**ABIGAIL FARELLA; LOGAN W. MURPHY;**
**and All Others Similarly Situated**                                        **PLAINTIFFS**

**V.**                                **CASE NO. 5:22-CV-5121**

**DISTRICT JUDGE A.J. ANGLIN;**
**GREGG PARRISH; and JAY SAXTON**                              **DEFENDANTS**

<u>**JUDGMENT**</u>

    **IT IS HEREBY ORDERED AND ADJUGED** that for the reasons stated in the Court's Memorandum Opinion and Order filed this day, Plaintiffs' Motion for Summary Judgment (Doc. 96) is **GRANTED** and Defendant Anglin's Motion for Summary Judgment (Doc. 99) is **DENIED**.

    **IT IS FURTHER ORDERED, ADJUGED, AND DECLARED** that the certified class of Plaintiffs have a Sixth Amendment right to counsel at Judge Anglin's bail determinations, and that Plaintiffs right to counsel was violated by Defendants when none was appointed at their Rule 8.1 Hearings before bail was set.

    **IT IS THEREFORE FURTHER ORDERED, ADJUGED, AND DECREED** that Defendants and their respective officers, agents, and attorneys are immediately **ENJOINED**: They must ensure that indigent defendants are represented by appointed counsel at Judge Anglin's Rule 8.1 Hearings when he determines bail.

    **IT IS SO ORDERED AND ADJUDGED** on this 21st day of August, 2024.

                                              _____
                                           TIMOTHY L. BROOKS
                                         UNITED STATES DISTRICT JUDGE

## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
## FAYETTEVILLE DIVISION

ABIGAIL FARELLA; LOGAN W. MURPHY;
and All Others Similarly Situated                                              PLAINTIFFS,

v.                                      No. 5:22-cv-05121-TLB

DISTRICT JUDGE A.J. ANGLIN;
Gregg Parrish; and JAY SAXTON                                                 DEFENDANTS.

### NOTICE OF APPEAL

Defendant District Judge A.J. Anglin gives notice of his appeal to the United States Court

of Appeals for the Eighth Circuit from this Court's Memorandum Opinion and Order (Doc. 120)

and Judgment (Doc. 121) entered on August 21, 2024.

The Eighth Circuit has jurisdiction because District Judge Anglin challenges a final

decision of the district court.  28 U.S.C. 1291; *see, e.g.*, *United Fire & Cas. Co. v. Titan*

*Contractors Serv., Inc.*, 751 F.3d 880, 886–87 (8th Cir. 2014).

Dated: September 19, 2024               Respectfully,

                                        TIM GRIFFIN
                                          Arkansas Attorney General

                                        DYLAN L. JACOBS (2016167)
                                          Deputy Solicitor General
                                        CHRISTINE A. CRYER (2001082)
                                          Senior Assistant Solicitor General
                                        OFFICE OF THE ARKANSAS ATTORNEY GENERAL
                                        323 Center Street, Suite 200
                                        Little Rock, AR 72201

                                        *Counsel for District Judge A.J. Anglin*

# U.S. COURT OF APPEALS - EIGHTH CIRCUIT
# NOA SUPPLEMENT

Please note any additions or deletions to the style of the case from the style listed on the docket sheet or attach an amended docket sheet with the final style of the case.

Western District of Arkansas  -  FAYETTEVILLE DIVISION

**Civil Case Number 5:22cv5121,  Farella, et al v. Anglin, et al**

Length of Trial:

Financial Status:    Fee Paid?                                    YES

                If NO, has IFP been granted?            Choose an item.

                Is there a pending motion for IFP?      Choose an item.

Are there any other post-judgment motions?      NO

Please identify the court reporter.

        If no court reporter, please check   ☒

        Name and Phone Number      Choose an item.

SPECIAL COMMENTS: