No. 24-2914

ABIGAIL FARELLA et al.,
Plaintiffs-Appellees

v.

DISTRICT JUDGE A.J. ANGLIN,
Defendant-Appellant.

On Appeal from the United States District Court
for the Western District of Arkansas
No. 5:22-CV-5121 (Hon. Timothy L. Brooks)

## Defendant-Appellant's Opening Brief

TIM GRIFFIN
 Arkansas Attorney General

DYLAN L. JACOBS
 Deputy Solicitor General
CHRISTINE A. CRYER
 Senior Assistant Attorney General
OFFICE OF THE ARKANSAS
 ATTORNEY GENERAL
323 Center St., Suite 200
Little Rock, AR 72201
(501) 682-3661
dylan.jacobs@arkansasag.gov

*Counsel for Appellant*

## SUMMARY OF THE CASE AND STATEMENT REGARDING ORAL ARGUMENT

The district court below held that an initial bail determination is a critical stage of a criminal proceeding triggering a right to counsel under the Sixth Amendment. It entered a permanent injunction requiring state District Judge Anglin to ensure that indigent defendants are appointed counsel for these bail determinations. Its decision should be reversed for at least three reasons.

*First*, Plaintiffs—criminal defendants whose bail was set by Judge Anglin—lack standing to seek prospective injunctive relief based on past injuries that have no prospect of reoccurring. And without standing, they cannot represent a class. *Second*, *Heck v. Humprey*'s favorable-termination rule bars Sixth Amendment challenges like this because a ruling in Plaintiffs' favor necessarily undermines their convictions. *Third*, on the merits, the district court badly erred in reaching its peculiar conclusion that bail determinations are a critical stage under the Sixth Amendment. It not only misapplied the relevant legal standard, but relied heavily on its own review of statistical research and law-review articles to make sweeping factual determinations about the effects of the denial of bail on a defendant's likelihood of later pleading guilty. Finally, even if Plaintiffs could succeed on the merits, judicial immunity precludes injunctive relief here.

Judge Anglin requests 20 minutes for oral argument.

Appellate Case: 24-2914     Page: 2     Date Filed: 11/21/2024 Entry ID: 5459162

# Table of Contents

SUMMARY OF THE CASE AND STATEMENT REGARDING ORAL
ARGUMENT ........................................................................................... ii

STATEMENT OF JURISDICTION ........................................................ viii

STATEMENT OF THE ISSUES PRESENTED ...................................... ix

STATEMENT OF THE CASE .................................................................. 1

    A.   Factual Background ....................................................................... 1

    B.   Arrests and Plaintiffs' Rule 8.1 hearings .................................... 6

    C.   Procedural Background .................................................................. 9

STANDARD OF REVIEW ..................................................................... 12

SUMMARY OF THE ARGUMENT ....................................................... 13

ARGUMENT ........................................................................................... 15

    I.    Plaintiffs lack standing. ............................................................... 15

    II.   Plaintiffs' challenge is *Heck*-barred. ......................................... 18

    A.   Success for Plaintiffs implies the invalidity of their convictions. ........... 19

    B.   Judge Anglin's *Heck* argument is not forfeited, and even if it were, this
Court may still consider it. ............................................................. 21

    III.   Bail determination in Rule 8.1 hearings is not a critical stage. ................... 24

    A.   Judge Anglin's non-adversarial bail determinations do not resemble a
trial. ............................................................................................... 25

    B.   Bail determination is not outcome-determinative of a defendant's case so
as to render it a critical stage. .................................................... 29

    IV.   The district court's injunction against Judge Anglin was improper. .......... 33

CONCLUSION ....................................................................................... 35

# Table of Authorities

*Acosta v. Artuz*,
   221 F.3d 117 (2d Cir. 2000)....................................................................22

*Argersinger v. Hamlin*,
   407 U.S. 25 (1972) ............................................................................17

*Becht v. United States*,
   403 F.3d 541 (8th Cir. 2005)..............................................................19

*Best v. Kelly*,
   39 F.3d 328 (D.C. Cir. 1994) .............................................................21

*Carr v. O'Leary*,
   167 F.3d 1124 (7th Cir. 1999)......................................................21, 23

*Colvin v. LeBlanc*,
   2 F.4th 494 (5th Cir. 2021)................................................................21

*Childress v. Fox Assocs., LLC*,
   932 F.3d 1165 (8th Cir. 2019)............................................................11

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983) ..........................................................................x, 17

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) ...........................................................................15

*Clarke v. Stalder*,
   121 F.3d 222 (5th Cir. 1997)..............................................................23

*Coleman v. Alabama*,
   399 U.S. 1 (1970) ...............................................................................25

*Day v. McDonough*,
   547 U.S. 198 (2006) ...........................................................................22

*Dixon v. Hodges*,
   887 F.3d 1235 (11th Cir. 2018)..........................................................21

*Edwards v. Balisok*,
   520 U.S. 641 (1997) ...........................................................................20

*Farrow v. Lipetzky*,
   No. 12-CV-06495-JCS, 2017 WL 1540637 (N.D. Cal. Apr. 28, 2017) ..............19

*Gideon v. Wainwright*,
   372 U.S. 335 (1963) ...........................................................................24

iv

*Gilbert v. California,*
    388 U.S. 263 (1967) ..........................................................................29

*Hadley v. Werner,*
    753 F.2d 514 (6th Cir.1985)................................................................21

*Hamilton v. City of Hayti,*
    948 F.3d 921 (8th Cir. 2020)...............................................................x,

*Heck v. Humphrey,*
    512 U.S. 477 (1994) .......................................................ii, x, 12, 17-23

*Justice Network Inc. v. Craighead Cnty.,*
    931 F.3d 753 (8th Cir. 2019)......................................................x, 32, 33

*Laredo Ridge Wind, LLC v. Neb. Pub. Power Dist.,*
    11 F.4th 645 (8th Cir. 2021) ...............................................................11

*Laughlin v. Stuart,*
    No. 22-1742, 2022 WL 12165755 (8th Cir. Oct. 21, 2022)....................19

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) ..........................................................................14

*Marlowe v. Fabian,*
    676 F.3d 743 (8th Cir. 2012)...............................................................18

*Massiah v. United States,*
    377 U.S. 201 (1964) ..........................................................................27

*McDaniel v. Precythe,*
    897 F.3d 946 (8th Cir. 2018)......................................................... 14-15

*Miller v. Thurston,*
    967 F.3d 727 (8th Cir. 2020)...............................................................11

*Missouri v. Frye,*
    566 U.S. 134 (2012) ..........................................................................29

*Mitchell v. Kirchmeier,*
    28 F.4th 888 (8th Cir. 2022)................................................................21

*Montejo v. Louisiana,*
    556 U.S. 778 (2009) ..........................................................................24

*Mosby v. Ligon,*
    418 F.3d 927 (8th Cir. 2005)..........................................................x, 15

*Murthy v. Missouri,*
    144 S. Ct. 1972 (2024) .......................................................................15

v

*O'Brien v. Town of Bellingham*,
   943 F.3d 514 (1st Cir. 2019) ..................................................................21

*O'Shea v. Littleton*,
   414 U.S. 488 (1974) ................................................................ x, 15-17

*Preiser v. Rodriguez*,
   411 U.S. 475 (1973) ..................................................................21

*Raymond v. Weber*,
   552 F.3d 680 (8th Cir. 2009)........................................................x, 17, 26

*Robinson v. Freeze*,
   15 F.3d 107 (8th Cir. 1994)........................................................32

*Rothgery v. Gillespie Cnty., Tex.*,
   554 U.S. 191 (2008) ..................................................................x, 25

*SD Voice v. Noem*,
   60 F.4th 1071 (8th Cir. 2023)........................................................11

*Sheldon v. Hundley*,
   83 F.3d 231 (8th Cir. 1996)........................................................18

*Smith v. Lockhart*,
   923 F.2d 1314 (8th Cir. 1991)........................................17, 26, 29

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ................................................................ 14-15

*Sweeney v. United States*,
   766 F.3d 857 (8th Cir. 2014)........................................................x, 19

*Taylor Corp. v. Four Seasons Greetings, LLC*,
   403 F.3d 958 (8th Cir. 2005) ..................................................................11

*Taylor v. Owens*,
   990 F.3d 493 (6th Cir. 2021)........................................................22

*Teagan v. City of McDonough*,
   949 F.3d 670 (11th Cir. 2020)........................................................21

*Thomas v. Eschen*,
   928 F.3d 709 (8th Cir. 2019)........................................................18, 23

*United States v. Ash*,
   413 U.S. 300 (1973) ..................................................................17

*United States v. Cronic*,
   466 U.S. 648 (1984) ..................................................................19, 20

vi

*United States v. Gouveia,*
    467 U.S. 180 (1984) ................................................................ 25-26

*United States v. Lewis,*
    483 F.3d 871 (8th Cir. 2007)....................................................17, 29

*United States v. Samuels,*
    808 F.2d 1298 (8th Cir. 1987)............................................................28

*United States v. Wade,*
    388 U.S. 218 (1967) .............................................................27, 28, 29

*Vuyanich v. Smithton Borough,*
    5 F.4th 379 (3d Cir. 2021)................................................................21

*Washington v. Los Angeles Cnty. Sheriff's Dep't,*
    833 F.3d 1048 (9th Cir. 2016)...........................................................21

*Wilkinson v. Dotson,*
    544 U.S. 74 (2005) .................................................................. 18, 21-22

*Woods v. Donald,*
    575 U.S. 312 (2015) .....................................................................19, 20

*Wood v. Milyard,*
    566 U.S. 463 (2012) . ................................................................. 22-23

**Rules, Statutes & Constitutional Provisions**

Ark. R. Crim. P. 8. ........................................ 16, 9, 16, 20, 23, 26-27, 33

Ark. R. Crim. P. 9 ................................................................. 3, 10, 27-28

28 U.S.C. 1291 ...............................................................................ix,

28 U.S.C. 1331 ...............................................................................ix,

28 U.S.C. 2441 ................................................................................21

28 U.S.C. 2255 ................................................................................21

42 U.S.C. 1983 ..............................................................12, 18, 22, 32

U.S. Const. amend. VI .............................................. 11-12, 13, 20, 23, 24

U.S. Const. amend. XIV ...................................................................24

U.S. Const. art. III ...........................................................................16

Appellate Case: 24-2914   Page: 7   Date Filed: 11/21/2024 Entry ID: 5459162

## STATEMENT OF JURISDICTION

The district court's subject-matter jurisdiction rests on 28 U.S.C. 1331. The district court entered a final opinion and order granting Plaintiffs a permanent injunction on August 21, 2024. App. 515; R. Doc. 120; App. 554; R. Doc. 121. Defendant timely appealed on September 19, 2024. App. 555; R. Doc. 123. This Court has appellate jurisdiction under 28 U.S.C. 1291. But for the reasons explained below, this Court lacks subject-matter jurisdiction because Plaintiffs lack Article III standing.

Appellate Case: 24-2914     Page: 8     Date Filed: 11/21/2024 Entry ID: 5459162

## STATEMENT OF THE ISSUES PRESENTED

1. Do Plaintiffs have standing to seek prospective declaratory and injunctive relief without alleging a "real or immediate threat" that they will be rearrested, brought before Judge Anglin, and denied an attorney in a future first appearance hearing?

**Apposite Authority:** *Mosby v. Ligon*, 418 F.3d 927 (8th Cir. 2005); *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983); *O'Shea v. Littleton*, 414 U.S. 488 (1974)

2. Plaintiffs pleaded guilty to crimes and have not had those convictions overturned. Do claims alleging the denial of counsel during a critical trial stage imply the invalidity of an underlying conviction such that those claims are barred by *Heck*?

**Apposite Authority:** *Heck v. Humphrey*, 512 U.S. 477 (1994); *Sweeney v. United States*, 766 F.3d 857 (8th Cir. 2014)

3. Are bail determinations during an initial appearance in a criminal case a critical stage that renders the absence of counsel a violation of a defendant's right to counsel?

**Apposite Authority:** *Rothgery v. Gillespie Cnty., Tex.*, 554 U.S. 191 (2008); *Raymond v. Weber*, 552 F.3d 680, 684 (8th Cir. 2009)

4. Judge Anglin is a district court judge in Arkansas who has not previously been subject to any declaratory decree. Is retrospective declaratory relief or prospective injunctive relief a proper remedy against a judge in a section 1983 case without a showing that declaratory relief was unavailable or previously violated?

**Apposite Authority:** *Hamilton v. City of Hayti, Missouri*, 948 F.3d 921 (8th Cir. 2020); *J. Network Inc. v. Craighead Cnty.*, 931 F.3d 753 (8th Cir. 2019)

Appellate Case: 24-2914    Page: 9    Date Filed: 11/21/2024 Entry ID: 5459162

## STATEMENT OF THE CASE

Plaintiffs were arrested in separate cases, and consistent with Arkansas Rule of Criminal Procedure 8.1, appeared before Arkansas District Judge A.J. Anglin for an initial hearing.  App. 15-16; R. Doc. 2, at 2-3.  Judge Anglin found probable cause, found both arrestees indigent, set an initial bond, and appointed each an attorney at the end of the proceeding.  App. 23-24; R. Doc 11-3, at 1-2.  While in jail, the arrestees sued claiming that Judge Anglin's hearings violated their right to counsel.  App. 18-19; R. Doc. 2, at 5-6.  The district court ruled for Plaintiffs and ordered Judge Anglin to ensure future defendants have an attorney during Rule 8.1 hearings.  App. 515; R. Doc. 120; App. 554; R. Doc. 121.  This appeal challenges that decision and its corresponding relief.  App. 555; R. Doc. 123.

A.    <u>Factual Background</u>

### 1.  Rule 8.1 hearings and restrictions on district judges.

Arkansas Rules of Criminal Procedure 8 and 9 govern pre-trial proceedings. Rule 8.1 provides that an arrestee not released by citation or other lawful means "shall be taken before a judicial officer without unnecessary delay."  Ark. R. Crim. P. 8.1.  That prompt first appearance is known as a Rule 8.1 bond hearing ("Rule 8.1 hearing").  App. 91; R. Doc. 98-1, at 7:3-4.  During the hearing, the judge first informs the defendant of their rights and the charges against them.  Ark. R. Crim. P. 8.3.  Then, the judge makes three determinations: (1) whether probable cause

1

exists to hold the defendant; (2) whether bond should be set, and if so, at what amount, and (3) whether a defendant is indigent and needs a public defender. Ark. R. Crim. P. 8.3(c), 8.5, 8.2.

The hearing procedure is outlined in Rule 8.3. Rule 8.3(a) provides that the judicial officer must inform the defendant of the charges against her; the right to remain silent; the right to counsel; and the right to communicate with counsel, family, or friends for which the court will provide "reasonable means." Ark. R. Crim. P. 8.3(a). If unable to dispose of the case, the judicial officer is instructed to conduct a pretrial release inquiry. Ark. R. Crim. P. 8.3(c). Beyond the pretrial inquiry, the judicial officer cannot take any further steps without providing the defendant an "adequate opportunity to confer with counsel" or a waiver of the right to counsel. Ark. R. Crim. P. 8.3(b).

The pretrial inquiry requires "an informal, non-adversary hearing" and proceeds through several stages. Ark. R. Crim. P. 8.3(c). First, the judicial officer determines whether probable cause exists for holding the defendant using the same standard that "governs arrests with or without a warrant." Ark. R. Crim. P. 8.3(c).

Next, Rules 8.4 and 8.5 necessitate that the judicial officer determine bond when warranted. Ark. R. Crim. P. 8.4, 8.5. In assessing whether a case warrants bond, the judge assesses several factors about the defendant's personal life, history, and current charges. Ark. R. Crim. P. 8.4(b). Ultimately, the goal of assessing

2

these factors, in combination with a recommendation provided by the prosecution, is to determine whether bond is necessary to ensure the defendant's appearance at every court date. See Ark. R. Crim. P. 8.4(b)-(c); App. 126; R. Doc. 98-1, at 42:19-22. When the judge finds that a monetary bond is warranted, the judge will then use Rule 9.2's factors[1] to determine the initial bond amount. Ark. R. Crim. P. 9.2. Finally, Rule 8.2 requires that the judicial officer determine whether a defendant is indigent, and if so, appoint a public defender. Ark. R. Crim. P. 8.2(a). Defendants may file for a bond reduction immediately after formal Information is filed, which according to Rule 8.6, must occur within 60 days of arrest. App. 320; R. Doc. 98-5, at 6.

The Arkansas Supreme Court, under Administrative Order 18 ("Order 18"), allows state district court judges to temporarily perform the duty of state circuit judges and conduct Rule 8.1 hearings. App. 90-91, 098-99; R. Doc. 98-1, at 6:24-7:13; 14:20-15:8. Yet that authority is limited and further restricted by circuit judges through the Administrative Plan of the 19th West Judicial Circuit ("the

---

[1] The factors listed are "the length and character of the defendant's residence in the community; his employment status, history and financial condition; his family ties and relationship; his reputation, character and mental condition; his past history of response to legal process; his prior criminal record; the identity of responsible members of the community who vouch for the defendant's reliability; the nature of the current charge, the apparent probability of conviction and the likely sentence, in so far as these factors are relevant to the risk of nonappearance; and any other factors indicating the defendant's roots in the community." Ark. R. Crim. P. 9.2(c).

3

Administrative Plan"). App. 91-94; R. Doc. 98-1, at 7:14-10:3. Together, Order 18 and the Administrative Plan bar judges from conducting an arraignment, performing a preliminary hearing, or taking pleas, including "not guilty" pleas. App. 91-94; R. Doc. 98-1, at 7:14-10:3.

### 2. Judge Anglin's Courthouse

Judge Anglin is an elected state district court judge for District 1, Division 3, in Benton County. App. 322; R. Doc. 99-1, at 1. He is one of four judges in the county authorized to conduct Rule 8.1 hearings. App. 95-96; R. Doc. 98-1, at 11:20-12:19. Because the four judges work on a rotating week-by-week schedule, Judge Anglin only conducts a quarter of the Rule 8.1 hearings in Benton County at the raised bench in the jail's courtroom. App. 95-96, 100-01; R. Doc. 98-1, at 12:16-13:14; 16:20-17:5. For each scheduled week, Judge Anglin conducts approximately 18 to 20 Rule 8.1 hearings per day, one-third of which are misdemeanor cases. App. 98; R. Doc. 98-1, at 14:4-14.

Attorneys are present, whether private or public defenders, during six to eight of the thirteen weeks each year that Judge Anglin conducts Rule 8.1 hearings. App. 105; R. Doc. 98-1, at 21:14-21:24. Though Judge Anglin does not have the authority to order the public defender's office to provide attorneys at Rule 8.1 hearings, he welcomes their presence. App. 106-07, 140; R. Doc. 98-1, at 22:9-23:15; 56:22-56:25. District courts are also not courts of record, Ark. Code Ann.

4

16-87213, and thus, district judges do not have a transcript of the proceedings. App. 316; R. Doc. 98-5, at 2; App. 28; R. Doc. 34, at 4. Judge Anglin is not permitted to have a court reporter at these hearings to supplement the hearings being recorded and stored with the county. App. 108-09; R. Doc. 98-1, at 24:5-25:2.

To avoid conflicts with other court proceedings and allow defendants to get out of jail earlier, Judge Anglin conducts his Rule 8.1 hearings at 6:00 a.m. App. 101-03; R. Doc. 98-1, at 17:6- 19:6. He usually arrives an hour or more before hearings to read through the probable cause affidavits "word for word on every case" and determine whether probable cause exists. App. 103, 155; R. Doc. 98-1, at 19:8-19:10; 71:2-71:18. Once the hearings start, Judge Anglin advises defendants of their rights and the charges against them. App. 109; R. Doc. 98-1, at 25:15-25:17. Then, he asks questions about employment and other factors bearing on whether he should set a bond or send them off on a citation. App. 109; R. Doc. 98-1, at 25:17-25:23. In addition to a variety of factors, he considers the prosecution's recommendation in the probable cause affidavit, which he does not always follow. App. 131-32; R. Doc. 98-1, at 47:10-48:8. If he determines that bond is necessary, he sets bond based on the facts he knows about the defendant and their case. App. 109; R. Doc. 98-1, at 25:22-25:23. Finally, he asks the defendant if the defendant wants an attorney, and if so, asks a few further questions

5

to determine indigency. App. 110-11, 143; R. Doc. 98-1, at 26:3-26:6; 26:21-27:16; 59:19-59:25. Judge Anglin errs on the side of appointing an attorney and does so in roughly 95% of his felony cases. App. 111; R. Doc. 98-1, at 27:15-27:23. Almost immediately after the end of the hearing, the public defender is notified that they have a new client. App. 144-45; R. Doc. 98-1, at 60:7-61:5.

Judge Anglin strictly enforces the non-adversarial nature of Rule 8.1 hearings by continually reminding defendants of their right to remain silent when they want to discuss the facts of their case. App. 112, 126; R. Doc. 98-1, at 28:4-28:11; 42:8-42:12. To the extent a defendant would want to make the initial appearance adversarial by disputing the facts of their case, calling witnesses, or presenting evidence, Judge Anglin would not conduct a Rule 8.1 hearing for that defendant. App. 115-17, 121; R. Doc. 98-1, at 31:21-33:22; 37:4-37:14. Instead, he would ask that a circuit judge handle the appearance with a court reporter present because he does not allow testimony or cross-examination at his hearings. App. 116-17, 121; R. Doc. 98-1, at 32:2-33:9; 37:8-37:12.

B.    Arrests and Plaintiffs' Rule 8.1 hearings

### 3. Farella's case

Plaintiff Abigail Farella was arrested on Friday, May 20, 2022, in Bentonville for felony possession of a controlled substance, misdemeanor possession of drug paraphernalia, and misdemeanor shoplifting. App. 215; R. Doc.

6

98-2, at 54.  Officers stopped Farella in her red convertible Mustang after she

matched the description of a person reportedly shoplifting at Walmart.  App. 217;

R. Doc. 98-2, at 56.  Confirming their suspicions, officers found the stolen items in

the Mustang, including an airsoft pistol, a dash cam, a water flosser, and a hand

vacuum.  App. 217; R. Doc. 98-2, at 56.  Also finding methamphetamine and two

broken glass pipes in the vehicle, Officers arrested Farella.  App. 218; R. Doc. 98-

2, at 57.

On Sunday, May 22, 2022, Farella was brought before Judge Anglin.  App.

220; R. Doc. 98-2, at 59.  Judge Anglin found probable cause for her arrest, set her

bond at $10,000, found her indigent, and appointed her an attorney.  App. 23; R.

Doc. 11-3, at 1.  Judge Anglin set bond above the State's $2,500 recommendation

because Farella lived out of state in Missouri, had no ties to Arkansas, was arrested

several times in Colorado, and had five convictions in the last three years, two of

which were for theft.  App. 149-51; R. Doc. 98-1, at 65:21- 67:7.  Finally, he set

her next court date for June 27, 2022.  App. 220; R. Doc. 98-2, at 59.

Subsequently, in July 2023, Farella pleaded guilty to a misdemeanor theft of

property for which she received 38 days and a 12-month suspended imposition of

sentence.  App. 223; R. Doc. 98-2 at 62.

### 4.  Murphy's case

7

Logan Murphy, a resident of Benton County, was brought before Judge Anglin on June 21, 2022, after being arrested the previous day for felony fleeing and misdemeanor reckless driving. App. 204-08; R. Doc. 98-2, at 43-47; App. 26; R. Doc. 34, at 2. The State recommended a $25,000 bond after describing in its probable cause affidavit that Murphy was arrested after he fled police at 120 miles per hour, police found an open alcohol container in his car, and he admitted to drinking and smoking marijuana before driving. App. 204-06; R. Doc. 98-2, at 43-45.

Judge Anglin found probable cause for Murphy's arrest and set bond at $40,000 after considering the egregious nature of the crime and the high likelihood that the case would result in a conviction and jail time because Murphy confessed. App. 180-82; R. Doc. 98-1, at 96:16-98:25. Next, he found Murphy indigent, appointed him an attorney, and set his next court date for July 25, 2022. App 24; R. Doc. 11-3, at 2; App. 30; R. Doc. 34, at 6. On May 25, 2023, Murphy pleaded guilty to felony fleeing by vehicle with reckless indifference, along with a felony domestic battering in the second degree that occurred on October 19, 2022, while Murphy was out on bail. App. 210-12; R. Doc. 98-2, at 49-51. He was sentenced to 60 months of probation and 113 days of jail time, which was canceled out by his time served. App. 210-12; R. Doc. 98-2, at 49-51.

C.    Procedural Background

On June 24, 2022, plaintiffs filed a class action suit asking for declaratory and injunctive relief against Benton County District Court, Division 4, and Judge Anglin in his official capacity.  App. 14; R. Doc. 2.  Plaintiffs filed the complaint while they were in jail and claimed that the failure to have counsel present during Rule 8.1 Hearings violated the Sixth and Fourteenth Amendments.  App. 14; R. Doc. 2.  They claimed that those violations require all future indigent defendants who come before the Benton County District Court, Division 4, or Judge Anglin for Rule 8.1 hearings to have counsel present.  App. 20; R. Doc. 2, at 7.  Plaintiffs later filed an amended complaint dropping the Benton County District Court as a defendant.  App. 25; R. Doc. 34.  Plaintiffs added two new defendants, Jay Saxton, the Chief Public Defender for Benton County, and Gregg Parrish, the executive director of the Arkansas Public Defender Commission, claiming they failed to provide public defenders at these hearings and had no future intent to do so.  App. 25; R. Doc. 34.

The district court certified a class of plaintiffs made up of "(1) pretrial detainees, (2) who have or will appear before District Judge A.J. Anglin, (3) for a bail or pre-trial release hearing under Arkansas Rules of Criminal Procedure 8–9, (4) who are indigent, and (5) do not have appointed (public defender) representation at that hearing." App. 514; R. Doc. 103, at 15.  Cross-motions for

9

summary judgment followed, and on August 21, 2024, the district court granted Plaintiffs' Motion for Summary Judgment and denied Defendant Anglin's Motion for Summary Judgment.  App. 515; R. Doc. 120; App. 554; R. Doc. 121.

The district court fashioned what it termed "two conceptions of a critical stage" where counsel is required.  App. 536; R. Doc. 120, at 22.  It held that a stage of a criminal prosecution requires counsel if it is sufficiently (1) "trial-like" or (2) "outcome-influencing."  App. 536-37; R. Doc. 120, at 22-23.  It held that Judge Anglin's bail determinations, despite the fact that they are non-adversarial, are sufficiently trial-like because they (1) include a prosecutor's single sentence bail recommendation and (2) involve Judge Anglin's consideration of bail factors under Rule 9.2(c).  App. 542-43; R. Doc. 120, at 28-29.  It theorized that bail determinations are outcome-influencing because defendants who remain held pending trial may be more likely to plead guilty.  App. 547; R. Doc. 120, at 33.  It based this conclusion on law-review research that was passingly referenced in Plaintiffs' briefing.   App. 543; R. Doc. 120, at 29.  The district court exposited that empirical research for many pages, declaring that it established (at least for the class members, if not the named plaintiffs), that bail determinations are a critical stage.  App. 543-48; R. Doc. 120, at 29-34.  It granted a permanent injunction prohibiting Judge Anglin from performing bail determinations without counsel present.  App. 553; R. Doc. 120, at 39.

10

Judge Anglin timely appealed.  App. 555, R. Doc. 123.

11

## STANDARD OF REVIEW

This Court reviews district court decisions on cross-motions for summary judgment de novo. *Childress v. Fox Assocs., LLC*, 932 F.3d 1165, 1170 (8th Cir. 2019). Summary judgment is only appropriate when, after viewing the evidence in the light most favorable to the non-moving party, (1) no genuine issue of material fact exists, and (2) the moving party is entitled to judgment as a matter of law. *See Laredo Ridge Wind, LLC v. Neb. Pub. Power Dist.*, 11 F.4th 645 (8th Cir. 2021).

A district court's issuance of a permanent injunction is reviewed for an abuse of discretion. *SD Voice v. Noem*, 60 F.4th 1071, 1077 (8th Cir. 2023). The district court abuses its discretion when its decision rests on an erroneous application of law or a clearly erroneous factual finding. *See Taylor Corp. v. Four Seasons Greetings, LLC*, 403 F.3d 958, 967 (8th Cir. 2005). In addition to prevailing on the merits, a Plaintiff seeking a permanent injunction must show that (1) it faces the threat of irreparable harm, (2) the balance of harms that an injunction may cause to both parties favors the moving party, and (3) an injunction is in the public interest. *See Miller v. Thurston*, 967 F.3d 727, 735-36 (8th Cir. 2020).

12

# SUMMARY OF THE ARGUMENT

The district court erred in granting summary judgment to Plaintiffs and permanently enjoining state District Judge Anglin from conducting bail determinations without ensuring counsel are appointed for indigent defendants. Its conclusion that Judge Anglin's bail determinations are a critical stage of criminal proceedings giving rise to a Sixth Amendment right to counsel is infected with multiple legal errors.

First, Plaintiffs lack standing to seek prospective injunctive relief against the denial of counsel at future bail hearings based on past injuries that have no prospect of reoccurring. Any injuries they suffered were completed at the conclusion of their bail determination, and there is no impending risk that they will be arrested again in Benton County, Arkansas, and come before Judge Anglin for a bail determination. That defeats Plaintiffs' standing and requires that this Court reverse and remand with instructions to dismiss.

Second, Plaintiffs' Sixth Amendment claims cannot be raised in a Section 1983 suit because they are barred by *Heck v. Humphrey*'s favorable-termination rule. A violation of a defendant's Sixth Amendment rights is structural error requiring reversal even absent a showing of harm. *Heck* bars Section 1983 suits where success would imply the invalidity of a plaintiff's criminal conviction. If the district court's ruling were correct, and Plaintiffs were denied counsel at a

13

critical stage of proceedings, their convictions would be undermined. And although this argument was not raised below, principles of federalism and comity warrant considering it on appeal.

Third, if the Court reaches the merits, it should reverse the district court's conclusion that bail determinations are a critical stage for purposes of the Sixth Amendment. The district court held that a proceeding is a critical stage where it is sufficiently "trial-like" or "outcome-influencing." It erroneously held that Judge Anglin's bail determinations are trial-like even though they are non-adversarial, and prosecutors do not even attend. It based that conclusion on Judge Anglin's review of (1) a single-sentence recommendation by the State as to the proper bail amount, and (2) biographic information related to a defendant's risk of nonappearance. But neither of those factors transform a non-adversarial proceeding into a trial-like critical stage.

The district court then erroneously considered whether bail determinations are merely outcome-influencing, rather than potentially outcome-determinative as case law dictates. To support its view of bail determinations as a critical stage, it conducted a broad exposition of statistical research published in law reviews. These articles received little to no mention in Plaintiffs' briefing, yet they are the sole basis for the district court's conclusion that bail determinations are outcome-influencing because, according to these researchers, denial of bail increases the

14

likelihood that a defendant will plead guilty.  But even if that were the case, it does not render a later trial a mere formality, which under binding precedent is the appropriate standard.  Reversal and remand with instructions to enter judgment for Judge Anglin is therefore warranted.

Finally, even if Plaintiffs could succeed on the merits, they are not entitled to injunctive relief.  While declaratory relief may be awarded, judicial immunity prohibits prospective injunctive relief here unless Judge Anglin were first found to have violated previously granted declaratory relief.  The district court erred in granting a permanent injunction at the onset instead of first allowing for compliance with a declaratory order.

## ARGUMENT

### I.  Plaintiffs lack standing.

Plaintiffs lack standing because they have not alleged an injury redressable by prospective relief.  Standing is an "irreducible constitutional minimum." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  It requires that plaintiffs have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *McDaniel v. Precythe*, 897 F.3d 946, 950 (8th Cir. 2018) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  Those three standing requirements are "not dispensed in gross." *See, e.g.*, *Murthy v. Missouri*, 144 S. Ct.

15

1972, 1988 (2024). Rather, "plaintiffs must demonstrate standing for each claim that they press against each defendant, and for each form of relief that they seek." *Id.* (quotations omitted). "[N]amed plaintiffs who represent a class must allege and show that they personally have been injured." *Spokeo*, 578 U.S. at 338 n.6 (quotations omitted).

When a plaintiff sues seeking prospective relief based on past conduct, they must demonstrate "a real and immediate threat that [they] would again suffer similar injury in the future." *See Mosby v. Ligon*, 418 F.3d 927, 933 (8th Cir. 2005) (quotations omitted). Indeed, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief." *O'Shea v. Littleton*, 414 U.S. 488, 495 (1974). Nor do mere allegations of *possible* future injury based on a speculative causal chain suffice. *See, e.g.*, *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013). Rather, a threat of future harm must be "certainly impending." *Id.*

Here, Plaintiffs sued seeking prospective relief but complained only of past injuries that have no immediate prospect of reoccurring. Their claims rest solely on their purported past injury of being denied counsel at their respective Rule 8.1 hearings. App. 14; R. Doc. 2, App. 25; R. Doc. 34; App. 81; R. Doc. 93-1, at 1; App. 83; R. Doc. 93-2 at 1. But any injury ended when the Rule 8.1 hearing ended. Before each hearing's conclusion, Plaintiffs were appointed an attorney

16

who could challenge the bond set by filing a motion to revisit the decision in front of a circuit court judge. App. 23-24; R. Doc.11-3, at 1-2; Ark. R. Crim. P. 8.6; App. 320; R. Doc. 98-5 at 6. Neither chose to exercise that option, nor did Plaintiffs seek any relief in their criminal cases. App. 14; R. Doc. 2, App. 25; R. Doc. 34. They never sought to expeditiously revisit their bail determination, to challenge the validity of their confinement while in prison, or to seek damages. App. 14; R. Doc. 2, App. 25; R. Doc. 34. Plaintiffs have never identified any ongoing, future, or impending harm that they will suffer without relief from a court.

Their claimed past injuries are not enough to demonstrate Article III standing to seek prospective relief. In *O'Shea*, for example, the Supreme Court held that criminal defendants who alleged they were subjected to unlawful bond-setting, sentencing, and jury-fee practices could not sue for prospective relief because they were not currently suffering any of those injuries. 414 U.S. at 496. And "attempting to anticipate whether and when respondents will be charged with a crime" takes courts "into the area of speculation and conjecture." *Id.* Similarly, in *City of Los Angeles v. Lyons* the Supreme Court held that a plaintiff subjected to a police chokehold in the past lacked standing to seek prospective injunctive relief against officers using chokeholds in the future where there was no immediate threat of the plaintiffs suffering that harm again. 461 U.S. 95, 105 (1983).

17

So too here.  By the time Plaintiffs filed this lawsuit, their alleged harm was completed, with no prospect it would reoccur.  They therefore lack standing to seek injunctive relief against Judge Anglin.  This Court should reverse the judgment below with instructions to dismiss.

## II.  Plaintiffs' challenge is *Heck*-barred.

Plaintiffs' lack of standing is not surprising given this case's atypical posture.  Most of the major cases challenging the denial of counsel have come to the Supreme Court and this Court through direct appeals and habeas petitions.  *See, e.g.*, *United States v. Ash*, 413 U.S. 300 (1973) (direct appeal); *Argersinger v. Hamlin*, 407 U.S. 25 (1972) (habeas); *Raymond v. Weber*, 552 F.3d 680 (8th Cir. 2009) (habeas); *United States v. Lewis*, 483 F.3d 871 (8th Cir. 2007) (direct appeal); *Smith v. Lockhart*, 923 F.2d 1314 (8th Cir. 1991) (habeas).  This suit's novelty reveals another fatal obstacle to Plaintiffs' case: their claims are barred by *Heck v. Humphrey*'s favorable termination rule, also known as the *Heck* bar.

In *Heck v. Humphrey*, the Supreme Court held that no cause of action exists in federal court under section 1983 for an unconstitutional conviction "unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus.  *Heck v. Humphrey*, 512 U.S. 477, 498 (1994).  Thus, a section 1983 plaintiff cannot bring a suit where "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Id.*

18

at 487.   Such a rule seeks to preclude "two conflicting resolutions arising out of the same or identical transaction," which undercuts the "finality and consistency" of the underlying conviction.  *See Thomas v. Eschen*, 928 F.3d 709, 711 (8th Cir. 2019) (citing *Heck*, 512 U.S. at 484-85).

A plaintiff "must show a favorable termination by state or federal authorities even when he is no longer incarcerated."  *Marlowe v. Fabian*, 676 F.3d 743, 747 (8th Cir. 2012).  The particular "form of relief sought" by the plaintiff is irrelevant so long as "the essence of the plaintiff's claims" implicates the favorable termination rule.  *Sheldon v. Hundley*, 83 F.3d 231, 233 (8th Cir. 1996); *see also Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) (holding that state prisoners may not use Section 1983—even if seeking declaratory or injunctive relief—to evade habeas procedures or invalidate the fact of their sentence or conviction).  And the *Heck* bar applies equally to suits challenging a State's criminal procedure where relief would necessarily imply the invalidity of a plaintiff's sentence.  *See Edwards v. Balisok*, 520 U.S. 641, 645, 648-49 (1997).

A.    <u>Success for Plaintiffs implies the invalidity of their convictions.</u>

*Heck* applies to Sixth Amendment challenges because success necessarily implies the invalidity of the underlying convictions.  The absence of counsel during a critical stage of the proceedings renders the "adversary process itself presumptively unreliable."  *See United States v. Cronic*, 466 U.S. 648 (1984).  In

19

these cases, "courts may presume that a defendant has suffered unconstitutional prejudice." *Woods v. Donald*, 575 U.S. 312, 315 (2015) (citing *Cronic*, 466 U.S. at 659); *see also Sweeney v. United States*, 766 F.3d 857, 860 (8th Cir. 2014) ("prejudice may be presumed when the defendant experiences a 'complete denial of counsel' at a critical stage of trial."). Such errors are considered "structural" and "require automatic reversal." *Becht v. United States*, 403 F.3d 541 (8th Cir. 2005). Consequently, violations of the right to counsel have been *Heck*-barred. *See Laughlin v. Stuart*, No. 22-1742, 2022 WL 12165755, at *1 (8th Cir. Oct. 21, 2022) (unpublished); *see also Farrow v. Lipetzky*, No. 12-CV-06495-JCS, 2017 WL 1540637 (N.D. Cal. Apr. 28, 2017) (holding that plaintiffs' claims of being denied counsel at a first appearance were *Heck*-barred).

Here, Plaintiffs' claims are *Heck*-barred because, if accepted, they imply the invalidity of their underlying convictions. As an initial matter, Plaintiffs' both pleaded guilty, and their convictions have never been invalidated. *See* App. 210-12; R. Doc. 98-2, at 49-51; App. 223; R. Doc. 98-2, at 62. Success in their Sixth Amendment challenge would necessarily imply the invalidity of those convictions. Plaintiffs sought and received declaratory relief holding that Judge Anglin's Rule 8.1 hearings violated their Sixth Amendment right to counsel at a critical stage of the proceedings against them. App. 25; R. Doc. 34. App. 515; R. Doc. 120, App. 554; R. Doc. 121. A successful Sixth-Amendment challenge would imply the

20

invalidity of their convictions even if their attack is aimed at State criminal procedures. *See Edwards v. Balisok*, 520 U.S. 641, 645, 648-49 (1997).

Accepting Plaintiffs' claims that the State's procedure was flawed would imply the invalidity of their convictions and sentences. The Supreme Court held in *Cronic* that the complete absence of counsel at a critical stage is presumptively prejudicial and renders the "adversary process itself presumptively unreliable." 466 U.S. at 659. Though the Plaintiffs will not physically be released or have their sentences reduced, the result of a court finding that they were denied counsel at a critical stage creates "two conflicting resolutions arising out of the same or identical transaction." *Heck*, 512 U.S. at 484. Accordingly, the *Heck* bar applies here and precludes Plaintiffs' suit, which would undermine the "finality and consistency" of Plaintiffs' conviction and sentences. *Thomas*, 928 F.3d at 711.

     B.    <u>Judge Anglin's *Heck* argument is not forfeited, and even if it were, this Court may still consider it.</u>

*Heck* was not raised below, and Plaintiffs may argue that it is forfeited on appeal. But the Court may still consider the argument for two independent reasons: (1) the *Heck* bar is a jurisdictional rule, and (2) even if it were waivable, *Heck* falls within the category of affirmative defenses that may be raised for the first time on appeal because they "implicate values beyond the concerns of the parties."

Appellate Case: 24-2914    Page: 30    Date Filed: 11/21/2024 Entry ID: 5459162

First, the *Heck* bar is not waivable because it is a jurisdictional rule.[2]  The

habeas statutes, sections 2241 and 2255, provide an exclusive grant of jurisdiction

for defendants seeking to attack the validity of their criminal convictions in federal

court.  28 U.S.C. 2441, 2255; *see Preiser v. Rodriguez*, 411 U.S. 475, 489-90

(1973)  *Heck* enforces that exclusive jurisdiction by barring claims that attempt to

use section 1983 suits to evade habeas and state court procedure.  *See Wilkinson v.

Dotson*, 544 U.S. 74, 81 (2005).  Thus, jurisdiction to attack a criminal conviction

does not exist in section 1983 because the exclusive remedy lies in habeas.  *See id.*

And, even if jurisdiction for habeas suits rested solely on section 1331, the habeas

statutes, just like the Anti-Injunction Act or the Tax Injunction Act, are an

exception to that jurisdiction.  *See Taylor v. Owens*, 990 F.3d 493 (6th Cir. 2021)

(holding that the saving clause in habeas is jurisdictional while explaining the

jurisdictional nature of habeas).  Either way, *Heck* preserves the exclusive

---

[2] This is still an open question in the Eighth Circuit and the subject of a circuit
split. *See Mitchell v. Kirchmeier*, 28 F.4th 888, 895 n.1 (8th Cir. 2022).  Some
circuits have implied or decided that the favorable termination rule is not
jurisdictional.  *See Vuyanich v. Smithton Borough*, 5 F.4th 379 (3d Cir. 2021);
*Colvin v. LeBlanc*, 2 F.4th 494, 498-99 (5th Cir. 2021); *Carr v. O'Leary*, 167 F.3d
1124, 1126 (7th Cir. 1999); *Washington v. Los Angeles Cnty. Sheriff's Dep't*, 833
F.3d 1048, 1056 (9th Cir. 2016). Other jurisdictions have held or implied the
opposite or have intracircuit disagreement.  *Compare O'Brien v. Town of
Bellingham*, 943 F.3d 514, 529 (1st Cir. 2019); *Best v. Kelly*, 39 F.3d 328, 330
(D.C. Cir. 1994); *Hadley v. Werner*, 753 F.2d 514, 516 (6th Cir.1985) *Dixon v.
Hodges*, 887 F.3d 1235, 1237 (11th Cir. 2018); *with Teagan v. City of
McDonough*, 949 F.3d 670 (11th Cir. 2020) (referring to *Dixon*'s opinion on *Heck*
as dicta and casting doubt as to whether *Heck* is jurisdictional).

jurisdiction vested in federal courts through the habeas statutes by precluding them from hearing those same cases in section 1983 actions. *See Heck*, 512 U.S. at 481. Such a rule is jurisdictional and cannot be waived.

Second, even if the *Heck* bar were an affirmative defense subject to waiver or forfeiture, this Court should still consider the argument. The *Heck* bar falls neatly into an exception to waiver for defenses that "implicate values beyond the concerns of the parties." *Day v. McDonough*, 547 U.S. 198, 205-06 (2006) (alteration omitted) (quoting *Acosta v. Artuz*, 221 F.3d 117, 123 (2d Cir. 2000)); *see also id.* (favorably quoting *Acosta*'s application of this standard to the AEDPA statute of limitations because it "safeguards the accuracy of state court judgments" and promotes their finality)). Federal courts are given leeway to consider the merits of these cases in the interest of justice where a defense is inadvertently forfeited. *See Wood v. Milyard*, 566 U.S. 463, 472-73 (2012) At least two circuits have applied this exception to the *Heck* bar. *See Carr v. O'Leary*, 167 F.3d 1124, 1127 (7th Cir. 1999) (holding that courts should "treat[] the waiver of defenses based on grounds rooted in considerations of state sovereignty less harshly than other waivers"); *Clarke v. Stalder*, 121 F.3d 222, 226-27 (5th Cir. 1997) (raising *Heck* sua sponte), *reh'g en banc granted, opinion vacated*, 133 F.3d 940 (5th Cir. 1997), *and opinion reinstated in relevant part on reh'g*, 154 F.3d 186 (5th Cir. 1998) (en banc) (holding that *Heck* barred the plaintiff's claims).

23

The *Heck* bar falls neatly into this exception because the doctrine serves purely systemic interests. It seeks to preclude "two conflicting resolutions arising out of the same or identical transaction," which undercuts the "finality and consistency" of the underlying conviction. *See Thomas*, 928 F.3d at 711 (citing *Heck*, 512 U.S. at 484-85). *Heck* promotes principles of federalism and comity by preserving the finality of state-court convictions and maintaining consistent results in federal and state courts. Therefore, the interests of justice warrant consideration of a *Heck* bar argument.

## III. Bail determination in Rule 8.1 hearings is not a critical stage.

The bail determination during Plaintiffs' initial appearance before Judge Anglin is not a critical stage for which the Sixth Amendment requires the presence of counsel. Thus, if the Court were to reach the merits, the district court's contrary conclusion should be reversed.

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. That mandate is incorporated against the States through the Fourteenth Amendment. *Gideon v. Wainwright*, 372 U.S. 335, 342 (1963). But the Sixth Amendment right to counsel is limited to "critical stages of the criminal proceedings." *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009) (quotations omitted). The district court recognized that since *Gideon* "the Supreme

24

Court and Eighth Circuit" have identified only a handful of stages of criminal proceedings as critical: "arraignments, postindictment interrogations, postindictment lineups, competency hearings, plea bargain negotiations, and the entry of a guilty plea." App. 531; R. Doc. 120, at 17. "By contrast, the collection and scientific analysis of evidence . . . are not critical stages since there is minimal risk that defense counsel absence at such stages might derogate from the defendant's right to a fair trial." *Id.* (cleaned up).

The district court fashioned what it termed "two conceptions of a critical stage" where counsel is required. App. 536; R. Doc. 120, at 22. According to the district court, a stage of a criminal prosecution requires counsel if it is sufficiently (1) "trial-like" or (2) "outcome-influencing." App. 536-37; R. Doc. 120, at 22-23. In applying this rubric, the district court wrongly concluded that Judge Anglin's bail determinations are "trial-like" despite being non-adversarial, and it failed to consider whether bail determinations are actually "outcome-determinative" as to a defendant's trial.

A.    Judge Anglin's non-adversarial bail determinations do not resemble a trial.

The Supreme Court has held stages of prosecution to be critical for purposes of the Sixth Amendment where they "amount to trial-like confrontations, at which counsel would help the accused in coping with legal problems or meeting his adversary." *Rothgery v. Gillespie Cnty., Tex.*, 554 U.S. 191, 212 n.16 (2008).

25

Case law identifies two hallmarks of an adversarial, trial-like proceeding: examination and cross-examination of witnesses, and adversarial confrontations with the prosecution. Judge Anglin's bail determinations involve neither.

"[T]he presence of counsel is necessary to preserve the defendant's basic right to a fair trial as affected by his right meaningfully to cross-examine the witnesses against him." *Coleman v. Alabama*, 399 U.S. 1, 7 (1970). The district court acknowledged that Judge Anglin's "bail determination is not trial-like in the sense that it does not involve direct and cross-examination of witnesses." App. 537; R. Doc. 120, at 23. Indeed, Judge Anglin does not allow witnesses at all. *See id.*

A proceeding may also be a critical stage if it sufficiently adversarial, *i.e.*, where "the accused [is] confronted, just as at trial, by the procedural system, or by his expert adversary, or by both." *United States v. Gouveia*, 467 U.S. 180, 189 (1984). Counsel is required at "a hearing [where] the defendant is confronted with adversarial proceedings and legal questions on which the defendant would benefit from counsel's advice." *Raymond v. Weber*, 552 F.3d 680, 684 (8th Cir. 2009). *Raymond* held that competency hearing where counsel cross-examined the prosecution's expert witness was a critical stage. *See id.* This Court also held in *Smith v. Lockhart* that an omnibus hearing involving eleven motions, including a motion to dismiss the charges that the Court found not to be frivolous, was a

26

critical stage. 923 F.2d 1314, 1319 (8th Cir. 1991). There, Court further noted that if counsel had been present, Smith could have benefitted from a motion to suppress key evidence offered against him. *See id.* at 1319 n.8.

Judge Anglin's bail hearings are legally required to be non-adversarial, and Judge Anglin strictly adheres to that requirement. *See* Ark. R. Crim. P. 8.3(c); App. 112, 126; R. Doc. 98-1 at 28:4-28:11; 42:8-42:12. Defendants are not confronted by the prosecution because prosecutors do not even attend the hearings. *See id.*

Yet the district court identified "at least two trial-like features" of Judge Anglin's bail determinations that it found dispositive. App. 538; R. Doc. 120, at 24. First is the prosecution's "single sentence" bail recommendation, which Judge Anglin does not necessarily follow. *Id.* The district court held that this single sentence "positions the State in a substantively trial-like, adversarial posture to" defendants and "does violence to the defendant's constitutional" right to counsel. *Id.* The district court ignored the fact that criminal defendants (including Plaintiffs here) are immediately appointed attorneys at the conclusion of the hearing who can assist them in filing a motion to have their bail determination expeditiously revisited, an option Plaintiffs failed to make use of. App. 23-24; R. Doc.11-3 at 1-2; Ark. R. Crim. P. 8.6; App. 320; R. Doc. 98-5, at 6. And it cited no authority for the notion that a judge considering a single-sentence paper recommendation by the

27

prosecution amounts to leaving the defendant to "stand alone against the State" for purposes of the Sixth Amendment. App. 538; R. Doc. 120, at 24 (quoting *United States v. Wade*, 388 U.S. 218, 226 (1967)).

Second, the district court identified as trial-like "Judge Anglin's consideration of the Rule 9.2 factors as he determines bail." *Id.* These biographical facts are considered to the extent they are "relevant to the risk of willful nonappearance" at further proceedings. Ark. R. Crim. P. 9.2(c). This portion of bail determination is necessarily non-adversarial because the State is not present to make any argument related to the Rule 9.2 considerations. Yet the district court concluded *ipse dixit* that this is "still a trial-like stage" because "the opportunity to argue for the accused under the Rule 9.2 factors is 'a time when the accused is clearly entitled to a lawyer's help.'" App. 539; R. Doc. 120, at 25 (quoting *Massiah v. United States*, 377 U.S. 201, 204 (1964) (cleaned up)). But that reasoning is circular; whether a proceeding is "trial-like" informs whether a defendant is entitled to a lawyer in the first place.

The district court went on to reason that the "the opportunity to advocate on the defendant's behalf under Rule 9.2 is a trial-like element of Judge Anglin's bail determination." App. 541.; R. Doc. 120, at 27. In the district court's view, bail determinations would be better served by having counsel present. *See id.* And it cited "empirical research" from multiple law review articles—most not discussed

28

or even cited by any party—for the factual proposition that having counsel at bail hearings improves various outcomes from criminal defendants. *See id.* at 27-28. But even if true, that is irrelevant. Whether the involvement of counsel in a proceeding would improve a defendant's prospects of prevailing has nothing to do with whether the proceeding is "trial-like," or adversarial in nature at all. Moreover, the argument proves too much. The addition of counsel at any stage of a criminal proceeding might improve a defendant's chance of success. But if that were the litmus test for a critical stage, the Sixth Amendment would require counsel for all aspects of a criminal proceeding, and that's not the law. *See, e.g.*, *Wade*, 388 U.S. at 227-28 (scientific analysis of clothing, fingerprints, blood and hair samples not a critical stage); *Gilbert v. California*, 388 U.S. 263, 267 (1967) (handwriting exemplars); *Lewis*, 483 F.3d at 874 (buccal swabs and DNA results).

In sum, Judge Anglin's bail determination are not trial-like because the prosecution does not appear and participate in the proceeding. And neither Judge Anglin's consideration of the State's single-sentence bail recommendation, nor his neutral review of biographical information related to a defendant's risk of nonappearance somehow converts that hearing into an adversarial proceeding.

B.     Bail determination is not outcome-determinative of a defendant's case so as to render it a critical stage.

The Supreme Court has held that defendants are entitled to counsel at "critical confrontations of the accused by the prosecution at pretrial proceedings

29

where the results might well settle the accused's fate and reduce the trial itself to a mere formality." *Wade*, 388 U.S. at 214. These can include "arraignments, postindictment interrogations, postindictment lineups, and the entry of a guilty plea." *Missouri v. Frye*, 566 U.S. 134, 140 (2012). Instead of applying that standard to consider whether bail determinations can be outcome-determinative for a defendant's trial, the district court instead asked whether they could be merely "outcome-influencing." App. 536-37; R. Doc. 120, at 22-23. That was error. *See Smith*, 923 F.2d at 1319 (explaining that "outcome-influencing" in this context means where "if [a motion] were granted there would be no trial" or where "defenses could be irretrievably lost"). Neither the Supreme Court nor this Court has ever suggested that the outcome of a bail determination can render a defendant's trial a "mere formality," especially where, as here, the proceeding is not adversarial in nature. Reversal is warranted on that ground alone.

The district court relied on irrelevant statistical literature to investigate the effects of having counsel at bail hearings on a defendant's likelihood of later pleading guilty. This district court found "this research to be an important advance in understanding the effects of representation at bail hearings on trial outcomes." App. 547; R. Doc. 120, at 33. In brief, the district court observed that these studies "dovetail to present empirical evidence that defendants who are unrepresented at bail hearings are much more likely to plead guilty before trial." *Id.* From this the

30

district court reasoned that unrepresented bail hearings "reduc[e] the trial to a mere formality." *Id.* (cleaned up).

There are multiple problems with the district court's analysis. For one, denial of bail is not outcome determinative for Sixth Amendment purposes simply because it may incentivize defendants toward choosing to plead guilty rather than face trial. The critical-stage inquiry concerns whether "the trial itself" becomes "a mere formality" due to the results of a pretrial proceeding, not simply whether trial becomes less appealing to the defendant. *Wade*, 388 U.S. at 214. Additionally, the district court failed to account for the fact that defendants dissatisfied with Judge Anglin's bail determination can, with the assistance of their appointed counsel, immediately move to have a circuit judge revisit that decision. App. 23-24; R. Doc.11-3, at 1-2; Ark. R. Crim. P. 8.6; App. 320; R. Doc. 98-5, at 6.

Moreover, the district court itself recognized that the sorts of statistical measures generated by those articles bear no relation to whether Plaintiffs here were unconstitutionally denied counsel during their bail determinations before Judge Anglin. The district court acknowledged that one "cannot reasonably infer how the outcome-influencing theory of bail representation played out in Ms. Farella's and Mr. Murphy's cases directly." App. 547; R. Doc. 120, at 33. "It is much too great a leap to assume that appearing with counsel at their bail determinations would have caused Judge Anglin to assign them affordable bonds

31

or that bonding out would have caused them to take their cases to trial." *Id.* But the court nevertheless found "it reasonable to assume that their results are extensible to the population of indigent defendants that Plaintiffs represent." App. 548; R. Doc. 120, at 34 (emphasis omitted). It offered no explanation as to why that assumption was reasonable other than its view about the "methodological sophistication" of the studies it cited. *Id.* And it failed to grapple with the propriety of granting class-wide relief despite acknowledging that bail determinations are, even on its view, only sometimes outcome-influencing. *See id.* The district court's acknowledgement that the empirical research it cited ultimately shows nothing about whether Farella or Murphy were denied counsel at a critical stage of their criminal proceedings demonstrates just how far afield it went in granting summary judgment to plaintiffs.

*     *     *

The district erred in concluding that bail determinations, even when non-adversarial, without witness testimony, and followed by the immediate appointment of counsel for indigent defendants, are a critical stage under the Sixth Amendment. Precedent dictates the opposite conclusion, and if the Court reaches the merits it should reverse and remand with instructions to enter judgment for Judge Anglin.

32

## IV. The district court's injunction against Judge Anglin was improper.

Even if Plaintiffs could prevail on the merits, the district court erred in granting injunctive relief against Judge Anglin. Judges are generally entitled to absolute immunity from all suits, including section 1983 actions. *Robinson v. Freeze*, 15 F.3d 107, 108 (8th Cir. 1994). Judicial immunity is broad and applies to section 1983 claims in all but two narrow exceptions: (1) actions that fall outside of the judicial capacity and (2) acts taken "in the absence of all jurisdiction." *See, e.g.*, *Justice Network Inc. v. Craighead Cnty.*, 931 F.3d 753, 760 (8th Cir. 2019). Unless one of those exceptions applies, a judge may be sued only for prospective injunctive relief in his official capacity when the judge has previously violated a declaratory decree or where declaratory relief is unavailable. *Justice Network*, 931 F.3d at 764.

Judge Anglin acts within his judicial authority in hearing bail determinations (and neither Plaintiffs nor the district court contended otherwise), so he is entitled to judicial immunity. Consequently, the district court's relief should have been limited to prospective declaratory relief. Enjoining Judge Anglin was improper because no evidence showed that Judge Anglin had defied a previous declaratory order or that declaratory relief was unavailable. Indeed, the district court's granting declaratory relief proves that declaratory relief was available. App. 554; R. Doc. 121. Moreover, to the extent that the district court's declaratory relief was

33

retrospective, that relief was also improper. Like in *Justice Network*, the relief sought here is framed as prospective relief, but in essence, the claims attack past conduct of Judge Anglin at the plaintiffs' respective Rule 8.1 hearings. The district court's declaratory relief, in part, confirms this conclusion saying, "Plaintiffs right to counsel was violated by Defendants when none was appointed at their Rule 8.1 hearings before bail was set." App. 554; R. Doc. 121. The declaratory relief cited uses past language and describes actions that have been completed. Thus, this form of retrospective declaratory relief was also improper.

Appellate Case: 24-2914    Page: 43    Date Filed: 11/21/2024 Entry ID: 5459162

## CONCLUSION

This Court should reverse the district court's decision granting summary judgment in favor of Plaintiffs and remand with instructions to vacate the permanent injunction and either dismiss the case or enter summary judgment in favor of Judge Anglin.

TIM GRIFFIN
 Arkansas Attorney General

DYLAN L. JACOBS
 Deputy Solicitor General
CHRISTINE A. CRYER
 Senior Assistant Attorney General
OFFICE OF THE ARKANSAS
 ATTORNEY GENERAL
323 Center St., Suite 200
Little Rock, AR 72201
(501) 682-3661
dylan.jacobs@arkansasag.gov

*Counsel for Appellant*

35

**CERTIFICATE OF COMPLIANCE**

I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because it contains 8,231 words, excluding the parts exempted by Fed. R. App. P. 32(f).

I also certify that this brief complies with the requirements of Fed. R. App. P. 32(a)(5)–(6) because it has been prepared in 14-point Times New Roman font using Microsoft Word.

I further certify that this PDF file was scanned for viruses, and no viruses were found on the file.

/s/ *Dylan L. Jacobs*
Dylan L. Jacobs

**CERTIFICATE OF SERVICE**

I certify that on November 20, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to any CM/ECF participants.

/s/ *Dylan L. Jacobs*
Dylan L. Jacobs