# In the
# United States Court of Appeals
## for the Eighth Circuit

---

Abigail Farella, et al.,
*Plaintiffs-Appellees,*

v.

District Judge A. J. Anglin,
*Defendant-Appellant,*

_____

Appeal from the United States District Court
for the Western District of Arkansas – Fayetteville, No. 5:22-cv-05121-TLB
The Honorable Timothy L. Brooks, Judge Presiding

## BRIEF OF PLAINTIFFS-APPELLEES

Doug Norwood
Alison Lee
NORWOOD & NORWOOD, P.A.
2001 S. Dixieland Road
Rogers, AR 72757
(479) 235-4600

Jeffrey L. Fisher
O'MELVENY & MYERS LLP
2765 Sand Hill Road
Menlo Park, CA 94025
(650) 473-2633

Joshua Revesz
Ellie Hylton
Cody Kahoe
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC
(202) 383-5300

*Counsel for Appellees*
*Abigail Farella, Logan W. Murphy, and All Others Similarly Situated*


Appellate Case: 24-2914    Page: 1    Date Filed: 02/24/2025 Entry ID: 5488495

## SUMMARY OF THE CASE AND STATEMENT REGARDING ORAL ARGUMENT

The district court correctly held that the Sixth Amendment guarantees a right to counsel at the bail hearings held in Judge Anglin's courtroom. That holding follows directly from decisions of the Supreme Court and this Court, buttressed by history, tradition and other traditional tools of constitutional interpretation. Neither Judge Anglin's merits arguments nor his late-breaking procedural objections to this suit warrants reversal.

Plaintiffs agree that oral argument is appropriate in this matter and respectfully request 20 minutes for oral argument.

Appellate Case: 24-2914    Page: 2    Date Filed: 02/24/2025 Entry ID: 5488495

# TABLE OF CONTENTS

**Page**

SUMMARY OF THE CASE AND STATEMENT REGARDING ORAL ARGUMENT .................................................................... i

INTRODUCTION ............................................................................. 1

STATEMENT OF JURISDICTION ...................................................... 2

STATEMENT OF THE ISSUES .......................................................... 2

STATEMENT OF THE CASE ............................................................. 3

    A.   Legal and Factual Background ............................................. 3

    B.   Proceedings Below .............................................................. 8

SUMMARY OF ARGUMENT ............................................................. 11

ARGUMENT .................................................................................. 15

I.    PLAINTIFFS HAVE STANDING ................................................. 15

II.   JUDGE ANGLIN'S *HECK* ARGUMENT IS FORFEITED AND MERITLESS ........................................................................... 20

    A.   This Court should not consider this argument because it is untimely and Judge Anglin provides no good reason for raising it for the first time on appeal. ............... 21

    B.   This suit does not trigger *Heck*'s favorable-termination bar ....................................................................................... 24

III.  THE SIXTH AMENDMENT GUARANTEES THE RIGHT TO COUNSEL AT JUDGE ANGLIN'S BAIL HEARINGS. ............................................. 26

    A.   The Supreme Court and this Court's precedents require the right to counsel at bail hearings. ...................... 26

        1.   Bail hearings can effectively determine a criminal defendant's fate. ......................................................... 29

        2.   As Judge Anglin admits, the assistance of counsel can improve bail-hearing outcomes. ........................... 35

        3.   Judge Anglin's contrary arguments lack merit. .......... 37

Appellate Case: 24-2914    Page: 3    Date Filed: 02/24/2025 Entry ID: 5488495

B. History and tradition confirm that bail hearings are a critical stage. ........................................................... 41

IV. JUDGE ANGLIN'S SCOPE-OF-RELIEF CONCERNS ARE FORFEITED AND IRRELEVANT.............................................................. 50

CONCLUSION ...................................................................... 53

Appellate Case: 24-2914    Page: 4    Date Filed: 02/24/2025 Entry ID: 5488495

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Apprendi v. New Jersey,*
530 U.S. 466 (2000) ............................................................... 41

*Argersinger v. Hamlin,*
407 U.S. 25 (1972) ............................................................ 27, 29

*Boston v. TrialCard, Inc.,*
75 F.4th 861 (8th Cir. 2023) ....................................... 3, 21, 51

*Caliste v. Cantrell,*
329 F. Supp. 3d 296 (E.D. La. 2018),
*aff'd*, 937 F.3d 525 (5th Cir. 2019) ....................................... 28

*Caliste v. Cantrell,*
937 F.3d 525 (5th Cir. 2019) ................................................ 18

*Carr v. O'Leary,*
167 F.3d 1124 (7th Cir. 1999) ......................................... 12, 23

*Cedar Rapids Bank & Tr. Co. v. Mako One Corp.,*
919 F.3d 529 (8th Cir. 2019) ................................................ 21

*City of Los Angeles v. Lyons,*
461 U.S. 95 (1983) ................................................................ 18

*Coleman v. Alabama,*
399 U.S. 1 (1970) ......................................................... *passim*

*Colvin v. LeBlanc,*
2 F.4th 494 (5th Cir. 2021) ................................................... 22

*County of Riverside v. McLaughlin,*
500 U.S. 44 (1991) ....................................................... *passim*

*Crawford v. Washington,*
541 U.S. 36 (2004) .......................................................... 41, 46

iv

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Davis v. Anthony, Inc.,*
886 F.3d 674 (8th Cir. 2018) ................................................................ 16

*Davis v. FEC,*
554 U.S. 724 (2008) ............................................................................. 16

*Day v. McDonough,*
547 U.S. 198 (2006) ............................................................................. 23

*Ditch v. Grace,*
479 F.3d 249 (3d Cir. 2007) ................................................................ 28

*Erlinger v. United States,*
602 U.S. 821 (2024) ............................................................................. 41

*Farrow v. Lipetzky,*
637 F. App'x 986 (9th Cir. 2016) ......................................................... 29

*Florida v. Jardines,*
569 U.S. 1 (2013) ................................................................................. 43

*Genesis Healthcare Corp. v. Symczyk,*
569 U.S. 66 (2013) ............................................................................... 19

*Gerstein v. Pugh,*
420 U.S. 103 (1975) ...................................................................... *passim*

*Gideon v. Wainwright,*
372 U.S. 335 (1963) ............................................................................. 42

*Glover v. United States,*
531 U.S. 198 (2001) ............................................................................. 29

*Gonzalez v. Comm'r of Corr.,*
68 A.3d 624 (Conn. 2013) .................................................................... 28

*Hamilton v. Alabama,*
368 U.S. 52 (1961) ............................................................................... 27

v

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Heck v. Humphrey,*
512 U.S. 477 (1994) ........................................................................ *passim*

*Hester v. United States,*
265 U.S. 57 (1924) ................................................................................ 43

*Higazy v. Templeton,*
505 F.3d 161 (2d Cir. 2007) ............................................................ 28, 31

*Hobbs v. Reynolds,*
289 S.W.3d 917 (Ark. 2008) ................................................................... 4

*Hurrell-Harring v. New York,*
930 N.E.2d 217 (N.Y. 2010) ................................................................ 28

*Jiron v. City of Lakewood,*
392 F.3d 410 (10th Cir. 2004) ............................................................. 22

*Johnson v. Zerbst,*
304 U.S. 458 (1938) ............................................................................. 42

*Justice Network Inc. v. Craighead Cnty.,*
931 F.3d 753 (8th Cir. 2019) .............................................................. 51

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
572 U.S. 118 (2014) ............................................................................. 21

*Luis v. United States,*
578 U.S. 5 (2016) ................................................................................. 41

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992) ............................................................................. 16

*Marsh v. Chambers,*
463 U.S. 783 (1983) ............................................................................. 42

*Massiah v. United States,*
377 U.S. 201 (1964) ............................................................................. 27

Appellate Case: 24-2914     Page: 7     Date Filed: 02/24/2025 Entry ID: 5488495

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*McClain v. Swenson,*
435 F.2d 327 (8th Cir. 1970) ............................................................... 31

*Missouri v. Frye,*
566 U.S. 134 (2012) .............................................................. 27, 33, 39

*Nebraska v. Nissen,*
560 N.W.2d 157 (Neb. 1997) ............................................................. 32

*New Jersey v. Fann,*
571 A.2d 1023 (N.J. Super. Ct. 1990) ................................................ 28

*Newmy v. Johnson,*
758 F.3d 1008 (8th Cir. 2014) ........................................................... 25

*O'Brien v. Town of Bellingham,*
943 F.3d 514 (1st Cir. 2019) ............................................................. 22

*O'Shea v. Littleton,*
414 U.S. 488 (1974) ........................................................................... 18

*Oklahoma Dep't of Envt'l Quality v. EPA,*
740 F.3d 185 (D.C. Cir. 2014) ........................................................... 18

*Polzin v. Gage,*
636 F.3d 834 (7th Cir. 2011) ............................................................. 22

*Powell v. Alabama,*
287 U.S. 45 (1932) ............................................................................. 49

*Principal Sec. v. Agarwal,*
23 F.4th 1080 (8th Cir. 2022) ............................................................ 21

*Ramos v. Louisiana,*
590 U.S. 83 (2020) ............................................................................. 39

*Raymond v. Weber,*
552 F.3d 680 (8th Cir. 2009) ....................................................... 27, 46

vii

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Remick v. Utah,*
 2018 WL 1472484 (D. Utah Mar. 23, 2018) .........................................28

*Roeder v. State,*
 444 P.3d 379 (Kan. App. 2019) ............................................................29

*Sebelius v. Auburn Reg'l Med. Ctr.,*
 568 U.S. 145 (2013) ..............................................................................22

*Smith v. Arizona,*
 602 U.S. 779 (2024) ..............................................................................41

*Smith v. Lockhart,*
 923 F.2d 1314 (8th Cir. 1991) ...................................................... *passim*

*Spencer v. Kemna,*
 523 U.S. 1 (1998) ..................................................................................25

*Teagan v. City of McDonough,*
 949 F.3d 670 (11th Cir. 2020) ..............................................................22

*Torres v. Collins,*
 2023 WL 6166523 (E.D. Tenn. Sept. 21, 2023) ..............................28, 32

*Tucker v. State,*
 394 P.3d 54 (Idaho 2017) ......................................................................28

*U.S. Parole Comm'n v. Geraghty,*
 445 U.S. 388 (1980) ..............................................................................19

*United States v. Ash,*
 413 U.S. 300 (1973) ........................................................................42, 49

*United States v. Cronic,*
 466 U.S. 648 (1984) ........................................................................24, 25

*United States v. Jidoefor,*
 97 F.4th 1144 (8th Cir. 2024) ...............................................................34

Appellate Case: 24-2914    Page: 9    Date Filed: 02/24/2025 Entry ID: 5488495

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*United States v. Morin,*
  95 F.4th 592 (8th Cir. 2024) ................................................. 34

*United States v. Portillo,*
  969 F.3d 144 (5th Cir. 2020) ................................................ 28

*United States v. Wade,*
  388 U.S. 218 (1967) ...................................................... *passim*

*Valdez-Jimenez v. Eighth Jud. Dist. Ct.,*
  460 P.3d 976 (Nev. 2020) ................................................... 28

*Vidal v. Elster,*
  602 U.S. 286 (2024) ........................................................ 41

*Virginia v. Rutherford,*
  26 Va. (5 Rand.) 646 (Va. Gen. Ct. 1826) ............................... 48

*Vuyanich v. Smithton Borough,*
  5 F.4th 379 (3d Cir. 2021) ................................................. 22

*Walsh v. Massachusetts,*
  151 N.E.3d 840 (Mass. 2020) .............................................. 28

*Washington v. L.A. Cnty. Sheriff's Dep't,*
  833 F.3d 1048 (9th Cir. 2016) ............................................ 22

*White v. Gittens,*
  121 F.3d 803 (1st Cir. 1997) .............................................. 22

## Constitutional Provisions

Ark. Const. art. II, § 8 .......................................................... 4

U.S. Const. amend. VI ........................................................... 26

U.S. Const. amend. VIII ......................................................... 42

Appellate Case: 24-2914     Page: 10     Date Filed: 02/24/2025 Entry ID: 5488495

# TABLE OF AUTHORITIES

(continued)

<strong>Page(s)</strong>

**Statutes**

Judiciary Act of 1789, ch. 20, § 33, 1 Stat. 73, 91 ................................... 43

**Rules**

Ark. R. Crim. P. 8.1 ....................................................................... 4

Ark. R. Crim. P. 8.4 ....................................................................... 4

Ark. R. Crim. P. 8.5 .............................................................. 4, 5, 35

Ark. R. Crim. P. 8.6 .......................................................... 18, 31, 38

Ark. R. Crim. P. 9.1 ................................................................ 5, 30

Ark. R. Crim. P. 9.2 ................................................................ 5, 35

Ark. R. Crim. P. 9.3 ...................................................................... 5

Fed. R. Civ. P. 60 .................................................................... 3, 51

Iowa R. Crim. P. 2.2 .................................................................... 32

Minn. R. Crim. P. 4.03 ................................................................. 32

**Other Authorities**

Bishop, Joel Prentiss, 1 *Commentaries on the Law of
Criminal Procedure* (Boston, Little, Brown, & Co. 1866) ................... 48

Blackstone, William, 4 *Commentaries on the
Laws of England* (1769) ....................................................... 47

Carbone, June, *Seeing Through the Emperor's New Clothes:
Rediscovery of Basic Principles in the Administration of
Bail*, 34 Syracuse L. Rev. 517 (1983) ............................................ 45, 48

Coke, Edward, *A Treatise of Baile and Mainprize* (1635) ...................... 46

Appellate Case: 24-2914   Page: 11   Date Filed: 02/24/2025 Entry ID: 5488495

Duker, William, *The Right to Bail: A Historical Inquiry*, 42
   Alb. L. Rev. 33 (1977) ..............................................................43

Foote, Caleb, *The Coming Constitutional Crisis in Bail: I*,
   113 U. Pa. L. Rev. 959 (1965).........................................44, 48

Funk, Kellen R. & Mayson, Sandra G., *Bail at the Founding*,
   137 Harv. L. Rev. 1816 (2024) ................................... *passim*

Gerstein, Charlie, *Note, Plea Bargaining and the Right to
   Counsel at Bail Hearings*, 111 Mich. L. Rev. 1513 (2013)...................33

Hale, Matthew, 2 *The History of the Pleas of the Crown* (5th
   ed. 1716) ......................................................................47

Hawkins, William, 3 *A Treatise of the Pleas of the Crown*
   (London, G.G. & J. Robinson, Thomas Leach ed., 7th ed.
   1795) .........................................................................47

Heaton, Paul, et al., *The Downstream Consequences of
   Misdemeanor Pretrial Detention*, 69 Stan. L. Rev. 711
   (2017) ........................................................................32

Hegreness, Matthew J., *America's Fundamental and
   Vanishing Right to Bail*, 55 Ariz. L. Rev. 909 (2013) .........................44

LaFave et al., Wayne, 3 *Criminal Procedure* (4th ed. 2024) ................28

Magna Carta (1215) ................................................................44

Verilli, Jr., Donald B., Note, *The Eighth Amendment and the
   Right to Bail: Historical Perspectives*, 82 Colum. L. Rev.
   328 (1982) ....................................................................45

Appellate Case: 24-2914    Page: 12    Date Filed: 02/24/2025 Entry ID: 5488495

## INTRODUCTION

Under settled Supreme Court precedent, the Sixth Amendment guarantees the "assistance of counsel" at all "critical stages" of a criminal proceeding. The question in this case is whether the bail proceedings held in Judge Anglin's courtroom in Benton County, Arkansas are such critical stages. The district court correctly held, in line with the overwhelming consensus of the federal and state courts, that the answer is yes. Criminal defendants whose bail is set at levels beyond their ability to pay are wrongly deprived of their liberty; face barriers to preparing for trial; and in many cases—including in the cases of the two named Plaintiffs here—end up being sentenced to the time they have already served in jail. Those defendants facing such proceedings consequently benefit enormously from the assistance of counsel, who aid the defendants at those proceedings by introducing documentary evidence, rebutting the recommendations of the prosecution, and otherwise advocating for their clients' freedom.

Judge Anglin advances no basis to distinguish the precedent that resolves the constitutional question presented here. His briefing misstates the governing standard, understates the role counsel might

1

play at bail hearings, and attacks the district court for looking to the same sort of empirical analysis that the Supreme Court has found valuable in similar cases. Judge Anglin also fails to account for the history and tradition of bail hearings in general in this Nation, which underscore that the Framers viewed bail hearings as a "critical stage" of a criminal prosecution, even if that doctrinal label did not emerge until years later. Nor do any of the new procedural objections Judge Anglin raises for the first time on appeal provide any basis for disturbing the judgment below. The Court should affirm.

## STATEMENT OF JURISDICTION

The district court had jurisdiction under 28 U.S.C. § 1331. The district court entered final judgment on August 21, 2024. App. 554; R. Doc. 121, at 1. Judge Anglin filed a notice of appeal on September 19, 2024. App. 555; R. Doc. 123, at 1. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

**1.** Does this Court have Article III jurisdiction?

Relevant authorities: *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991); *Gerstein v. Pugh*, 420 U.S. 103 (1975).

Appellate Case: 24-2914    Page: 14    Date Filed: 02/24/2025 Entry ID: 5488495

**2.** May Judge Anglin object to this lawsuit based on *Heck v. Humphrey*, 512 U.S. 477 (1994), for the first time on appeal, and, if so, does that rule bar this suit?

Relevant authorities: *Heck v. Humphrey*, 512 U.S. 477 (1994); *Coleman v. Alabama*, 399 U.S. 1 (1970); *Boston v. TrialCard, Inc.*, 75 F.4th 861 (8th Cir. 2023).

**3.** Does the Sixth Amendment guarantee a right to counsel at Judge Anglin's bail hearings?

Relevant authorities: *Coleman v. Alabama*, 399 U.S. 1 (1970); *United States v. Wade*, 388 U.S. 218 (1967); *Smith v. Lockhart*, 923 F.2d 1314 (8th Cir. 1991).

**4.** Has Judge Anglin preserved any objection to the district court's scope of relief?

Relevant authorities: *Boston v. TrialCard, Inc.*, 75 F.4th 861, 868 (8th Cir. 2023); Fed. R. Civ. P. 60.

## STATEMENT OF THE CASE

### A.  Legal and Factual Background

**1.** Consistent with the Fourteenth Amendment's protection of personal "liberty," Arkansas generally affords criminal defendants the

3

right to request bail. *See* Ark. Const. art. II, § 8. And to effectuate the Eighth Amendment's admonition that "[e]xcessive bail shall not be required," Arkansas requires that the amount of bail be "reasonable." *Hobbs v. Reynolds*, 289 S.W.3d 917, 920 (Ark. 2008).

Under the State's rules of criminal procedure, bail determinations are made at the defendant's "first appearance," held "before a judicial officer without unnecessary delay." Ark. R. Crim. P. 8.1, 8.4-8.5. The rules also require that the prosecutor "make recommendations to the judicial officer concerning" the bail inquiry. *Id.* R. 8.5(c). In most cases, that judicial officer will consider that recommendation, App. 151; R. Doc. 98-1, at 67, and determine how to set bail through a "pretrial release inquiry," which "should take the form of an assessment of factors relevant to the pretrial release decision," Ark. R. Crim. P. 8.5(a)-(b). Those factors include "the defendant's employment status, history, and financial condition"; "the nature and extent of his family relationships"; "his past and present residence"; "his character and representation"; "persons who agree to assist him in attending court at the proper crimes"; the "nature of the current charge and any mitigating or aggravating factors"; the "defendant's prior criminal

4

record"; and any other facts relevant to the risk of flight or further criminal offenses. *Id.* R. 8.5(b).

After considering these factors and additional factors that govern the amount of bail to be set, *see* Ark. R. Crim. P. 9.2(c), the presiding judge has discretion whether and on what terms to grant pretrial release. The court can release a defendant of his own recognizance, *id.* R. 9.1, or can set bail, *id.* R. 9.2. The court also has authority to impose conditions on pretrial release. *Id.* R. 9.1(b), 9.3.

This first appearance also triggers the appointment of counsel. Under Arkansas Rule of Criminal Procedure 8.2(a), the presiding judge "shall determine whether the defendant is indigent and, if so, appoint counsel to represent him or her at the first appearance," with exceptions for minor offenses.

**2.** Defendant A.J. Anglin is an elected district judge in Benton County, Arkansas. App. 23; R. Doc. 11-3, at 1. He is one of four district judges who preside over bail hearings in the Benton County jail. *Id.*

Although, as noted above, Judge Anglin considers the prosecution's recommendations at his bail hearings, he does not appoint public defenders to represent indigent defendants. Judge Anglin

5

"always welcome[s] the public defender to be at the bond hearings" and "would prefer that they were at the bond hearings." App. 106; R. Doc. 98-1, at 22. Judge Anglin also allows retained attorneys to appear at and participate in those hearings. App. 129; R. Doc. 98-1, at 45. He explained that the presence of an attorney can be "helpful" to a criminal defendant, including because an attorney can produce "court records" that would illuminate whether the defendant is likely to appear in court if released. *Id.* He also indicated that an attorney could "assist the defendant" in explaining any circumstances, like mental illness, that could inform the bail determination. App. 140; R. Doc. 98-1, at 56. And although he would not allow an attorney to call a witness at a bail hearing, he would allow an attorney to produce "documentary evidence" that could bear on the bail inquiry. App. 166; R. Doc. 98-1, at 82. But despite all of these dynamics, Judge Anglin does not believe he has "the authority" to appoint public defenders. *Id.*

**3.** Plaintiffs Abigail Farella and Logan Murphy are individuals who appeared at Judge Anglin's bail hearings, remained incarcerated following those hearings, and were ultimately sentenced to time served.

Farella was arrested in May 2022. App. 220; R. Doc. 98-2, at 59. She appeared before Judge Anglin two days after her arrest. *Id.* The prosecution recommended that Farella's bail be set at $2,500. App. 149; R. Doc. 98-1, at 65.

Judge Anglin found Farella indigent, App. 221; R. Doc. 98-2, at 60, but did not appoint her counsel at the bail hearing. He then set her bail at $10,000, App. 220; R. Doc. 98-2, at 59—four times the amount recommended by the prosecution.

Farella could not afford bail at that amount. She therefore remained incarcerated for 38 days, when another Arkansas judge released her pursuant to a "written promise to appear for future court dates." App. 519; R. Doc. 120, at 5. Farella then pleaded guilty to misdemeanor theft and was sentenced to the 38 days' imprisonment that she had already served as a result of Judge Anglin's bail determination. App. 223; R. Doc. 98-2, at 62.

Murphy's encounter with the justice system proceeded similarly. He was arrested in June 2022. App. 275; R. Doc. 98-3, at 45. He appeared before Judge Anglin a day after his arrest. App. 209; R. Doc.

7

98-2, at 48.  The prosecution recommended that Murphy's bail be set at $25,000.  App. 275; R. Doc. 98-3, at 45,

Judge Anglin found Murphy indigent, *id.*, but did not appoint him counsel at the bail hearing.  Judge Anglin then set bail at $40,000, App. 207; R. Doc. 98-2, at 46—$15,000 more than the prosecution recommended.  Murphy had "not even seen $10,000 in [his] life," App. 261; R. Doc. 98-3, at 31, and so was initially unable to post bail.  After serving 113 days in jail, he pleaded guilty and was sentenced to time served and five years' probation.  App. 210-12; R. Doc. 98-2, at 49-51.

### B.    Proceedings Below

**1.**  Farella and Murphy filed suit on June 24, 2022, in the U.S. District Court for the Western District of Arkansas, while both were still in Benton County jail.  They alleged in a putative class action that they were denied counsel at their bail hearings in violation of the Sixth Amendment.  They sought declaratory and injunctive relief under 42 U.S.C. § 1983 against Judge Anglin and his judicial district.  App. 14-22; R. Doc. 2, at 1-9.  Plaintiffs later amended to remove the judicial district as a defendant and join two state public-defender executives as additional defendants.  App. 25-41; R. Doc. 34, at 1-17.

8

The district court denied Defendants' motions to dismiss, *see* App. 42-80; R. Doc. 78, at 1-39, and subsequently certified a class of pretrial detainees appearing before Judge Anglin for a bail hearing who are indigent and do not have appointed representation at that hearing, App. 514; R. Doc. 103, at 15. The district court designated Farella and Murphy as class representatives and appointed Norwood & Norwood, P.A., to serve as class counsel. *Id.*

The district court then resolved the parties' cross-motions for summary judgment and entered judgment in favor of Plaintiffs on their Sixth Amendment claim. The court first held that the Sixth Amendment attaches at Rule 8.1 hearings. App. 528-30, R. Doc. 120, at 14-16. The court then determined that Judge Anglin's bail hearings were a "critical stage" for Sixth Amendment purposes. App. 548; R. Doc. 120, at 34. In reaching that conclusion, the court relied on undisputed facts—corroborated by empirical analysis—demonstrating that counsel's absence at bail hearings erodes the right to a fair trial. The court also explained that numerous courts—including the Supreme Court, this Court, and several other federal courts of appeals and state courts of last resort—have indicated that bail hearings are within the

9

category of pretrial proceedings at which the Sixth Amendment guarantees a right to the assistance of counsel. App. 531-37; R. Doc. 120, at 17-23.

The court entered a declaratory judgment that "the certified class of Plaintiffs have a Sixth Amendment right to counsel at Judge Anglin's bail determinations, and that Plaintiffs['] right to counsel was violated by Defendants when none was appointed at their Rule 8.1 Hearings before bail was set." App. 554; R. Doc. 121, at 1. It separately issued an injunction ordering all defendants to "ensure that indigent defendants are represented by appointed counsel at Judge Anglin's Rule 8.1 Hearings when he determines bail." *Id.*

**2.** Judge Anglin filed a notice of appeal. App. 555; R. Doc. 123, at 1. The public-defender defendants did not appeal, and the injunction and declaration are now final as to those defendants.

**3.** Meanwhile, as a result of the district court's judgment, Judge Anglin now appoints public-defender counsel to represent indigent defendants at his bail hearings. Undersigned counsel understand that attorneys appear at those hearings and advocate for their clients to receive lower bail. Judge Anglin has identified no issues with that

10

procedure, nor has he made any filings in district court to alter or amend the judgment.

## SUMMARY OF ARGUMENT

The district court correctly held that Plaintiffs have a Sixth Amendment right to counsel at their bail hearings, and Judge Anglin's eleventh-hour procedural objections do not warrant reversal.

**I.** The Court has subject-matter jurisdiction over this controversy. Plaintiffs filed this action when they were suffering an ongoing injury: After participating in bail hearings without the assistance of counsel, Plaintiffs were held in jail because they could not afford the bail that Judge Anglin set. That deprivation of personal liberty sufficed to establish an actual injury caused by Judge Anglin's bail practices and redressable through a change in those practices. And though Plaintiffs eventually left pretrial custody, that fact does not make this action moot. As the Supreme Court has recognized in cases with similar procedural postures, class actions challenging the constitutionality of pretrial-detention procedures survive the release of named plaintiffs. That is because such controversies are inherently "capable of repetition, yet evading review." *Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975).

11

**II.**  Also unavailing is Judge Anglin's argument that this case is barred by the rule of *Heck v. Humphrey*, 512 U.S. 477 (1994), which prohibits plaintiffs from filing Section 1983 claims that imply the invalidity of their convictions or sentences.

**A.**  The Court need not consider Judge Anglin's *Heck* argument because, as he admits, it was not raised below.  *Heck* is not a jurisdictional rule; it merely determines the "existence of a cause of action."  512 U.S. at 489.  Hence, every court of appeals to have analyzed the question has determined that appellate courts have no obligation to consider *Heck* arguments raised for the first time on appeal.  To the contrary, such arguments are forfeited when not raised in a timely manner.

Nor should this Court exercise its discretion to overlook Judge Anglin's forfeiture.  Judge Anglin has never explained why he delayed in raising this objection, and the case on which he relies confirms that the district court—not a court of appeals—should decide in the first instance whether to exercise discretion as to whether to forgive his forfeiture.  *Carr v. O'Leary*, 167 F.3d 1124, 1127 (7th Cir. 1999).

12

**B.** Regardless, there is no merit to Judge Anglin's late-breaking *Heck* defense. This suit, if successful, would not necessarily invalidate a conviction or sentence. Plaintiffs seek to establish a right to counsel at bail hearings. They do not seek to undo their convictions or to negate any ongoing sentence. And Plaintiffs have been released from custody, making the *Heck* bar further irrelevant.

**III.** The district court correctly held that the Sixth Amendment guarantees Plaintiffs the right to counsel at Judge Anglin's bail hearings.

**A.** The right to counsel inheres at all stages of criminal proceedings "where counsel's absence might derogate from the accused's right to a fair trial." *Coleman v. Alabama*, 399 U.S. 1, 7 (1970) (quoting *United States v. Wade*, 388 U.S. 218, 226 (1967)). Bail proceedings are just such a critical stage. Decisions of this Court and the Supreme Court have emphasized the critical importance of bail in determining an arrestee's immediate liberty, affecting her ability to prepare for trial, and shaping her ultimate sentence. Judge Anglin himself admits that it is "helpful" for criminal defendants to have an attorney's presence at the hearings where bail is set. Yet if Judge Anglin were correct about

13

the Sixth Amendment's meaning, he could exclude even privately retained attorneys from that stage of the criminal process.

Judge Anglin contends that the district court overstated how "adversarial" and "outcome-determinative" bail hearings are. But that argument finds no support in the record and in any event is not determinative of the Sixth Amendment question. The Sixth Amendment applies to all proceedings—formal or informal—that "might well settle the accused's fate." *Wade*, 388 U.S. at 224. Bail proceedings fit comfortably into that category.

**B.** History and tradition confirm what precedent requires. The Founders saw bail as a central guarantor of liberty—so central, in fact, that it is one of the only pretrial procedures mentioned in the Bill of Rights itself. And in early America, even more than now, bail determinations were complex procedures that turned in large part on judges' discretionary assessments about defendants' likelihood of being found guilty. Throughout our history, therefore, bail hearings have been a quintessentially "critical" phase of pretrial practice.

**IV.** Finally, Judge Anglin's scope-of-relief arguments are forfeited because they are presented for the first time in this Court. If Judge

14

Anglin believes that the district court's judgment was inappropriate, he can move to amend the judgment (and, if he wishes, appeal the court's resolution of that motion). In any event, Judge Anglin's complaints about the district court's chosen remedy are not consequential: he does not challenge the district court's entry of prospective declaratory relief, and so the fact that the court also entered an injunction does not affect the status and rights of the parties.

## ARGUMENT

## I. PLAINTIFFS HAVE STANDING.

Judge Anglin argues (for the first time on appeal) that Plaintiffs lack standing to press their Sixth Amendment claim. This argument runs headlong into Supreme Court precedent. As in the Court's analogous cases, Plaintiffs had standing at the time they filed this action because they were confined to jail. And subsequent developments have not made this case moot; this class-action controversy is "one that is distinctly 'capable of repetition, yet evading review.'" *Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975).

**A.** The standing inquiry "focuse[s] on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was

15

filed." *Davis v. FEC*, 554 U.S. 724, 734 (2008); *see Davis v. Anthony, Inc.*, 886 F.3d 674, 678 (8th Cir. 2018) (same). An injury must be "actual or imminent" at that time. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

Plaintiffs have standing because, when they filed suit, they were suffering a deprivation of their liberty. They were "residing in the Benton County Jail" following their bail hearings, at which their lawyers were not present. App. 25-26; R. Doc. 34, at 1-2 (First Am. Compl. ¶¶ 1-2). It is difficult to imagine a more concrete and immediate injury than being confined to a jail cell.

It is no surprise, therefore, that the Supreme Court has held that individuals who similarly challenged pretrial-detention procedures had standing to press their claims. In *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991), the Court held that plaintiffs "held in custody without having received a probable cause determination" had standing to sue because they were "suffering a direct and current injury as a result of this detention" that "was at that moment capable of being redressed through injunctive relief." *Id.* at 51. In *Gerstein*, the Court likewise explained that being "detained without a judicial probable

16

cause determination" sufficed to create an Article III controversy. 420 U.S. at 110 n.11.

Those decisions also squarely reject the argument that Judge Anglin presses here—that Plaintiffs' injury evaporated as soon as their bail hearings ended. *See* Appellant Br. 16. In *County of Riverside*, the Court made short work of the "argument that the constitutional violation had already been 'completed'" when the probable-cause hearing ended, explaining that the plaintiffs "were suffering a direct and current injury as a result of this detention, and would continue to suffer that injury until they received the probable cause determination to which they were entitled." 500 U.S. at 51. So too here: Plaintiffs alleged that they would be confined at least for "roughly one month after their initial appearance" as a result of a bail determination that failed to comply with the Sixth Amendment. App. 33; R. Doc. 34, at 9 (First. Am. Compl. ¶ 30). That was a continuing injury, not a past one.

The ongoing nature of that harm thus distinguishes this case from the precedents on which Judge Anglin relies. Those cases discuss plaintiffs suing based solely on past harms with no continuing effects, like being subjected to a chokehold months prior to the filing of the

complaint.  *See City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983).

Those cases have no application to plaintiffs, like Plaintiffs here, who

are suffering "continuing, present, adverse effects" when they file their

suits, and whose injuries were redressable when they filed their claims.

*O'Shea v. Littleton*, 414 U.S. 488, 496 (1974).[1]

    **B.**  Nor does the fact that Farella and Murphy were eventually

released from Arkansas state custody affect the Court's jurisdiction over

this certified class action.

    The Supreme Court has held that class actions challenging

pretrial-detention procedures do not become moot simply because the

named plaintiffs are "released."  *County of Riverside*, 500 U.S. at 51; *see*

*Gerstein*, 420 U.S. at 110 n.11 (same); *see also*, *e.g.*, *Caliste v. Cantrell*,

937 F.3d 525, 527 n.3 (5th Cir. 2019) ("Although the named plaintiffs'

state criminal cases are over, class certification means the case is not

moot.").  That is because "the termination of a class representative's

---

[1] Judge Anglin also complains that Plaintiffs did not seek "to expeditiously revisit their bail determination" once they were appointed counsel.  Appellant Br. 17.  But as explained below, Judge Anglin misinterprets the relevant Arkansas Rule of Criminal Procedure.  *See infra* at 38 (discussing Ark. R. Crim. P. 8.6).  In any event, "[t]he possibility of an alternative remedy, of uncertain availability and effect," does not eliminate an injury in fact.  *Oklahoma Dep't of Envt'l Quality v. EPA*, 740 F.3d 185, 190 (D.C. Cir. 2014).

18

claim does not moot the claims of the unnamed members of the class." *County of Riverside*, 500 U.S. at 51 (quoting *Gerstein*, 420 U.S. at 110 n.11).

The Court has also made clear that it does not matter whether the class was certified before or after the named plaintiffs were released from custody. "[S]ome claims are so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires." *County of Riverside*, 500 U.S. at 51 (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 399 (1980)) (alteration adopted). In those circumstances, it is irrelevant whether "the class was not certified until after the named plaintiffs' claims had become moot." *Id.* Hence, the Court has explained that "a class action challenging the constitutionality of temporary pretrial detentions" is the quintessential example of an inherently transitory claim that can be certified after the named plaintiffs leave custody. *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 76 (2013).

This case is indistinguishable from those precedents. "Pretrial detention is by nature temporary," and so Farella and Murphy

19

eventually passed through the Arkansas criminal justice system. *Gerstein*, 420 U.S. at 110 n.11.  But "in this case the constant existence of a class of persons suffering the deprivation is certain": All unnamed class members appearing in Judge Anglin's courtroom will face a Sixth Amendment injury if they are not appointed counsel.  *Id.*  Accordingly, "other persons similarly situated will be detained under the allegedly unconstitutional procedures," such that the claim is "distinctly 'capable of repetition, yet evading review.'"  *Id.*  The Court has jurisdiction.

## II.    JUDGE ANGLIN'S *HECK* ARGUMENT IS FORFEITED AND MERITLESS.

As a second bid to prevent the Court from reaching the merits, Judge Anglin invokes the rule of *Heck v. Humphrey*, 512 U.S. 477 (1994), preventing a plaintiff from bringing a Section 1983 action that would "necessarily imply the invalidity of his conviction or sentence." *Id.* at 487; *see* Appellant Br. 18-24.  This argument fails twice over: Judge Anglin forfeited it by failing to press it below, and this suit in any event does not attack the validity of Plaintiffs' convictions or sentences, which have already been served.

20

**A.  This Court should not consider this argument because
it is untimely and Judge Anglin provides no good
reason for raising it for the first time on appeal.**

Judge Anglin concedes that his *Heck* argument was "not raised

below."  Appellant Br. 21.  And this Court ordinarily "do[es] not

consider arguments raised for the first time on appeal."  *Boston v.*

*TrialCard, Inc.*, 75 F.4th 861, 868 (8th Cir. 2023).  Although the Court

has recognized "limited exceptions to [that] general rule," no such

exception applies here.  *Cedar Rapids Bank & Tr. Co. v. Mako One*

*Corp.*, 919 F.3d 529, 534 (8th Cir. 2019).

**1.**  Contrary to Judge Anglin's contention, *Heck*'s favorable-

termination requirement is not "a jurisdictional rule."  Appellant Br. 22.

In *Heck* itself, the Supreme Court observed that the favorable-

termination requirement "den[ies] the existence of a cause of action."

512 U.S. at 489.  Whether a plaintiff has a cause of action is of course

not a jurisdictional question.  *Principal Sec. v. Agarwal*, 23 F.4th 1080,

1083-84 (8th Cir. 2022); *see also Lexmark Int'l, Inc. v. Static Control*

*Components, Inc.*, 572 U.S. 118, 128 n.4 (2014) (same).

Consequently, every court of appeals to have analyzed the

question has held that the rule of *Heck* "is not a jurisdictional bar."

21

*Polzin v. Gage*, 636 F.3d 834, 837 (7th Cir. 2011); *see Vuyanich v. Smithton Borough*, 5 F.4th 379, 389 (3d Cir. 2021); *Colvin v. LeBlanc*, 2 F.4th 494, 498 (5th Cir. 2021); *Teagan v. City of McDonough*, 949 F.3d 670, 678 (11th Cir. 2020); *Washington v. L.A. Cnty. Sheriff's Dep't*, 833 F.3d 1048, 1056 (9th Cir. 2016); *Jiron v. City of Lakewood*, 392 F.3d 410, 413 (10th Cir. 2004).[2]

Judge Anglin's request to break from this body of precedent rests on an imaginative rewriting of *Heck*. He insists that *Heck* "enforces th[e] exclusive jurisdiction" of the habeas statutes by "barring claims that attempt to use section 1983 suits to evade habeas and state court procedure." Appellant Br. 22. Were that correct, *Heck* might have used the word "jurisdiction" rather than speaking in terms of the existence of a cause of action. But it did not. So Judge Anglin's brief is unable to quote any portion of *Heck* or any other case that supports this jurisdictional gloss.

---

[2] Judge Anglin observes that a handful of circuits have described the *Heck* rule as "jurisdictional" without any analysis. Appellant Br. 22 n.2; *see, e.g.*, *O'Brien v. Town of Bellingham*, 943 F.3d 514, 529 (1st Cir. 2019) (citing *White v. Gittens*, 121 F.3d 803, 806 (1st Cir. 1997)). Those statements are based on precedents that predate the Supreme Court's efforts "to bring some discipline to the use of the term jurisdiction." *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013) (internal quotation marks omitted). They have no persuasive force.

Appellate Case: 24-2914     Page: 34     Date Filed: 02/24/2025 Entry ID: 5488495

**2.** Judge Anglin is equally wrong to assert that this Court should overlook his forfeiture on the ground that *Heck* "implicate[s] values beyond the concerns of the parties." Appellant Br. 23 (quoting *Day v. McDonough*, 547 U.S. 198, 205-06 (2006)). The cases that Judge Anglin cites concern whether "district courts are permitted, but not obliged, to consider" certain arguments "*sua sponte.*" *Day*, 547 U.S. at 209. They do not concern the ability of a litigant to raise an argument for the first time in a court of appeals. Thus, in the Seventh Circuit decision on which Judge Anglin relies, the court declined to accept a forfeited *Heck* argument in the first instance, suggesting that the "proper course would be to remand the case to enable the district judge to exercise her discretion as to whether to forgive the state's waiver." *Carr v. O'Leary*, 167 F.3d 1124, 1127 (7th Cir. 1999). The court then found that step unnecessary because the *Heck* argument failed on the merits. *Id.*

The same approach is warranted here. Although the Court can avoid the forfeiture issue if it holds that the *Heck* argument is unsuccessful, it should not accept the argument without giving the district court the opportunity to "exercise[] discretion" about whether to hear the forfeited claim. *Id.* Any such exercise of discretion would

Appellate Case: 24-2914    Page: 35    Date Filed: 02/24/2025 Entry ID: 5488495

require understanding why Judge Anglin raised this argument for the first time years into this proceeding.

## B. This suit does not trigger *Heck*'s favorable-termination bar.

In any event, Plaintiffs' suit falls outside of the *Heck* bar. *Heck* prevents Section 1983 suits that "call into question the lawfulness of conviction or confinement" of any individual; a "claim for using the wrong procedures, not for reaching the wrong result," is not *Heck*-barred. 512 U.S. at 482-83. Plaintiffs allege that they were entitled to attorneys at their bail hearings. *See supra* at 8. That is a "claim for using the wrong procedures" while prosecuting them, not a claim that would result in vacating their convictions or sentences. Therefore, the claim is not covered by *Heck*.

Judge Anglin's response is difficult to understand. He acknowledges that "the Plaintiffs will not physically be released or have their sentences reduced" as a result of this case. Appellant Br. 21. That is quite right—indeed, nothing about Plaintiffs' suit would undermine the legitimacy of their guilty pleas and resulting convictions. But Judge Anglin repeatedly invokes *United States v. Cronic*, 466 U.S. 648 (1984), which held that "a trial is unfair if the accused is denied counsel at a

24

critical stage of his trial" and so no harmless-error analysis is appropriate. *Id.* at 659; *see* Appellant Br. 19, 21.

This case, however does not concern any "trial." It concerns an initial appearance. And the Supreme Court has held that improper "denial of counsel at [a] preliminary hearing" is reviewed for "harmless error." *Coleman v. Alabama*, 399 U.S. 1, 10 (1970). It follows *a fortiori* that the Sixth Amendment violations here are not structural errors either, such that prevailing in this suit would not undo Plaintiffs' lawfully entered convictions and sentences. Plaintiffs have never asserted otherwise, which is why Judge Anglin can point to no portion of any pleading or other filing in which Plaintiffs argue that their sentences should be vacated if they prevail here.[3]

---

[3] Even if *Heck* otherwise applied here, it would pose no barrier to these Plaintiffs because they have been released from custody. "Several courts . . . have concluded that the *Heck* bar does not apply to a § 1983 plaintiff who cannot bring a habeas action" because he has already been released from custody. *Newmy v. Johnson*, 758 F.3d 1008, 1010 (8th Cir. 2014). That approach is consistent with the views of five Justices, expressed in separate opinions in *Spencer v. Kemna*, 523 U.S. 1 (1998). *See id.* at 19-21 (Souter, J., concurring); *id.* at 21-22 (Ginsburg, J., concurring); *id.* at 25 n.8 (Stevens, J., dissenting). Although this Court has adhered to the older rule "that the favorable-termination rule still applies when a § 1983 plaintiff is not incarcerated," *Newmy*, 758 F.3d at 1010, Plaintiffs respectfully submit that the rule is incorrect for the reasons stated by the majority of circuits and by a majority of Justices

Appellate Case: 24-2914     Page: 37     Date Filed: 02/24/2025 Entry ID: 5488495

III. **THE SIXTH AMENDMENT GUARANTEES THE RIGHT TO COUNSEL AT JUDGE ANGLIN'S BAIL HEARINGS.**

The district court correctly concluded that the Sixth Amendment entitles Plaintiffs to the presence of counsel during Judge Anglin's bail hearings—a conclusion that comports with decisions of the Supreme Court and this Court, as well as with the significance the Founders placed on bail.

### A. The Supreme Court and this Court's precedents require the right to counsel at bail hearings.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. Defendants consequently have the right to the assistance of counsel at all "critical stages" of criminal proceedings. *Smith v. Lockhart*, 923 F.2d 1314, 1318-19 (8th Cir. 1991) (citing *United States v. Wade*, 388 U.S. 218, 226 (1967)).

Critical stages include "steps in the proceedings in which the accused is confronted by the procedural system or the prosecutor or

---

on the *Spencer* Court. If the Court otherwise applies the *Heck* bar, Plaintiffs may press this issue in a petition for rehearing en banc or for certiorari.

both," and "where available defenses may be irretrievably lost." *Smith*, 923 F.2d at 1318-19. Put another way, a stage of proceedings is "critical" for Sixth Amendment purposes if it "might well settle the accused's fate." *Wade*, 388 U.S. at 224. To apply this standard, courts must "analyze whether potential substantial prejudice to a defendant's rights inheres in the particular confrontation and the ability of counsel to help avoid that prejudice." *Coleman v. Alabama*, 399 U.S. 1, 7 (1970) (quoting *Wade*, 388 U.S. at 227). And the Supreme Court and this Court have determined that a wide range of pretrial stages satisfy this test—including arraignments, post-indictment interrogations and lineups, competency hearings, plea-bargain negotiations, and plea hearings. *Hamilton v. Alabama*, 368 U.S. 52, 54 (1961); *Massiah v. United States*, 377 U.S. 201, 206-07 (1964); *Wade*, 388 U.S. at 236-37; *Raymond v. Weber*, 552 F.3d 680, 684 (8th Cir. 2009); *Missouri v. Frye*, 566 U.S. 134, 143-44 (2012); *Argersinger v. Hamlin*, 407 U.S. 25, 34-35 (1972).

The overwhelming majority of federal and state courts to have considered the question have also held, as directly relevant here, that hearings at which bail is determined are a critical stage of proceedings

27

for purposes of the Sixth Amendment. *Higazy v. Templeton*, 505 F.3d 161, 173 (2d Cir. 2007); *Ditch v. Grace*, 479 F.3d 249, 253 (3d Cir. 2007); *Torres v. Collins*, 2023 WL 6166523, at \*12 (E.D. Tenn. Sept. 21, 2023); *Remick v. Utah*, 2018 WL 1472484, at \*10 (D. Utah Mar. 23, 2018); *Caliste v. Cantrell*, 329 F. Supp. 3d 296, 314 (E.D. La. 2018), *aff'd*, 937 F.3d 525 (5th Cir. 2019); *Walsh v. Massachusetts*, 151 N.E.3d 840, 860 (Mass. 2020); *Valdez-Jimenez v. Eighth Jud. Dist. Ct.*, 460 P.3d 976, 987 (Nev. 2020); *Tucker v. State*, 394 P.3d 54, 63 (Idaho 2017); *Hurrell-Harring v. New York*, 930 N.E.2d 217, 223 (N.Y. 2010); *Gonzalez v. Comm'r of Corr.*, 68 A.3d 624, 631-37 (Conn. 2013); *New Jersey v. Fann*, 571 A.2d 1023, 1030 (N.J. Super. Ct. 1990). The leading treatise on criminal procedure agrees that "[p]retrial detention hearings are uniformly viewed as a proceeding in which defendant has a right to be represented by counsel." 3 Wayne LaFave et al., *Criminal Procedure* § 11.2(b), at n.59 (4th ed. 2024).[4]

---

[4] There is precious little authority going the other way. *See* App. 534-35; R. Doc. No. 120, at 20-21. Although the district court counted *United States v. Portillo*, 969 F.3d 144 (5th Cir. 2020), on the other side of the split, the proceeding in that case involved a notification of "the government's intent to detain [defendant] without bond pending trial"— not the actual setting of bail. *Id.* at 161. So the only appellate authorities adopting Judge Anglin's stance are an unpublished and

Appellate Case: 24-2914    Page: 40    Date Filed: 02/24/2025 Entry ID: 5488495

For the reasons that follow, this Court should reach the same conclusion here.

### 1. Bail hearings can effectively determine a criminal defendant's fate.

The bail hearings held by Judge Anglin fit comfortably into the category of proceedings protected by the Sixth Amendment. They are "critical" in three ways: They determine whether a criminal defendant will be at liberty; they shape the defendant's ability to prepare for trial; and they in many cases determine the defendant's ultimate sentence.

*First*, the obvious and most immediate effect of a bail hearing is to determine whether a criminal defendant will be at liberty pending trial. That liberty interest, although temporary, is weighty: "[A]ny amount of actual jail time has Sixth Amendment significance." *Glover v. United States*, 531 U.S. 198, 203 (2001); *see also Argersinger*, 407 U.S. at 37 ("[T]he prospect of imprisonment for however short a time will seldom be viewed by the accused as a trivial or 'petty' matter." (internal quotation marks omitted)). So the erroneous denial of bail (or the

---

unreasoned Ninth Circuit decision, *see Farrow v. Lipetzky*, 637 F. App'x 986, 988 (9th Cir. 2016), and an unpublished decision from the Court of Appeals of Kansas holding that any Sixth Amendment error was harmless, *see Roeder v. State*, 444 P.3d 379, at *5 (Kan. App. 2019).

Appellate Case: 24-2914     Page: 41     Date Filed: 02/24/2025 Entry ID: 5488495

erroneous setting of a bail amount) imposes "potential substantial prejudice to defendant's rights." *Coleman*, 399 U.S. at 7. Farella's experiences here only illustrate the point: she testified had she "been able to get out [of jail] faster," she "probably wouldn't have lost [her] job, [her] house, and [her] car." App. 541; R. Doc. 120, at 27. A proceeding that imperils a person's home and livelihood is almost definitionally a "critical" one. And bail hearings also threaten the liberty of defendants in other ways, too: Judge Anglin can impose conditions on a defendant's pretrial release, including by limiting their "activities, movements, associations, and residences," even if no bail is set. Ark. R. Crim. P. 9.1(b)(iii); *see supra* at 5.

It is unsurprising, therefore, that the Supreme Court, this Court, and other circuits have emphasized that bail determinations are a critical part of the criminal process. In *Coleman*, the Supreme Court observed that a preliminary hearing—one purpose of which was to "fix bail"—was a critical stage of Alabama's criminal process. 399 U.S. at 8. That was so, the Court explained, because counsel could "mak[e] effective arguments for the accused on such matters as the necessity for an early psychiatric examination or bail." *Id.* at 9. This Court later

Appellate Case: 24-2914    Page: 42    Date Filed: 02/24/2025 Entry ID: 5488495

summarized *Coleman*'s holding as follows: "*Coleman* stands for the proposition that a preliminary hearing is a critical stage and that counsel is essential at that proceeding to protect the accused against any erroneous or improper prosecution and in making arguments on such matters as bail." *McClain v. Swenson*, 435 F.2d 327, 330 (8th Cir. 1970).

In *Smith*, this Court similarly held that an omnibus hearing was a critical stage in part because defendant moved "to reduce bail" at the hearing, and thus "the assistance of counsel could have been of critical importance." 923 F.2d at 1319. In reaching that holding, the Court stressed the "special role" that counsel play at "preliminary hearings in which bail reduction motions are considered." *Id.* The Second Circuit has likewise ruled that bail hearings are critical because they "determine whether a defendant will be allowed to retain, or forced to surrender, his liberty during the pendency of his criminal case." *Higazy*, 505 F.3d at 173 (internal quotation marks omitted).[5]

---

[5] These observations hold particular force when it comes to Arkansas, which does not require another hearing between "the first appearance" and "sixty days of the defendant's arrest." Ark. R. Crim. P. 8.6. Thus, unless released on bail, a defendant will be unable to obtain his or her liberty for months. The other States in this Circuit allow a

31

*Second*, a defendant's success or failure at his bail hearing will significantly shape her incentives to plea or go to trial. An incarcerated defendant is simply less able to prepare a criminal defense than a defendant who is at liberty: "Erroneous pretrial detention can negatively impact an arrestee's ability to meet with counsel, result in subjection to physical and psychological burdens that can obstruct trial preparation with counsel, and heighten the possibility that an arrestee will accept a plea agreement he would have otherwise rejected but for his erroneous pretrial detention." *Torres*, 2023 WL 6166523, at *11. Consequently, one study shows that detained defendants plead guilty at a 25% higher rate than "similarly situated releasees," and are 43% more likely "to receive a jail sentence and receive jail sentences that are nine days longer than (or more than double that of) nondetainees." Paul Heaton, et al., *The Downstream Consequences of Misdemeanor Pretrial Detention*, 69 Stan. L. Rev. 711, 747 (2017) (cited at App. 546; Doc. 120, at 32). Put differently, the granting of bail "cuts down on the number of

---

defendant to obtain a preliminary hearing much sooner. *See, e.g.*, Iowa R. Crim. P. 2.2(3)(e) ("10 days following the initial appearance if the defendant is in custody"); Minn. R. Crim. P. 4.03(1) ("within 48 hours from the time of the arrest"); *Nebraska v. Nissen*, 560 N.W.2d 157, 170 (Neb. 1997) ("48 hours").

plea deals" that defendants feel pressured to accept "just to get out of jail—regardless of their guilt or innocence." App. 542; Doc. 120, at 28 (quoting Charlie Gerstein, *Note, Plea Bargaining and the Right to Counsel at Bail Hearings*, 111 Mich. L. Rev. 1513, 1516 (2013)).

Pretrial detention thus "might well settle the accused's fate." *Wade*, 388 U.S. at 224. "In today's criminal justice system," the "negotiation of a plea bargain, rather than the unfolding of a trial, is almost always the critical point for a defendant." *Frye*, 566 U.S. at 144. And the evidence is overwhelming that defendants who are at liberty are differently situated than incarcerated defendants when it comes to plea bargaining—even before considering the different ability of those groups to prepare for trial effectively. A stage of proceedings that has that effect is by definition critical to the trial.[6]

_____

[6] In *Gerstein v. Pugh*, 420 U.S. 103 (1975), the Supreme Court held that a "probable cause determination is not a 'critical stage' in the prosecution that would require appointed counsel," explaining that the Fourth Amendment "probable cause determination is addressed only to pretrial custody." *Id*. at 122-23. But that holding did not address whether a bail determination—which follows the finding of probable cause, and which therefore can affect a defendant's liberty for a far longer period than the probable-cause determination—is a critical stage.

Appellate Case: 24-2914   Page: 45   Date Filed: 02/24/2025 Entry ID: 5488495

*Third*, bail decisions directly shape the final sentence a defendant serves. Many defendants are sentenced to "time served"—that is, their ultimate prison sentence is simply the time they have already spent in jail. *See, e.g.*, *United States v. Jidoefor*, 97 F.4th 1144, 1147 (8th Cir. 2024); *United States v. Morin*, 95 F.4th 592, 593 (8th Cir. 2024). This is so even when defendants might have negotiated or otherwise received shorter sentences if they had received the assistance of counsel before bail was set.

Farella and Murphy are two examples: Murphy spent 113 days in jail before accepting a plea deal to time served, and Farella likewise received a sentence that perfectly matched the 38 days she already spent in jail. *See supra* at 6-8. For them, the bail hearing effectively served as a sentencing hearing: Because Farella did not receive bail, she lost her right to negotiate for a sentence that would have resulted in less than 38 days' imprisonment. So too for Murphy. It is difficult to see how a stage of proceedings could more clearly "reduce the trial itself to a mere formality" when it comes to sentencing. *Wade*, 388 U.S. at 224.

Appellate Case: 24-2914    Page: 46    Date Filed: 02/24/2025 Entry ID: 5488495

2. *As Judge Anglin admits, the assistance of counsel can improve bail-hearing outcomes.*

"[T]he ability of counsel to help avoid" these dangers cannot seriously be questioned. *Coleman*, 399 U.S. at 7 (quoting *Wade*, 388 U.S. at 227). All of the risks that make bail hearings critical—the immediate deprivation of liberty, the resulting difficulty in preparing for trial, and the ultimate effect on a sentence—would be ameliorated through the assistance of counsel. The best evidence is Judge Anglin's own testimony: He admitted in his deposition that having public defenders at his bail hearings would be "beneficial" and "helpful." App. 106, 129; R. Doc. 98-1, at 22, 45. And he allows privately retained attorneys to appear at those hearings to advocate on their clients' behalf. *See* App. 129; R. Doc. 98-1, at 45.

Judge Anglin's statement that counsel are "helpful" in bail hearings makes good sense. The Arkansas Rules of Criminal Procedure require courts setting bail to consider a range of discretionary factors, including "the apparent probability of conviction and the likely sentence," in determining bail. Ark. R. Crim. P. 8.5(b), 9.2(c). And in considering those factors, Judge Anglin permits attorneys or unrepresented defendants to introduce documentary evidence at bail

35

hearings.  App. 166; R. Doc. 98-2, at 82.  He also considers the recommendations of prosecutors in setting bail.  App. 151; R. Doc. 98-1, at 67.  So the State has a formal opportunity at bail hearings to advocate for its position, while the unrepresented defendant is left "stand[ing] alone."  *Wade*, 388 U.S. at 266.  And if Judge Anglin were correct as to the Sixth Amendment's meaning, he could even refuse to allow retained counsel to assist defendants in rebutting the State's bail recommendations.  That cannot be right.

Again, the facts of Plaintiffs' cases illustrate the need for counsel in this setting.  Murphy's bail was set at $40,000, above the amount recommended by the prosecution.  *See supra* at 8.  But rather than advocating for a lower amount, Murphy avoided asking Judge Anglin "why he set the bail at $40,000," "not [having] even seen $10,000 in [his] life," because he worried that doing so would "make the bail go up more."  *See* App. 519-20, 541; R. Doc. 120, at 5-6, 27.  The presence of counsel would surely have enabled Murphy to better advocate his case, including by introducing the "documentary evidence" that Judge Anglin permits at bail proceedings.  App. 166; R. Doc. 98-2, at 82.

36

### 3. *Judge Anglin's contrary arguments lack merit.*

Judge Anglin's opening brief has little to say about any of this or the district court's analysis. It does not dispute that bail hearings determine whether a defendant will immediately go free, that they affect a defendant's ability to prepare for trial, and that they can determine the sentences of defendants like Farella and Murphy. And it does not contest that having lawyers at their hearings would be "helpful" (to use Judge Anglin's own word) for criminal defendants in his courtroom. Instead, it complains about relatively minor aspects of the district court's reasoning. Even as to those issues, though, Judge Anglin's responses fall flat.

Judge Anglin begins his discussion by arguing at length that his bail hearings are not "adversarial." Appellant Br. 24-29. As explained above, that claim is overstated: Judge Anglin allows private attorneys to attend bail hearings, considers the prosecution's bail recommendations, and would permit an arrestee or his counsel to present documentary evidence or make argument to the court. *See supra* at 6, 35-36. But more fundamentally, the claim is irrelevant, because the Supreme Court does not require the assistance of counsel

37

only at formal, adversarial proceedings. Even "informal," out-of-court steps like a post-indictment lineup warrant the assistance of counsel. *Coleman*, 399 U.S. at 7; *Wade*, 388 U.S. at 236-37. So it does not matter that Judge Anglin does not permit the cross-examination of witnesses at his bail hearings.

Judge Anglin also asserts that arrestees can seek to "revisit[]" his bail determinations by a showing of good cause after they have been appointed counsel. Appellant Br. 27; *see* Ark. R. Crim. P. 8.6. But Judge Anglin fundamentally misreads the Arkansas Rule of Criminal Procedure that he cites. That rule, entitled "Time for Filing Formal Charge," provides that the prosecution must file an "indictment or information" within 60 days, "unless the prosecuting attorney establishes good cause for the delay." Ark. R. Crim. P. 8.6. "If good cause is shown, the court shall reconsider bail for the defendant." *Id.* The rule thus does not provide a freestanding right to seek reconsideration of a defendant's bail; it simply states that the court must reconsider bail if the prosecution justifies a delay in pressing charges. It thus has no relevance to this appeal.

38

Next, Judge Anglin seeks to nitpick the district court's reliance on "statistical literature." Appellant Br. 30. But courts, including the Supreme Court, often consult empirics in answering Sixth Amendment and other constitutional questions that depend on incentives and outcomes in the real world. *See, e.g.*, *Ramos v. Louisiana*, 590 U.S. 83, 100 & n.46 (2020) (collecting empirical data "that requiring unanimity may provide other possible benefits, including more open-minded and more thorough deliberations"); *Frye*, 566 U.S. at 143 ("Ninety-seven percent of federal convictions and ninety-four percent of state convictions are the result of guilty pleas." (citing various statistical sources)); *Wade*, 388 U.S. at 228-29 & n.6 (citing studies to show that "[t]he vagaries of eyewitness identification are well-known"). Judge Anglin identifies no error with the district court following the same approach, nor does he point to any methodological problems with the sources the court cited. In any event, the district court's citations to a handful of studies were only to corroborate the more fundamental point—that bail determinations are critical for criminal defendants like Farella and Murphy, whose own experiences are more than enough to

39

demonstrate the harms of appearing without counsel at a bail proceeding. *See supra* at 6-8, 30, 34.

Judge Anglin concludes his argument by misstating the Sixth Amendment standard. He appears to suggest that a stage is "critical" for Sixth Amendment purposes only if it necessarily would make "the trial itself" a "mere formality." Appellant Br. 31 (quoting *Wade*, 388 U.S. at 224). That is not correct. As already explained, the hallmark of a "critical stage" is that it "might" have such an effect, *Wade*, 388 U.S. at 224—or, put differently, that there is more than a "minimal risk that [defense] counsel's absence at such stages might derogate from [the defendant's] right to a fair trial," *id.* at 227-28. *See Smith*, 923 F.2d at 1319 (explaining that "the ability to influence the outcome of proceedings" determines whether a stage is critical). Thus, Judge Anglin badly errs in asserting that the fact that "bail determinations are, even on [the district court's] view, only sometimes outcome-influencing" cuts against Plaintiffs' Sixth Amendment argument. Appellant Br. 32. It is precisely because bail determinations have the "potential" to shape criminal outcomes that the Sixth Amendment

40

guarantees the presence of counsel at those hearings. *Coleman*, 399 U.S. at 7.

### B. History and tradition confirm that bail hearings are a critical stage.

Just last Term, the Supreme Court underscored that "history and tradition" can combine with precedent to explicate the Constitution's meaning. *Vidal v. Elster*, 602 U.S. 286, 301 (2024). And especially when it comes to the Sixth Amendment, several Justices have recently encouraged courts and counsel to consult relevant history and tradition when explicating the Constitution's meaning. *See, e.g.*, *Erlinger v. United States*, 602 U.S. 821, 829-32 (2024); *Smith v. Arizona*, 602 U.S. 779, 804 (2024) (Thomas, J., concurring in part); *Luis v. United States*, 578 U.S. 5, 25 (2016) (Thomas, J., concurring in the judgment); *Crawford v. Washington*, 541 U.S. 36, 50 (2004) (explaining that the "Sixth Amendment must be interpreted" with Founding-era practices and aims "in mind"); *Apprendi v. New Jersey*, 530 U.S. 466, 477 (2000) (same); *id.* at 501-02 (Thomas, J., concurring) (same).

Here, it confirms the points above that the Constitution's text and history put unique importance on bail hearings. Because "[t]he right to counsel in Anglo-American law has a rich historical heritage" and

41

courts have "regularly drawn on that history in construing the counsel guarantee of the Sixth Amendment," the relevant early American history would dictate that bail hearings are "critical stages" even if the case law were otherwise ambiguous. *United States v. Ash*, 413 U.S. 300, 306 (1973).[7]

**1.** Because bail is a means of preserving physical liberty and avoiding unjust detention, it was of central importance to the Founding generation. That much is clear from the Eighth Amendment's text: Bail is one of the only pretrial stages of the criminal process identified in the Bill of Rights, which guarantees that "[e]xcessive bail shall not be required." *See* U.S. Const. amend. VIII. And the First Congress acted quickly—indeed, even before the ratification of the Bill of Rights—to safeguard bail rights for federal crimes in the Judiciary Act of 1789. *See Marsh v. Chambers*, 463 U.S. 783, 790 (1983) (looking to the acts of the First Congress as "historical evidence" of how the Framers

---

[7] To be clear, insofar as this case involves the Sixth Amendment requirement that a court "appoint counsel for an indigent defendant," *Gideon v. Wainwright*, 372 U.S. 335, 339 (1963); *see also Johnson v. Zerbst*, 304 U.S. 458 (1938), the Court has not grounded that particular right primarily in originalist terms. The point is simply that, applying the "critical stage" framework established by the Supreme Court (which Judge Anglin rightly takes as a given), history and tradition dictate that bail proceedings easily satisfy the test for identifying such stages.

Appellate Case: 24-2914     Page: 54     Date Filed: 02/24/2025 Entry ID: 5488495

understood the Bill of Rights).  The Judiciary Act required that, with certain exceptions, "bail shall be admitted" "upon all arrests in criminal cases."  Judiciary Act of 1789, ch. 20, § 33, 1 Stat. 73, 91.

Indeed, bail proceedings were deeply rooted in this Nation's history and tradition even before the Constitution's Framing.  Bail "has ancient and durable roots" that are "as old as the common law" itself. *Florida v. Jardines*, 569 U.S. 1, 6 (2013) (quoting *Hester v. United States*, 265 U.S. 57, 59 (1924)).  The origins of bail in the English legal system trace back to the seventh-century Anglo-Saxon "borh" rules, which "warranted the presence of the accused before a judicial tribunal to answer charges and insured the payment of 'wergeld' if the accused were found guilty."  William F. Duker, *The Right to Bail: A Historical Inquiry*, 42 Alb. L. Rev. 33, 35 (1977); *see also* Kellen R. Funk & Sandra G. Mayson, *Bail at the Founding*, 137 Harv. L. Rev. 1816, 1827 (2024) ("Bail and suretyship grew out of the pre-Norman system of amercements, that is, fines to settle blood feuds.").  In 1215, that pre-Norman practice was written into English law, when Magna Carta declared that "[n]o free man shall be arrested or imprisoned . . . except

43

by the lawful judgment of his peers or by the law of the land."  Funk &
Mayson, *supra*, at 1827 (quoting Magna Carta, ch. 39 (1215)).

In the succeeding centuries, bail rights were "protected, refined,
and strengthened by some of the most fundamental constitutional
documents in Anglo-American history."  Matthew J. Hegreness,
*America's Fundamental and Vanishing Right to Bail*, 55 Ariz. L. Rev.
909, 916-17 (2013).  In 1275, for instance, the first Statute of
Westminster formalized Magna Carta's bail guarantee by demarcating
particularly serious offenses, such as arson, treason, and breaking
prison, that would not be bailable, while permitting bail for all other
crimes.  *Id.* at 917.

Other enactments followed in subsequent centuries.  The 1628
Petition of Right and 1679 Habeas Corpus Act created a "protective
structure" around bail, providing for mechanisms by which the accused
could obtain release when "unlawfully detained for bailable offenses."
Hegreness, *supra*, at 918 (quoting Caleb Foote, *The Coming
Constitutional Crisis in Bail: I*, 113 U. Pa. L. Rev. 959, 968 (1965)).
And, presaging the Eighth Amendment, the English Bill of Rights in
1689 protected against excessive bail.  *Id.* at 919.  "[B]y the time of the

44

United States's Founding, pretrial release on bail was a fundamental part of English constitutionalism."  Funk & Mayson, *supra*, at 1828.

In eighteenth-century America, likewise, bail was seen as a central guarantor of liberty.  When the first English colonists arrived in the Americas, they "carried the Statute of Westminster with them across the Atlantic."  June Carbone, *Seeing Through the Emperor's New Clothes: Rediscovery of Basic Principles in the Administration of Bail*, 34 Syracuse L. Rev. 517, 529 (1983).  The framers of fledgling colonial governments immediately wove bail protections into their new legal systems.  Funk & Mayson, *supra*, at 1836, 1840 (discussing Massachusetts and Pennsylvania statutes).  And "[e]very state that entered the Union after 1789, except West Virginia and Hawaii, guaranteed a right to bail in its original state constitution."  *Id.* at 1842 (quoting Donald B. Verrilli, Jr., Note, *The Eighth Amendment and the Right to Bail: Historical Perspectives*, 82 Colum. L. Rev. 328, 351 (1982)).

This history leaves no doubt that the Framers of our Constitution saw the ability to obtain bail as a cornerstone of an accused's right to defend himself against criminal prosecution.  The Sixth Amendment

45

question presented should therefore be answered "with this focus in mind." *Crawford*, 541 U.S. at 50.

**2.** Two particular features of Founding-era bail practice further underscore that bail proceedings always have been a critical stage in which "the defendant is confronted with adversarial proceedings and legal questions on which the defendant would benefit from counsel's advice." *Raymond*, 552 F.3d at 684.

*First*, entitlement to bail at the Founding turned largely on the judge's discretion. Under the English common law system followed in many of the first States, bail was discretionary for all but a few crimes. Funk & Mayson, *supra*, at 1842-43; *see* Edward Coke, *A Treatise of Baile and Mainprize* 3 (1635) ("[T]herefore it seemeth to rest much in the discretion of the judge or judges of the court upon due and mature consideration had of the manner and circumstances of the offense, whether in that case he is to be bailed or not."). The judges' determinations turned on a host of discretionary factors, including "the seriousness of the charge," the strength of the evidence, "[r]eputational

Appellate Case: 24-2914    Page: 58    Date Filed: 02/24/2025 Entry ID: 5488495

considerations," jail conditions, and the health of the accused.  *See* Funk & Mayson, *supra*, at 1833-34.[8]

*Second*, and relatedly, admission to bail at the Founding "turned largely on the magistrate's estimation of the defendant's probable guilt."  Funk & Mayson, *supra*, at 1833.  For the many crimes for which bail determinations were discretionary, bail was "only proper . . . where it st[ood] indifferent whether the person accused were guilty or innocent."  *Id.* (quoting 3 William Hawkins, *A Treatise of the Pleas of the Crown* 207 (London, G.G. & J. Robinson, Thomas Leach ed., 7th ed. 1795)); *see, e.g.*, 4 William Blackstone, *Commentaries on the Laws of England* 295-96 (1769) (no bail "[i]n case of manslaughter, if the prisoner be clearly the slayer and not barely suspected to be so"); 2 Matthew Hale, *The History of the Pleas of the Crown* 102 (5th ed. 1716) ("Open and notorious Thieves not bailable. But he that is taken for a light Suspicion bailable.").  The practice of bailing defendants "when the evidence was thin" was followed even when the defendant was charged

---

[8] Reform movements both in England and in some American colonies narrowed that discretion over time by requiring bail in some cases and forbidding it in others.  Funk & Mayson, *supra*, at 1845.  But even then, bail remained discretionary for all capital crimes, which sometimes included a lengthy list of offenses.  *Id.* at 1844.

Appellate Case: 24-2914     Page: 59     Date Filed: 02/24/2025 Entry ID: 5488495

with the most serious felonies, such as treason. Funk & Mayson, *supra*, at 1885 & n.408. And even in those jurisdictions that made bail mandatory for non-capital crimes, bail determinations in capital cases still turned on the strength of the prosecution's case, namely whether "the proof [was] evident or the presumption great." *Id.* at 1842; *accord* Foote, *supra*, at 987; Carbone, *supra*, at 531.

Indeed, bail proceedings at the Founding were often quite similar to trials. It was common for courts to "look into the depositions taken before the coroner" or "given before the committing magistrate" when reviewing decisions to deny bail. 1 Joel Prentiss Bishop, *Commentaries on the Law of Criminal Procedure* 495 (Boston, Little, Brown, & Co. 1866). "The power to let to bail," declared one court, "implies the power to hear all legal testimony which may influence the decision of the motion." *Virginia v. Rutherford*, 26 Va. (5 Rand.) 646, 649 (Va. Gen. Ct. 1826). Such evidentiary testing illustrates the reality that, under the common law system inherited in the American colonies, "the distinction between pretrial and trial . . . detention tended to blur." Funk & Mayson, *supra*, at 1833-34. With officials grounding bail determinations in the quality of the evidence of guilt, a subsequent jury

48

verdict "did not so much *initiate* a postconviction sentencing phase as it *confirmed* the propriety of a sentence already being served." *Id.* at 1834.

These features of early bail practice mean that the Founders would easily have concluded that bail determinations would benefit from the "guiding hand of counsel." *Ash*, 413 U.S. at 307 (quoting *Powell v. Alabama*, 287 U.S. 45, 69 (1932)). The Sixth Amendment recognizes that at the Founding, as now, "an unaided layman had little skill in arguing the law or in coping with an intricate procedural system." *Id.* And the intricacies of early bail practice—with its focus on questions closely linked to guilt and innocence—exemplify the sort of proceeding that triggers the Sixth Amendment concern.

Indeed, one of the highest-profile early bail proceedings— involving Aaron Burr's trial for treason—featured Burr's lawyer persuading none other than Chief Justice Marshall to "adjust[] [Burr's] bail amount downward." Funk & Mayson, *supra*, at 1885. Other Founding-era defendants had the assistance of counsel at their bail hearings as well. *Id.* Of course, the Supreme Court did not recognize the constitutional right of indigent defendants to have appointed

49

counsel until the twentieth century, *see supra* at 42 n.7, so representation at bail hearings did not always occur. But there is no record of which we are aware suggesting that judges during the Founding era or in the nineteenth century ever denied defendants the right to have the assistance of retained counsel at such hearings— which would have been permissible if Judge Anglin's legal position were accurate. At any rate, what matters for present purposes is that bail hearings were trial-like and otherwise adversarial and consequential enough that counsel sometimes participated.

## IV. JUDGE ANGLIN'S SCOPE-OF-RELIEF CONCERNS ARE FORFEITED AND IRRELEVANT.

As a final salvo, Judge Anglin urges that the relief the district court entered is overbroad in two respects. He first contends that the district court should have confined its relief to a declaratory judgment rather than an injunction. Appellant Br. 33. He next complains that the district court should not have entered "retrospective," as opposed to prospective, "declaratory relief." *Id.* at 34.

These remedial objections are forfeited. Judge Anglin never told the district court that it should not enter an injunction, nor did he complain about the language of the declaratory judgment. Accordingly,

Appellate Case: 24-2914    Page: 62    Date Filed: 02/24/2025 Entry ID: 5488495

the Court should not consider those arguments in the first instance. *Boston*, 75 F.4th at 868. If Judge Anglin believes the judgment should be amended based on his late-breaking arguments, the Federal Rules give him a vehicle to raise that argument to the district court, *see* Fed. R. Civ. P. 60(b), followed if necessary by an appeal to this Court.

Nor do Judge Anglin's contentions affect the core of the judgment below. Judge Anglin musters no argument that the district court's central ruling—declaring prospectively "that the certified class of Plaintiffs have a Sixth Amendment right to counsel at Judge Anglin's bail determinations"—is remedially flawed. App. 554; R. Doc. 121, at 1. His briefing assumes that this declaratory judgment would have the same effect as an injunction, such that no injunction should separately issue. *See* Appellant Br. 33-34. And the precedent he cites confirms that "§ 1983 does not bar declaratory relief against judges." *Justice Network Inc. v. Craighead Cnty.*, 931 F.3d 753, 763 (8th Cir. 2019).

Finally, none of his theories bear on the relief entered against the public-defender defendants, who are not judicial officers entitled to any immunity and who have not appealed to this Court. *See supra* at 10. Those public defenders are now under an injunction to appear at Judge

51

Anglin's bail hearings, and Judge Anglin has made clear that he "welcome[s]" the defenders' presence. App. 106; R. Doc. 98-1, at 22; *see supra* at 6. So even if this Court were to hold that it was inappropriate to impose any relief at all against Judge Anglin, arrestees in his courtroom will still have the benefit of public defense at bail hearings.

For all these reasons, Judge Anglin's requested tinkering to the district court's judgment will not actually alter the effect of that judgment: So long as this Court agrees with the district court's Sixth Amendment holding, criminal defendants in Judge Anglin's courtroom will have access to counsel at their bail hearings. Particularly given that reality, there is no need for this Court to consider in the first instance Judge Anglin's minor proposed revisions to the judgment.

Appellate Case: 24-2914    Page: 64    Date Filed: 02/24/2025 Entry ID: 5488495

## CONCLUSION

For the foregoing reasons, the Court should affirm the judgment below.

Dated: February 21, 2025

Doug Norwood
Alison Lee
NORWOOD & NORWOOD, P.A.
P.O. Box 1960
2001 S. Dixieland Road
Rogers, AR 72757

Respectfully submitted,

*/s/ Jeffrey L. Fisher*

Jeffrey L. Fisher
O'MELVENY & MYERS LLP
2765 Sand Hill Road
Menlo Park, CA 94025
+1 650 473 2633
jlfisher@omm.com

Joshua Revesz
Ellie Hylton
Cody Kahoe
O'MELVENY & MYERS LLP
1625 Eye Street NW
Washington, DC 20006

*Counsel for Appellees*

53

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 10,546 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). This brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced, 14-point Times New Roman font using Microsoft Word.

I further certify that this PDF file was scanned for viruses, and no viruses were found on the file.

Dated: February 21, 2025

/s/ *Jeffrey L. Fisher*
Jeffrey L. Fisher

**CERTIFICATE OF SERVICE**

I hereby certify that on February 21, 2025, I electronically filed this brief with the Clerk of this Court using the appellate CM/ECF System. The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

/s/ *Jeffrey L. Fisher*
Jeffrey L. Fisher