No. 24-2914

ABIGAIL FARELLA et al.,
Plaintiffs-Appellees

v.

DISTRICT JUDGE A.J. ANGLIN,
Defendant-Appellant.

On Appeal from the United States District Court
for the Western District of Arkansas
No. 5:22-CV-5121 (Hon. Timothy L. Brooks)

## Defendant-Appellant's Reply Brief

TIM GRIFFIN
  Arkansas Attorney General

ASHER L. STEINBERG
  Senior Assistant Solicitor General
CHRISTINE A. CRYER
  Senior Assistant Attorney General
OFFICE OF THE ARKANSAS
  ATTORNEY GENERAL
323 Center St., Suite 200
Little Rock, AR 72201
(501) 682-1051
asher.steinberg@arkansasag.gov

*Counsel for Appellant*

**Table of Contents**

Introduction ................................................................................................1

Argument ...................................................................................................2

  I.  Plaintiffs lack standing. ......................................................................2

  II.  A bail determination in a Rule 8.1 hearing is not a criticalstage. ...................5

     A.   Bail hearings, like probable cause determinations, are non-adversarial. ................................................................................7

     B.   Initial bail determinations are not sufficiently outcome-influencing to be a critical stage. .............................................................11

     C.   Plaintiffs' other arguments for deeming initial bail determinations critical stages are unavailing. ...................................................19

  III.  The district court's injunction against Judge Anglin was improper. .............22

  IV.  If *Heck* does not bar Plaintiffs' suit, it underscores that initial bail hearings are not a critical stage of trial. .......................................................23

Conclusion .................................................................................................25

Certificate of Compliance ..........................................................................26

Certificate of Service .................................................................................26

# Table of Authorities

**Cases**

*Arkansas v. Pulaski Cnty. Cir. Ct.*,
934 S.W.2d 915 (Ark. 1996) ................................................................3

*City of L.A. v. Lyons*,
461 U.S. 95 (1983) ..............................................................................2

*Cnty. of Riverside v. McLaughlin*,
500 U.S. 44 (1991) ........................................................................ 4, 6

*Coleman v. Alabama*,
399 U.S. 1 (1970) .............................................................. 5, 12, 20, 24

*Ditch v. Grace*,
479 F.3d 249 (3d Cir. 2007) ............................................................ 20

*Ex parte Stewart*,
853 So. 2d 901 (Ala. 2002) .............................................................. 20

*Farrow v. Lipetzky*,
637 F. App'x 986 (9th Cir. 2016) ................................................. 20-21

*Fenner v. State*,
846 A.2d 1020 (Md. 2004) ............................................................... 20

*Gerstein v. Pugh*,
420 U.S. 103 (1975) .................................... 1, 5-13, 15, 17-19, 21-22

*Heck v. Humphrey*,
512 U.S. 477 (1994) ........................................................................ 23

*Higazy v. Templeton*,
505 F.3d 161 (2d Cir. 2007) ............................................................ 19

*Kaley v. United States*,
571 U.S. 320 (2014), ................................................................. 13, 17

*Murthy v. Missouri*,
603 U.S. 43 (2024) ........................................................................ 2, 4

*Padgett v. State*,
590 P.2d 432 (Alaska 1979) ............................................................ 21

*Robinson v. Norling*,
25 F.4th 1061 (8th Cir. 2022) ......................................................... 23

*Rothgery v. Gillespie Cnty.*,
554 U.S. 191 (2008) ............................................................7, 10-11, 15

*Satterwhite v. Texas*,
486 U.S. 249 (1988) ........................................................................ 25

*Smith v. Lockhart*,
923 F.2d 1314 (8th Cir. 1991) ..............................................3-4, 14, 16

*State v. Heng*,
512 P.3d 942 (Wash. Ct. App. 2022) ............................................... 21

*Sweeney v. United States*,
766 F.3d 857 (8th Cir. 2014) ........................................................... 25

*United States v. Cronic*,
466 U.S. 648 (1984) ...................................................................23-25

*United States v. Hooker*,
418 F. Supp. 476 (M.D. Pa. 1976) ................................................... 21

*United States v. Wade*,
388 U.S. 218 (1967) ...................................................................10-12

*Weitz Co. v. Lloyd's of London*,
574 F.3d 885 (8th Cir. 2009) ........................................................... 23

*Winston v. State*,
683 S.W.3d 195 (Ark. Ct. App. 2024) .......................................... 3, 14

## Rules, Statutes & Constitutional Provisions

Ark. R. Crim. P. 8.6 ...........................................................................3

Ark. R. Crim. P. 9.2(c) .......................................................................9

Ark. R. Crim. P. 9.2(e)(i) ...........................................................3,14, 16

## INTRODUCTION

Plaintiffs lack standing to bring this suit. Having been detained after uncounseled bail hearings before Judge Anglin, they sought only prospective relief against Judge Anglin's conducting bail determinations in the future without appointed counsel. Plaintiffs have no interest in those future bail determinations. And their argument that when they brought suit they were still detained is a non sequitur, because Plaintiffs never sought relief from that detention.

On the merits, Plaintiffs claim that initial bail determinations are a critical stage in a defendant's case because pretrial detention shapes defendants' plea incentives. But bail determinations are materially indistinguishable from probable cause determinations, which the Supreme Court held were not a critical stage in *Gerstein v. Pugh* because they are "addressed only to pretrial custody." 420 U.S. 103, 123 (1975). In fact, this is an even easier case than *Gerstein* was. Whereas in probable cause hearings the prosecution often presents written testimony that counsel could help rebut, in Arkansas bail hearings the prosecution does not participate at all. And whereas probable cause hearings can determine detention for the duration of a trial in cases of non-bailable offenses (as was true in *Gerstein* itself), in Arkansas initial bail determinations are always subject to reexamination on a motion for bail reduction. And by that point, counsel will have been appointed. This Court should reverse.

**ARGUMENT**

## I.    Plaintiffs lack standing.

Plaintiffs' claim in this case is that they were unconstitutionally denied counsel at their "initial bail hearings."  App. 38; R. Doc. 34, at 14; App. 39; R. Doc. 34, at 15; App. 40; R. Doc. 34, at 16.  Plaintiffs did not seek damages for that past harm, or release from detention.  Instead, they sought only prospective declaratory and injunctive relief against Judge Anglin providing that, in the future, indigent persons must have appointed counsel at Judge Anglin's initial bail hearings.  App. 40–41; R. Doc. 34, at 40–41.  Plaintiffs lack standing to seek *that* relief because there was no "real and immediate threat that [they] would again" have an initial bail hearing in another case before Judge Anglin, *City of L.A. v. Lyons*, 461 U.S. 95, 105 (1983)—regardless of whether Plaintiffs would have had standing to seek other forms of relief.  And Plaintiffs do not dispute that there is no real and immediate threat they would again have an initial bail hearing before Judge Anglin.  This is fatal to Plaintiffs' claim because "plaintiffs must demonstrate standing for each claim that they press against each defendant, and for each form of relief that they seek."  *Murthy v. Missouri*, 603 U.S. 43, 61 (2024).

Plaintiffs instead respond that, when they filed suit, their injury was not purely in the past because they were in jail as a consequence of their uncounseled initial bail hearings.  Appellees' Br. 16.  But for that injury to support standing, the

relief Plaintiffs sought would have to redress it.  The injunction Plaintiffs sought
and obtained did not do that; it only requires Judge Anglin to appoint counsel at
*future* initial bail hearings.  Plaintiffs never sought release from the detention they
suffered on account of their past initial bail hearings.  And even if they had, it is
extremely doubtful that a federal court could order that relief where Plaintiffs
could cure any defect in the initial determination by seeking a bail reduction with
their since-appointed counsel.  *See* Ark. R. Crim. P. 9.2(e)(i) (noting a judicial
officer may "decreas[e] the amount of bond, security, or deposit required by
another judicial officer"); *Arkansas v. Pulaski Cnty. Cir. Ct.*, 934 S.W.2d 915, 916
(Ark. 1996) (same); *Winston v. State*, 683 S.W.3d 195, 199 (Ark. Ct. App. 2024)
(holding whether and by how much to reduce bond "rests in the reasonable
discretion of the circuit court" under Rule 9.2).  Though Plaintiffs say Judge
Anglin cited the wrong rule of procedure as the source of the authority to reduce
bail, *see* Appellees' Br. 38 (disputing the relevance of Ark. R. Crim. P. 8.6, which
requires courts to reconsider bail if the State files charges more than 60 days after
the arrest), they do not dispute that arrestees in Arkansas can move to reduce bail
after an initial determination.  In fact, when they reach the merits they rely heavily
on *Smith v. Lockhart*, 923 F.2d 1314 (8th Cir. 1991), an Arkansas case that
addressed whether the defendant had a right to counsel at a hearing where, among
other things, he "moved 'to reduce bail.'"  Appellees' Br. 31 (quoting *Smith*, 923

F.2d at 1319). So whatever ongoing injury Plaintiffs suffered when they filed suit was within their own power to redress, and the injunction they sought did nothing to redress that injury.

Plaintiffs also liken this case to *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991). In that case, the Supreme Court rejected the argument that arrestees who had been denied a prompt probable-cause hearing lacked standing to seek an injunction requiring one because it was too late for those plaintiffs to get a prompt hearing. Appellees' Br. 16–17. But the Court only rejected that argument because, at the time of suit, the plaintiffs still had never "received [any] probable cause determination, prompt or otherwise," and could still "receive[ ] the probable cause determination to which they were entitled." *McLaughlin*, 500 U.S. at 51. Here, by contrast, the supposed "constitutional violation had already been completed," *id.* (internal quotation marks omitted); Plaintiffs already had their initial bail hearings without counsel, and they could not go back in time and have them with counsel. That means they lack standing for the "form of relief that they seek." *Murthy*, 603 U.S. at 61. Moreover, even if they alleged future injury (which they do not), their prospective injury would be self-inflicted because they could use their appointed counsel to seek bail reductions going forward. Plaintiffs therefore lack standing to seek prospective relief regarding future initial bail determinations.

## II. A bail determination in a Rule 8.1 hearing is not a critical stage.

Should the Court reach the merits, Plaintiffs' claims fail because bail determinations in Rule 8.1 hearings are not a critical stage that requires appointed counsel. Nothing Plaintiffs said in response shows otherwise.

Fifty years ago, the Supreme Court held that probable cause hearings for extended pretrial detention were "not a 'critical stage' in the prosecution that would require appointed counsel." *Gerstein v. Pugh*, 420 U.S. 103, 122 (1975). In doing so, the Court distinguished *Coleman v. Alabama*, 399 U.S. 1 (1970), which is the main case Plaintiffs rely on. The Court said that *Coleman*, which held that a pre-indictment preliminary hearing was a critical stage, was inapposite because probable cause hearings differed in "two critical" respects that foreclose the two rationales the district court gave for finding a critical stage here. *Gerstein*, 420 U.S. at 122. First, while the *Coleman* preliminary hearing had the potential to end a case altogether, probable cause determinations were "addressed only to pretrial custody," *id.* at 123, and though pretrial custody might "affect to some extent the defendant's ability to assist in preparation of his defense," *id.*, it had no formal effect on a trial's outcome. Second, while the *Coleman* preliminary hearings involved testimony from prosecution witnesses, who a suspect could not adequately cross-examine without the assistance of counsel, that concern did "not

apply" at probable cause hearings, where "the prosecution is not required to produce witnesses for cross-examination." *Id.*

Both the district court and Plaintiffs, Appellees' Br. 33 n.6, acknowledge that *Gerstein* remains good law. And the district court further acknowledged that, under it, the Sixth Amendment does not require counsel at what the court called "the *first stage* of Judge Anglin's Rule 8.1 hearings, when he makes a finding as to probable cause" and whether pretrial detention is warranted. Add. 18; App. 532; R. Doc. 120, at 18. But the district court then concluded that, despite *Gerstein*, the Sixth Amendment kicks in at the next stage of the same hearing, when Judge Anglin sets the amount of bail that applies to that pretrial detention. That is wrong for at least two reasons.

First, it is at least arguable that *Gerstein* decided that question the other way. After all, one paragraph after the Court held that the Sixth Amendment does not require counsel at probable cause determinations, the Court held that those "determination[s] may be incorporated into the procedure for setting bail." *Gerstein*, 420 U.S. at 124. The Court then reaffirmed that was permissible two decades later in *McLaughlin*. *See* 500 U.S. at 54 ("*Gerstein* explicitly contemplated" "[i]ncorporating probable cause determinations" into bail hearings). The Court did not suggest that its Sixth Amendment holding would evaporate if a State accepted that invitation to incorporate bail determinations into the probable

cause hearing. Moreover, in *Gerstein* itself, one of the arrestees was ineligible for bail because he was charged with a nonbailable offense, *Gerstein*, 420 U.S. at 105, so for him the probable cause determination *was* the bail determination.

Second, even if *Gerstein* were not directly controlling, the reasons the Court gave for holding probable cause determinations were not critical stages compel the same conclusion here. Like probable cause determinations, bail hearings are non-adversarial—indeed, even less so. And like probable cause determinations, bail hearings are "addressed only to . . . custody," *Gerstein*, 420 U.S. at 123, not to "defense on the merits," *id.* at 122. Plaintiffs' sole basis for distinguishing *Gerstein*, that bail hearings determine detention for a "longer period" of time, Appellees' Br. 33 n.6, is both incorrect and irrelevant.

A.    Bail hearings, like probable cause determinations, are non-adversarial.

Bail hearings in Arkansas are not a critical stage because they are non-adversarial. Supreme Court "cases have defined critical stages as proceedings *between an individual and agents of the State* (whether formal or informal, in court or out) that amount to trial-like confrontations, at which counsel would help the accused in coping with legal problems or meeting his adversary." *Rothgery v. Gillespie Cnty.*, 554 U.S. 191, 212 n.16 (2008) (alterations omitted) (emphasis added) (citations omitted). And indeed, one of the reasons *Gerstein* gave for holding that probable cause determinations were not critical stages is that they

7

were not sufficiently adversarial. And bail hearings are even less so. That is why Plaintiffs only argue that whether bail hearings are adversarial is "irrelevant," Appellees' Br. 37—even though the Supreme Court has said that whether they are adversarial is controlling.

The Supreme Court reasoned that probable cause determinations were "nonadversary," *Gerstein*, 420 U.S. at 122, solely because the prosecution was "not required to produce witnesses" at them, *id.* at 123. Probable cause was traditionally decided "in a nonadversary proceeding on hearsay and written testimony." *Id.* at 120. Bail hearings in Arkansas are a great deal less adversary than that. Not only does the prosecution call no witnesses, but it also offers no evidence regarding the bail factors at all. Instead, it merely offers a "recommendation [of] a single sentence" on how much bail should be. Add. 24; App. 538; R. Doc. 120, at 24. With no evidence to rebut, there is even less need for "legal assistance" than there is in a probable cause hearing. *Gerstein*, 420 U.S. at 123.

The district court, nevertheless, held Judge Anglin's bail hearings were sufficiently trial-like to qualify as critical stages. First, it reasoned that the State's one-sentence recommendation was "consequential advocacy . . . to which the defendant is denied a parallel opportunity to respond" with counsel. Add. 24; App. 538; R. Doc. 120, at 24. Yet by that logic, the State's mere position at a probable

cause hearing that probable cause is met, even if unsupported by *any* evidence, would be enough to make probable cause hearings a critical stage. *Gerstein* held the opposite—that even a proffer of written testimony is not enough to make probable cause hearings adversarial. If anything, the balance at Judge Anglin's bail hearings is tipped in favor of the defendant; the prosecution merely offers a bottom-line recommendation without any discussion of the bail factors, while the defendant is free to argue flight risk, ties to the community, and the like, all of which is within his personal knowledge. *See* Ark. R. Crim. P. 9.2(c) (setting forth the relevant factors).

Second, the district court noted that in making a bail determination, Judge Anglin must consider a number of factors on which advocacy from counsel could conceivably make a difference in the amount of bail Judge Anglin sets. Add. 24–29; App. 538–43; R. Doc. 120, at 24–29. But the same is true, *a fortiori*, of probable cause. Indeed, whether there is probable cause to believe someone committed a crime can raise complex questions of Fourth Amendment and substantive criminal law that, unlike discretionary bail determinations, are frequently appealed up to States' highest courts and even the Supreme Court. Nevertheless, the Court held that, in the pretrial detention context, probable cause determinations are not critical stages because they determine only pretrial custody,

not any aspect of the merits. So the complexity of the issues decided at a pretrial hearing alone cannot make that hearing trial-like or critical.

Recognizing the weakness of the district court's attempts to characterize bail hearings as adversarial, Plaintiffs make virtually no attempt to claim that they are, instead arguing only that whether they are adversarial or not is "irrelevant" because informal proceedings can be critical stages too. Appellees' Br. 37–38 (citing, inter alia, *United States v. Wade*, 388 U.S. 218 (1967) (holding post-indictment lineups are a critical stage)). But a proceeding can be "formal or informal" and still be adversarial, as *Rothgery* says, 554 U.S. at 212 n.16 (quoting *Wade*, 388 U.S. at 226), citing the very examples Plaintiffs give of supposedly non-adversarial critical proceedings. And formal or informal, it still must be adversarial to be critical. *See id.* (defining "critical stages as proceedings between an individual and agents of the State . . . that amount to trial-like confrontations"). A bail hearing where a prosecutor merely offers a one-sentence recommendation on bail is not just informal; it is also not, in any substantive sense, a "trial-like confrontation" between a defendant and "agents of the State." *Id.* And it is even less of one than the "nonadversary" probable cause determinations the Court held were not critical stages in *Gerstein*. 420 U.S. at 122.

B.    Initial bail determinations are not sufficiently outcome-influencing to be a critical stage.

Though Plaintiffs all but concede that Judge Anglin's bail determinations are not adversarial, they argue that what is at stake in those determinations is so important that they are nevertheless critical. As an initial matter, this argument is a nonstarter; there is no such thing as a non-adversarial critical stage. *Rothgery* defines critical stages as proceedings that are *both* adversarial and outcome-influencing, and Plaintiffs have cited no example to the contrary. But even if importance alone sufficed, what is at stake in a bail determination is little different from—and in some ways less important than—the probable cause determinations the Supreme Court held were not critical stages in *Gerstein*.

Plaintiffs begin by observing that the Supreme Court has said that proceedings are critical stages if (in addition to being adversarial) they "might well settle the accused's fate." Appellees' Br. 27 (quoting *Wade*, 388 U.S. at 224). They then claim bail determinations "can effectively determine a criminal defendant's fate" in three ways, *id.* at 29: (1) they determine whether a defendant will be at liberty pending trial, (2) they shape the defendant's incentives to go to trial, and (3) they can factor into the sentence if a defendant is sentenced to time served. None of those theories of outcome-determination satisfies the Supreme Court's conception of outcome-determination or materially distinguishes *Gerstein*.

11

1.     Detention

Plaintiffs begin by arguing that bail determinations settle whether the defendant is fated to be detained pending trial. But that is not what the Supreme Court meant by settling a defendant's fate. When it said that post-indictment lineups could "settle the defendant's fate and reduce the trial to a mere formality" in *Wade*, 388 U.S. at 214, it meant they could determine the outcome of the trial. And whenever the Court has found proceedings were a critical stage, it reasoned they could determine the outcome of the trial. Even *Coleman*, which held that a pre-indictment preliminary hearing was a critical stage, rested on the ground that if the defendant prevailed at those hearings, it would "mean that he would not be tried at all." *Gerstein*, 420 U.S. at 123. So merely settling whether the defendant is temporarily detained pending the trial's outcome does not suffice. Indeed, that is what *Gerstein* held. Distinguishing *Coleman*, it reasoned probable cause determinations were not critical stages because they were "addressed only to pretrial custody," and that though pretrial custody "may affect to some extent the defendant's ability to assist in preparation of his defense," that did "not present the high probability of substantial harm identified as controlling in *Wade* and *Coleman*." *Id.*

Plaintiffs recognize *Gerstein* poses a serious problem for their position and attempt to distinguish it. But the only distinction they offer is that bail

determinations can determine whether a defendant is detained pending trial "for a far longer period than the probable-cause determination," because in some jurisdictions (though not Arkansas), the bail determination follows the probable cause determination. Appellees' Br. 33 n.6. That neither factually nor legally distinguishes *Gerstein*.

Factually, it mischaracterizes both the effects of probable cause determinations and Arkansas initial bail determinations. Starting with probable cause determinations, if a defendant is detained for a non-bailable offense a probable cause determination can determine whether a defendant is at liberty for the whole trial. In fact, the Court noted that was the case in *Gerstein* itself at the very beginning of its opinion. *Gerstein*, 420 U.S. at 105. Yet even with that fact in mind it held that probable cause determinations do not require counsel. Similarly, decades later in *Kaley v. United States*, 571 U.S. 320 (2014), the Supreme Court noted that under federal law, a "grand jury's unreviewed finding" of probable cause for certain offenses, made without any participation by the defendant, "creates a rebuttable presumption that a defendant is ineligible for bail," *id.* at 329 n.6, and that even the opportunity to rebut the presumption is only provided by the grace of the Bail Reform Act, "not because . . . the Constitution compels the inquiry," *id.*

As for Arkansas initial bail determinations, those determinations only provisionally settle whether a defendant will be detained during the trial. That is because in Arkansas, courts may freely reduce bail, even that previously set by "another judicial officer." Ark. R. Crim. P. 9.2(e)(i); *see Winston*, 683 S.W.3d at 199 (holding courts have discretion to reduce bail under the Rule 9.2 factors). So what ultimately determines whether a defendant will be detained for the duration of the trial is whether the defendant moves to reduce bail and whether that motion succeeds—at which point a defendant will have appointed counsel.[1] By contrast, courts in Arkansas are not authorized to revisit the initial probable cause determination—and of course, if probable cause is found for a nonbailable offense, the probable cause determination will decide the question of bail. So, at least in Arkansas, an initial bail determination is actually less dispositive of detention

---

[1] This fact distinguishes *Smith v. Lockhart*, 923 F.2d 1314 (8th Cir. 1991), which Plaintiffs claim suggests that bail determinations are critical stages. Appellees' Br. 31. In that case, this Court held that an omnibus hearing where an Arkansas defendant moved to dismiss his charges, suppress evidence, and *reduce* bail was a critical stage. Given the "obviously" outcome-influencing nature of the motion to dismiss, *Smith*, 923 F.2d at 1319, as well as the significant suppression issues the defendant raised, *see id.* at 1319 n.8, the two sentences of dicta in *Smith* suggesting the bail reduction motion might qualify as critical, *see id.* at 1319, cannot bear much weight. But even if they could, an adversarial bail reduction motion, "which the prosecutor vigorously resisted," *id.*, that ultimately determines the amount of bail is quite different from a non-adversarial initial bail determination that only provisionally sets bail.

pending trial than the probable cause determination, which *Gerstein* held is not critical.

Legally, even if initial bail determinations did determine longer periods of custody than probable cause determinations, that would not make them critical stages. *Gerstein* did not turn on the length of pretrial detention at issue, nor could it have, as some of the parties there faced nonbailable charges. Instead, it reasoned that pretrial custody was not, as a categorical matter, the sort of question decided at a critical stage. Whereas proceedings previously deemed critical had directly "impair[ed] defense on the merits," 420 U.S. at 122, like lineups that generated crucial trial evidence or hearings that determined whether the defendant would even be charged, pretrial custody only indirectly "affect[ed] to some extent the defendant's ability to assist in preparation of his defense," *id.* at 123. As Justice Alito later explained, as interpreted in *Gerstein*, the Sixth Amendment right to "Assistance of Counsel for [the defendant's] defence" protects "defense at trial, not defense in relation to other objectives that may be important to the accused," like not being detained pending trial, which has only an "insubstantial effect on the defendant's trial rights." *Rothgery*, 554 U.S. at 216 (Alito, J., concurring, joined by Roberts, C.J., and Scalia, J.).

2. Bail Incentives.

Plaintiffs next argue that denying bail shapes defendants' incentives to plead or go to trial, citing empirical research that shows defendants who are detained during trial plead guilty at a higher rate and receive longer sentences than those who are not detained. Appellees' Br. 32–33. As a preliminary matter, there are obvious problems with separating correlation from causation in this research. That is because defendants for whom bail is denied or set at higher amounts are more likely to be guilty of serious crimes. In any event, this incentive theory is both factually flawed and legally irrelevant to whether bail determinations are critical stages.

First, Plaintiffs are mistaken that Arkansas initial bail determinations shape whether a defendant will plead. Their argument overlooks that the initial bail determination is not what ultimately determines whether a defendant is detained during trial in Arkansas. Rather, the real action lies in the bail reduction motion, where the defendant, now represented by counsel, is free to relitigate the question of bail de novo before a different judicial officer (such as the circuit judges who supervise District Judge Anglin). *See* Ark. R. Crim. P. 9.2(e)(i); *cf. Smith*, 923 F.2d at 1319 (suggesting in dicta that a "vigorously" contested Arkansas bail reduction motion was a critical stage). So if a defendant is ultimately subjected to the incentives to plead that being detained supposedly creates, it will not be

because of the initial uncounseled bail determination, but because counsel was unsuccessful in seeking (or did not seek) a bail reduction.

Yet even if initial bail determinations generated the incentives to plead that Plaintiffs claim they do, that would not make them critical stages as a matter of law. To begin with, Plaintiffs' incentive theory does not distinguish probable cause determinations. As discussed above, a probable cause determination can result in a denial of bail for the duration of the trial if the offense in question is nonbailable, as was the case in *Gerstein* itself. Yet *Gerstein* still held probable cause determinations are not critical stages, and *Kaley* specifically said there is no constitutional right to relitigate a probable cause determination, with or without counsel, for a nonbailable offense—even where the determination was made by a grand jury without the defendant's participation at all. *See Kaley*, 571 U.S. at 329 n.6 (explaining the limited opportunity under federal law to rebut the presumption of ineligibility for bail on account of "[t]he grand jury's unreviewed finding" exists only "because the Bail Reform Act so allows—not because . . . the Constitution compels the inquiry").

More broadly, *Kaley* rejected an incentive theory much like Plaintiffs'. In *Kaley*, the Court decided whether the Constitution affords a right to litigate a grand jury's uncontested probable cause determination where the determination is used to

"freeze assets a defendant needs to retain his counsel of choice."  571 U.S. at 345

(Roberts, C.J., dissenting).  The dissent strenuously argued that

absent "an opportunity to challenge" an asset freeze, which impacts a defendant's

ability to hire counsel, the government could "effectively remove a defendant's

primary weapon of defense" whenever it chose. *Id.* at 341.  It reasoned that

"[r]etaining one's counsel of choice ensures the fundamental fairness of the actual

trial, and thus may be *far more* valuable to a criminal defendant than pretrial

release."  *Id.* at 351 (emphasis added).  Yet in spite of the undeniable significance

of a defendant's ability to retain his preferred counsel, the Court held the grand

jury's determination controlled, "without any review, oversight, or second-

guessing," let alone a right to challenge the grand jury determination with the

assistance of counsel.  *Id.* at 328 (maj. op.).  If the Constitution does not require

any opportunity whatsoever to contest an asset freeze that effectively deprives the

defendant of the ability to hire their preferred counsel—notwithstanding the

obvious ramifications for trial outcomes, it cannot entitle a defendant to the

assistance of counsel at a bail determination simply because the denial of bail may

"shape [the defendant's] incentives."  Appellees' Br. 32.

      3.    Time served.

Lastly, Plaintiffs argue that bail determinations are critical, in spite of their

"nonadversary character," *Gerstein*, 420 U.S. at 122, because bail denials can

factor into the sentence if a defendant is sentenced to time served. Appellees' Br. 34. That is, at best, an argument for overruling *Gerstein*. Probable cause determinations result in "pretrial custody," *id.* at 123, which counts toward the amount of time served in exactly the same way as custody pending trial if bail is denied—and, if probable cause is found for a nonbailable offense, to the same degree. Nevertheless, the Court held probable cause determinations were not critical stages. Aside from that, denying bail does not effectively elongate sentences, as Plaintiffs suggest. *See* Appellees' Br. 34 ("Because Farella did not receive bail, she lost her right to negotiate for a sentence that would have resulted in less than 38 days' imprisonment."). Instead, it effectively shortens them. Absent serving time, a defendant cannot bargain for a sentence of time served, but where a defendant has served time, he can bargain to avoid post-sentencing imprisonment.

C.    <u>Plaintiffs' other arguments for deeming initial bail determinations critical stages are unavailing.</u>

1.    Ruling in Judge Anglin's favor would not create a circuit split.

Plaintiffs suggest that holding Arkansas's nonadversarial bail determinations are not critical stages would create a circuit split. *See* Appellees' Br. 24. That is not correct. In the first case Plaintiffs cite, the Second Circuit held that statements at a bail hearing implicated the Fifth Amendment right against self-incrimination. *Higazy v. Templeton*, 505 F.3d 161, 170–73 (2d Cir. 2007). In one sentence of

dictum, the Second Circuit said that a bail hearing's supposed status as a critical stage "support[ed] that conclusion" under *Coleman*. *Id.* at 172. But *Coleman* involved adversarial preliminary hearings that principally decided whether to send a case to a grand jury, and even Plaintiffs rightly do not claim *Coleman* decided whether bail hearings are a critical stage. *See* Appellees' Br. 30.

Plaintiffs' second cited case also does not hold bail hearings are a critical stage. Much like *Coleman*, *Ditch v. Grace*, 479 F.3d 249 (3d Cir. 2007), involved a preliminary hearing where witnesses for the state gave testimony to support probable cause, *see id.* at 251, and even made identifications that later buttressed their trial testimony, *id.* at 251–52. The Third Circuit, without even alluding to any bail determinations made there, held that hearing was patently a critical stage under *Coleman*. *Id.* at 253.

Furthermore, Plaintiffs are mistaken in suggesting there is little authority that bail determinations are not critical stages. Appellees' Br. 28 n.4. Besides the multiple cases the district court cited, Add. 20–21; App. 534–35; R. Doc. 120, at 20–21, including a unanimous decision of the Ninth Circuit joined by Judges Wardlaw, Fletcher, and Murguia, *Farrow v. Lipetzky*, 637 F. App'x 986 (9th Cir. 2016), at least three state supreme courts, an intermediate state appellate court, and a federal district court summarily affirmed by a court of appeals have held just that. *See Fenner v. State*, 846 A.2d 1020, 1031–33 (Md. 2004); *Ex parte Stewart*, 853

20

So. 2d 901, 904 (Ala. 2002); *Padgett v. State*, 590 P.2d 432, 436 (Alaska 1979);

*State v. Heng*, 512 P.3d 942, 955–57 (Wash. Ct. App. 2022); *United States v. Hooker*, 418 F. Supp. 476, 479 (M.D. Pa. 1976), *aff'd*, 547 F.2d 1165 (3d Cir. 1976).

> ## 2. Founding-era history does not support treating bail determinations as a critical stage.

Plaintiffs devote a surprisingly large portion of their brief to arguing that founding-era history supports a right to appointed counsel at bail hearings. Appellees' Br. 41–50. Though they concede that courts did not recognize any right to appointed counsel until the second half of the 20th century, *id.* at 49–50, and that the Supreme Court "has not grounded [the right to appointed counsel] primarily in originalist terms," *id.* at 42 n.7, they argue that the importance the founding generation accorded to bail shows they would have deemed it a critical stage—if, ahistorically, the founding generation engaged in the modern critical-stage inquiry or thought a right to appointed counsel existed at all.

That argument all but rebuts itself, but to the extent any further response is needed, *Gerstein* illustrates why it must be rejected. Before holding that probable cause determinations were not a critical stage, the *Gerstein* Court held the Fourth Amendment required a probable cause hearing. The Court reasoned in part that founding-era practice supported that requirement, *Gerstein*, 420 U.S. at 114–16, citing among other authority the same Aaron Burr case, *id.* at 116 n.16, that

Plaintiffs say shows the founding generation attached particular significance to bail rights, Appellees' Br. 49.  But although the Court canvassed abundant historical evidence that the founding generation attached great significance to prompt probable cause determinations—including the Marshall Court's granting original writs of habeas corpus to prisoners where probable cause to detain them was lacking, *see Gerstein*, 420 U.S. at 116 n.16—it had little difficulty concluding that probable cause determinations were neither sufficiently adversarial nor outcome-determinative to require appointed counsel.  So whether the founding generation attached significance to a pretrial proceeding cannot be the test of whether it is a critical stage.  Instead, however important or constitutionally required a pretrial proceeding may be, it must be both adversarial and potentially outcome-determinative to be a critical stage.

## III.  The district court's injunction against Judge Anglin was improper.

As the opening brief explained (at 33–34), Plaintiffs do not dispute that the district court impermissibly abrogated Judge Anglin's judicial immunity in granting injunctive relief and retrospective declaratory relief against Judge Anglin. They argue only that those objections were forfeited below, Appellees' Br. 50–51, and "do not affect the core of the judgment," *id.* at 51.

However, even if those issues were forfeited, this Court "excuse[s] forfeiture" "when 'the proper resolution [of an issue] is beyond any doubt,'" or

where an appellant raises "'purely legal issue[s]' that do not require 'additional evidence or argument'" below. *Robinson v. Norling*, 25 F.4th 1061, 1063 (8th Cir. 2022) (quoting *Weitz Co. v. Lloyd's of London*, 574 F.3d 885, 891 (8th Cir. 2009)). Whether a judge can be sued for injunctive relief in his official capacity where declaratory relief is available and the judge has not previously violated a declaratory decree, or whether a judge can be sued for retrospective declaratory relief, is beyond any doubt—which is presumably why Plaintiffs do not defend either defect in the district court's judgment and only argue forfeiture. Moreover, the defects in the district court's judgment are purely legal and no additional evidence or argument below is needed to clarify them. As for Plaintiffs' suggestion that this Court disregard the district court's infringement on Judge Anglin's judicial immunity because it does not affect the "core" of the judgment, Appellees' Br. 51, there is no exception to appellate review for errors that only invalidate a portion of a judgment.

**IV.    If *Heck* does not bar Plaintiffs' suit, that underscores that initial bail hearings are not a critical stage of trial.**

Plaintiffs claim that they were denied counsel at a critical stage of their trials. In his opening brief, Judge Anglin argued that meant their claim was barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), because denial of counsel at a critical stage of a trial is generally deemed structural error, *see United States v. Cronic*,

466 U.S. 648, 659 (1984), and *Heck* bars Section 1983 suits that imply the invalidity of a plaintiff's conviction. *See* Appellant's Br. 18–21.

In response, Plaintiffs somewhat surprisingly claim that the denial of counsel at their initial bail determinations, though ostensibly a critical stage, does not mean their convictions were invalid. Citing the pre-*Cronic* holding in *Coleman* that denial of counsel at an adversarial preliminary hearing, though a critical stage, should be reviewed for harmless error, Plaintiffs say "[i]t follows *a fortiori* that the [supposed] Sixth Amendment violations here are not structural errors either." Appellees' Br. 25 (citing *Coleman*, 399 U.S. at 10).

It is telling that Plaintiffs say it follows *a fortiori* from *Coleman* that the denial of counsel at their initial bail determinations was not a structural error. Logically, that could only be true if that denial was even less likely to affect the outcome of Plaintiffs' trials than the denial of counsel at the preliminary hearing in *Coleman*, though what happened at that hearing had no obvious effects on the fairness of the trial that follows. And it belies Plaintiffs' claim that initial bail determinations create powerful incentives that shape defendants' decisions to go to trial or plead, which if true would suggest that denial of counsel at those determinations is structural error. That said, precisely because initial bail determinations have so little influence on trial outcomes, on further review Judge Anglin agrees with Plaintiffs that the denial of counsel at those determinations—

even should they be deemed a critical stage—does not imply the invalidity of their convictions. *See, e.g.*, *Sweeney v. United States*, 766 F.3d 857, 861 & n.3 (8th Cir. 2014) (suggesting in dicta that harmless-error analysis applies to absence of counsel at critical stages that do not affect the entire proceeding); *Satterwhite v. Texas*, 486 U.S. 249, 256 (1988) (applying harmless-error analysis to the denial of counsel at a critical stage post-*Cronic*).

## CONCLUSION

This Court should reverse the district court's decision granting summary judgment in favor of Plaintiffs and remand with instructions to vacate the permanent injunction and either dismiss the case or enter summary judgment in favor of Judge Anglin.

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because it contains 5,825 words, excluding the parts exempted by Fed. R. App. P. 32(f).

I also certify that this brief complies with the requirements of Fed. R. App. P. 32(a)(5)–(6) because it has been prepared in 14-point Times New Roman font using Microsoft Word.

I further certify that this PDF file was scanned for viruses, and no viruses were found on the file.

/s/ *Asher L. Steinberg*
Asher L. Steinberg

## CERTIFICATE OF SERVICE

I certify that on April 15, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to any CM/ECF participants.

 /s/ *Asher L. Steinberg*
Asher L. Steinberg